M. Anderson Berry (SBN 262879)
Gregory Haroutunian (SBN 330263)
**CLAYEO C. ARNOLD,**
**A PROFESSIONAL LAW CORPORATION**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 777-7777
Facsimile: (916) 924-1829
aberry@justice4you.com
gharoutunian@justice4you.com

John A. Yanchunis (Pro Hac Vice)
Ryan D. Maxey (Pro Hac Vice)
**MORGAN & MORGAN COMPLEX**
**LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 559-4908
Facsimile: (813) 223-5402
jyanchunis@ForThePeople.com
rmaxey@ForThePeople.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| KAMAL BITMOUNI, on behalf of himself and all others similarly situated,<br><br>     Plaintiff,<br><br>vs.<br><br>PAYSAFE PAYMENT PROCESSING SOLUTIONS LLC, a Delaware limited liability company,<br><br>     Defendant. | Case No. 3:21-cv-00641-JCS<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: March 3, 2023<br>Time: 2 PM<br>Courtroom: Courtroom F – 15th Floor<br>Judge: Hon. Joseph C. Spero |

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION……………………………………………………………    1

II.   STATEMENT OF FACTS……………………………………………………..    1

III.  PROCEDURAL HISTORY…………………………………………………    2

IV.   THE SETTLEMENT TERMS…………………………………………………    3

    **A.**   Proposed Settlement Class…………………………………………..    3

    B.   Settlement Benefits – Monetary Relief…………………………………...    4

        **1.**   Out-of-Pocket Losses and Attested Time Cash Payments…………..    4

        **2.**   California Subclass Benefits…………………………………...    5

        **3.**   Alternative Cash Payments…………………………………….    5

        **4.**   Pro Rata Adjustments…………………………………………    5

    C.   Equitable Settlement Terms/Injunctive Relief………………………….    5

    D.   Comparison of Settlement Benefits Against Full Recovery………………...    6

    E.   Class Notice and Settlement Administration…………………………….    6

    F.   Attorneys' Fees and Expenses…………………………………………    7

    G.   Service Awards to Named Plaintiff……………………………………    8

    H.   Release…………………………………………………………….    9

V.    LEGAL AUTHORITY………………………………………………………...    9

VI.   ARGUMENT………………………………………………………………..    10

    A.   The Settlement Satisfies Rule 23(a)…………………………………    11

      i.  The Proposed Class is Sufficiently Numerous……………………….    11

      ii. The Settlement Class Satisfies the Commonality Requirement…………    12

      iii. Plaintiff's Claims and Defenses are Typical of Those of the Settlement
        Class……………………………………………………….    13

      iv. Plaintiff Will Adequately Protect the Interests of the Class………………    13

    B.   Rule 23(b)(3)'s Requirements Are Met for Purposes of Settlement…………    14

    C.   The Settlement Should Be Preliminarily Approved Pursuant to Rule 23(e)…    16

# TABLE OF CONTENTS

Page

1. The Strength of Plaintiff's Case……………………………………….. 18

2. The Risk, Expense, Complexity, and Likely Duration of Further Litigation……………………………………………… 19

3. The Risk of Maintaining Class Action Status Through Trial………. 20

4. The Amount Offered in Settlement……………………………… 20

5. The Extent of Discovery Completed and the Stage of Proceedings... 21

6. The Experience and Views of Counsel……………………………... 22

7. Governmental Participants…………………………………………….. 23

8. The Reaction of the Class Members to the Proposed Settlement…... 23

9. Lack of Collusion Among the Parties……………………………… 23

10. The Settlement Treats Settlement Class Members Equitably………. 24

D. The Court Should Approve the Proposed Notice Program………………… 25

E. Appointment of the Settlement Administrator……………………………… 27

F. Appointment of Settlement Class Counsel……………………………….. 27

VI. CONCLUSION…………………………………………………………... 27

iii

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMIANRY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:21-CV-07887

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Cases</u> <u>Page</u>

3

*Amchem Prods., Inc. v. Windsor,*

4
521 U.S. 591, 620 (1997)……………………………………………………………………18, 19, 22

5

*Andrews v. Plains All American Pipeline L.P.,*
 CV-15-4113-PSG, 2022 WL 4453864, * 5 (C.D. Cal. Sept. 20, 2022)…………………….. 16

6

7

*Butler v. Sears, Roebuck & Co.,*
727 F.3d 796, 801 (7th Cir. 2013) …………………………………………………………… 22

8

*Bykov v. DC Trans. Services, Inc.,*

9
2:18-cv-1692 DB, 2019 WL 1430984, at *2 (E.D. Cal. Mar. 29, 2019) ……………………. 25

10

*Calderon v. Wolf Firm,*

11
SACV 16-1622-JLS(KESx), 2018 WL 6843723, at *7-8 (C.D. Cal. Mar. 13, 2018) ………. 29

12

*Celano v. Marriott Int'l Inc.,*
242 F.R.D. 544, 548-49 (N.D. Cal. 2007) …………………………………………………… 20

13

14

*Chester v. TJX Cos.,*
5:15-cv-01437-ODW(DTB), 2017 WL 6205788, at *6 (C.D. Cal. Dec. 5, 2017) …………... 27

15

16

*Cohorst v. BRE Props.,*
3:10-CV-2666-JM-BGS, 2011 WL 7061923, at *12 (S.D. Cal. Nov. 9, 2011) ……………… 32

17

*Dennis v. Kellogg Co.,*

18
09-cv-1786-L(WMc), 2013 WL 6055326, at *3 (S.D. Cal. Nov. 14, 2013)………………… 26

19

*Eisen v. Carlisle & Jacquelin,*
417 U.S. 156, 173 (1974) …………………………………………………………………….. 33

20

21

*Ellis v. Costco Wholesale Corp.,*
657 F.3d 970, 979–80, 985 (9th Cir. 2011) ………………………………………..……19, 21

22

*Franklin v. Kaypro Corp.,*

23
884 F.2d 1222, 1229 (9th Cir. 1989) ………………………………………..………… 26

24

*Gautreaux v. Pierce,*
690 F.2d 616, 621 n.3 (7th Cir. 1982) ………………………………………………… 25

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Cases</u>                                                                                                <u>Page</u>

3

*Gomez v. USF Reddaway, Inc.,*
4      LA CV16-05572 JAK, 2020 WL 10964603, *3 (C.D. Cal. Sept. 21, 2020)………………      16

5      *Gribble v. Cool Transports Inc.,*
       CV 06-4863 GAF (SHx), 2008 WL 5281665, at *9 (C.D. Cal. Dec. 15, 2008) …………....      25
6

7      *Grimm v. American Eagle Airlines, Inc.,*
       LA CV 11-00406 JAK(MANx), 2014 WL 12746376, at *10 (C.D. Cal. Sept. 24, 2014)….      28
8

*G. F. v. Contra Costa Cty.,*
9      No. 13-cv-03667-MEJ, 2015 U.S. Dist. LEXIS 100512, at *43 (N.D. Cal. July 30, 2015) …..      31

10
       *Hammond v. The Bank of N.Y. Mellon Corp.,*
11     08 Civ. 6060, 2010 U.S. Dist. LEXIS 71996, at *2-4 (S.D.N.Y. June 25, 2010) (RMB) (RLE).  27

12     *Hanlon v. Chrysler Corp.,*
       150 F.3d 1011, 1020 (9th Cir. 1998) ……………………………………………………21,22,26
13

14     *Hartranft v. TVI, Inc.,*
       15-01081-CJC-DFM, 2019 WL 1746137, at *3 (C.D. Cal. Apr. 18, 2019) ……………………  34
15

16     *Hillman v. Lexicon Consulting, Inc.,*
       EDCV 16-01186-VAP(SPx), 2017 WL 10433869, at *8 (C.D. Cal. April 27, 2017) ………….  30

17
       *Holly v. Alta Newport Hospital,*
18     2:19cv07496, 2020 WL 1853308, at *7 (April 10, 2020) …………………………………..…...  20

19     *Howell v. Advantage RN, LLC,*
       17-CV-883 JLS, 2020 WL 5847565, *5 (S.D. Cal. Oct. 1, 2020 )……………………………… 16
20

21     *Hudson v. Libre Technology Inc.,*
       3:18-cv-1371-GPC-KSC, 2020 WL 2467060, *9 (S.D. Cal. May 13, 2020) …………….......... 32

22
       *In re Anthem, Inc. Data Breach Litig.,*
23     327 F.R.D. 299, 316-17 (N.D. Cal. 2018) …………………………………………………….  23

24     *In re Bluetooth Headset Prods. Liab. Litig.,*
        654 F.3d 935, 946 (9th Cir. 2011) …………………………………………………………25,26
25

26     *In re Brinker Data Incident Litig.,*
       3:18-CV-686-TJC-MCR, 2021 WL 1405508, at *1 (M.D. Fla. Apr. 14, 2021) ……………….. 28

27

28

v

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMIANRY
APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:21-CV-07887

1

<u>**TABLE OF AUTHORITIES**</u>

2

<u>**Cases**</u>                                                                                    <u>**Page**</u>

3

*In re Google LLC St. View Elec. Commc'ns Litig.,*
4  10-MD-02184-CRB, 2020 WL 1288377, at *5 (N.D. Cal. Mar. 18, 2020) .....................20, 22

5

*In re Hyundai & Kia Fuel Economy Litig.,*
6  926 F.3d 539, 559 (9th Cir. 2019) ......................................................................20, 22

7  *In re LinkedIn User Privacy Litig.,*
   309 F.R.D. 573, 585 (N.D. Cal. 2015) ............................................................…..…    23

8

*In re McKesson HBOC, Inc. ERISA Litig.,*
9  391 F. Supp. 2d 844, 851 (N.D. Cal. 2005) .........................................................…..…    33

10

*In re Mego Fin. Corp. Sec. Litig.,*
11  213 F.3d 454, 463 (9th Cir. 2000)....................................................................…...15, 16

12  *In re Online DVD-Rental Antitrust Litig.,*
    779 F.3d 934, 947-48 (9th Cir. 2015) ...............................................................…..33, 34

13

14  *In re Sorbates Direct Purchaser Antitrust Litig.,*
    99-1358MMC, 2002 WL 31655191, at *3 (N.D. Cal. Nov. 15, 2002) ............................    33

15

*In re Tableware Antitrust Litig.,*
16  484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) .....................................................25, 32

17  *In re Target Corp. Customer Data Sec. Breach Litig.,*
    MDL 14-2522-PAM, ECF No. 358-1 (D. Minn. March 18, 2015) ................................    29

18

19  *In re the Home Depot, Inc., Customer Data Sec. Breach Litig.,*
    1:14-MD-02583-TWT, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016) ..................20, 29

20

21  *In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.,*
    266 F. Supp. 3d 1, 19 (D.D.C. 2017) ...............................................................…..    27

22

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.,*
23  5:16-md-02752-LHK (N.D. Cal. July 20, 2019) .....................................................    23

24  *Just Film, Inc. v. Buono,*
    847 F.3d 1108, 1118 (9th Cir. 2017) ...............................................................…..    21

25

26  *Keegan v. Am. Honda Motor Co.,*
    284 F.R.D. 504, 526 (C.D. Cal. 2012) ...............................................................    22

27

28

# TABLE OF AUTHORITIES

**Cases**                                                                                                      **Page**

*Linney v. Cellular Alaska P'ship,*
151 F.3d 1234, 1238 (9th Cir. 1998) ……………………………………………....………..27, 29

*Local Joint Exec. Bd. of Culinary/ Bartender Trust Fund v. Las Vegas Sands, Inc.,*
244 F.3d 1152, 1163 (9th Cir. 2001) …………………………………………….…...  24

*Longest v. Green Tree Servicing LLC,*
308 F.R.D. 310, 325 (C.D. Cal. 2015) ………………………………………….…..  21

*Lucas v. Kmart Corp.,*
234 F.R.D. 688, 693 (D. Colo. 2006) …………………………………………….........  25

*Meyer v. Portfolio Recovery Associates,*
707 F.3d 1036, 1041-42 (9th Cir. 2012) …………………………………………...   21

*Murillo v. Pacific Gas & Elec. Co.,*
266 F.R.D. 468, 479 (E.D. Cal. 2010) ……………………………………………………  25

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.,*
221 F.R.D. 523, 528 (C.D. Cal. 2004) ……………………………………………………  30

*Ogbuehi v. Comcast of Cal./Colo./Fla./Or., Inc.,*
303 F.R.D. 337, 350 (E.D. Cal. 2014) …………………………………………………........  25

*Orantes-Hernandez v. Smith,*
541 F. Supp. 351, 370 (C.D. Cal. 1982) ……………………………………………………  20

*Parsons v. Kimpton Hotel & Rest. Group, LLC,*
3:16-cv-05387-VC (N.D. Cal. Jan. 9, 2019) ……………………………………………….....  23

*Pauley v. CF Entm't,*
2:13-CV-08011-RGK-CW, 2020 WL 5809953, at *3 (C.D. Cal. July 23, 2020)……………...  15

*Paz v. AG Adriano Goldschmeid, Inc.,*
14CV1372DMS(DHB), 2016 WL 4427439, at *5 (S.D. Cal. Feb. 29, 2016) …………..…..…  28

*Phillips Petroleum Co. v. Shutts,*
472 U.S. 797, 812 (1985) …………………………………………………………….......  33

*Plaintiffs v. City of Seattle,*
955 F.2d 1268, 1276 (9th Cir. 1992)……………………………………………………  18

# TABLE OF AUTHORITIES

**Cases**                                                                                                              **Page**

*Presley v. Carter Hawley Hale Profit Sharing Plan,*
C9704316SC, 2000 WL 16437, at *2 (N.D. Cal. 2000) …………………………..…………….   33

*Powers v. Eichen,*
229 F.3d 1249, 1256 (9th Cir. 2000)……………………………………………………………   15

*Rannis v. Recchia,*
380 Fed. App'x 646, 651 (9th Cir. 2010) …………………………………………………….   20

*Reyes v. Experian Info. Sols., Inc.,*
SACV1600563AGAFMX, 2020 WL 466638, at *1 (C.D. Cal. Jan. 27, 2020) ………………   24

*Roe v. Frito-Lay, Inc.,*
14-cv-00751, 2017 WL 1315626, at *8 (N.D. Cal. Apr. 7, 2017) …………………………..……   32

*Roes 1-2 v. SFBSC Management LLC,*
944 F.3d 1035 (9th Cir. 2019) …………………………………………………………………….   34

*Ross v. U.S. Bank Nat. Ass'n,*
2010 WL 3833922, *2 (N.D. Cal. Sept. 29, 2010)…………………………………………….   16

*Schellhorn v Timios, Inc.,*
2:21-cv-08661 (C.D. Cal.) ……………………………………………………………...………30, 31

*Smith v. Triad of Ala., LLC,*
1:14-CV-324-WKW, 2017 U.S. Dist. LEXIS 38574, at *45-46 (M.D. Ala. Mar. 17, 2017)…..   28

*Spencer v. #1 A LifeSafer of Ariz., LLC,*
CV-18-02225-PHX-BSB, 2019 WL 1034451, at *3 (D. Ariz. Mar. 4, 2019)…………....…….   28

*Tyson Foods, Inc. v. Bouaphakeo,*
136 S. Ct. 1036, 1045 (2016) …………………………………………………………………….   22

*Wal-Mart Stores, Inc. v. Dukes,*
564 U.S. 338, 350 (2011) …………………………………………………………...……….   20

*Williams v. Costco Wholesale Corp.,*
2010 WL 2721452, at *7 (S.D. Cal. July 7, 2010) …………………………………………......   33

*Wolin v. Jaguar Land Rover N. Am., LLC,*
617 F.3d 1168, 1175 (9th Cir. 2010)……………………………………………………………   24

# <u>TABLE OF AUTHORITIES</u>

<u>**Statutes**</u>                                                                                    <u>**Page**</u>

Federal Rules of Civil Procedure, Rule 23 et seq…………………………………………   passim

4 Newberg on Class Actions § 11.41 (4th ed. 2002)……………………………………....     18

Manual for Complex Litigation (Fourth) (2004) § 21.63 …………………………………   18-20

## I.   **INTRODUCTION**

Plaintiff Kamal Bitmouni ("Plaintiff") submits this Unopposed Motion for Preliminary Approval of Class Action Settlement and Memorandum in Support. Defendant Paysafe Payment Processing Solutions, LLC ("Paysafe" and "Defendant") does not oppose certification for Settlement purposes pursuant to Rule 23 of the Federal Rules of Civil Procedure and does not oppose Plaintiff's request for preliminary approval of this class action settlement. Plaintiff believes the Settlement is fair, reasonable, and adequate, and that the Court should grant preliminary approval and notice should be distributed to Class Members.

## II.   **STATEMENT OF FACTS**

This matter concerns a putative class action arising out of an alleged Data Security Incident (as defined below) disclosed by Paysafe in December 2020. Specifically, an unauthorized person or persons submitted queries to a legacy website operated by Paysafe between May 13, 2018 and November 3, 2020, potentially compromising personal information held in a Paysafe database for a subset of merchants and sales agents (the "Data Security Incident"). The website was not used for card payment processing. Plaintiff alleges that, as a result of the Data Security Incident, the unauthorized party gained access to Plaintiff's and other victims' personal information, including without limitation, first and last names, contact details, Social Security numbers, and/or bank account information (collectively "personally identifiable information" or "PII").

On or about December 2020, Paysafe notified approximately 91,706 individuals of the Data Security Incident. Paysafe offered these individuals two years of free credit and identity monitoring services as a result of the Data Security Incident.

Plaintiff brought this action on behalf of all persons whose PII Plaintiff alleges was compromised as a result of Paysafe's failure to: (i) adequately protect PII; (ii) warn of its inadequate information security practices; and (iii) effectively monitor its network for security vulnerabilities and incidents. Plaintiff alleges that Paysafe's conduct amounts to negligence and violates federal and state statutes. Plaintiff alleges that he and Class Members have suffered injury as a result of the Data Security Incident. These alleged injuries include: (i) lost or diminished

value of PII; (ii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Security Incident, including but not limited to lost time; and (iv) the continued and increased risk to their PII, which remains in Paysafe's possession.

Paysafe denies Plaintiff's allegations and all liability, and also denies that any person's PII was actually accessed or compromised in connection with the Data Security Incident.

## III.   **PROCEDURAL HISTORY**

On January 27, 2021, Plaintiff filed a lawsuit asserting claims against Paysafe relating to the Data Security Incident. The case is titled *Bitmouni v. Paysafe Payment Processing Solutions, LLC*, Case No. 3:21-cv-00641 (N.D. Cal.) (the "Litigation").

Over the course of several months, the parties engaged in informal, sometimes contentious, settlement discussions. The parties then agreed, at the Court's suggestion, to participate in early mediation. Although the parties initially agreed to mediate in February 2022, the mediation was rescheduled several times as a result of COVID-19, until it was finally held on May 25, 2022. The parties attended an all-day in-person mediation session with highly experienced mediator Zela G. Claiborne, Esq. of JAMS in San Francisco. While the parties came to better understand each other's positions, no settlement was reached at that time. Instead, the parties agreed to exchange informal and formal discovery, including conducting Federal Rule of Civil Procedure 30(b)(6) depositions of Paysafe's corporate representatives relating to the nature of the Data Security Incident and Paysafe's response to it, as well as the deposition of Plaintiff Kamal Bitmouni. After conducting this discovery, on August 30, 2022 the parties attended a second all-day in-person mediation session with mediator Zela G. Claiborne, Esq. in San Francisco, California. After a contentious day-long mediation session, the parties were able to reach a settlement in principle. Over the next several months the parties took additional time to finalize the full scope of the settlement agreement, including the details of the notice program. The parties executed the Settlement Agreement, attached hereto as Exhibit 1, on December 27, 2022.

## IV.   THE SETTLEMENT TERMS

### A.   Proposed Settlement Class

The Settlement will provide relief for the following Settlement Class: "the individuals identified on the Settlement Class List, including all individuals who were notified, including by direct notice and publication by Paysafe, that their personal information was or may have been compromised in the Data Security Incident." S.A., ¶ 33. In comparison, the Nationwide Class as alleged in the operative Second Amended Complaint (Doc. 72, ¶ 75) was defined as, "[a]ll individuals who are residents of the United States and whose PII was or may have been accessed during the cybersecurity incident referenced in the Notice of Data Breach dated December 16, 2020 that Merchant Services (including CHI Payments, iPayment, and Paysafe) sent to Plaintiff (the 'Nationwide Class')." The Settlement Class definition is more specific while providing relief to the same individuals included in the Nationwide Class defined in the Complaint, because it encompasses all 91,706 individuals who received notice that their PII may have been compromised in the Data Security Incident. The claims released by the Settlement Class are the same as those that would have been released by the Nationwide Class in the Complaint.

Additionally, the Complaint and the Settlement Agreement both reference a California subclass to address California Class Members' California Consumer Privacy Act ("CCPA") claims. The California Subclasses identified in the Complaint and in the Settlement Agreement encompass the same CCPA claims. Similarly, the claims released by the California Subclass, which consists of 15,662 individuals, are the same as those that would have been released by the California Subclass identified in the Complaint.

The Settlement Class contains approximately 91,706 individuals, and the Settlement creates a California Subclass consisting of any "Settlement Class Member who resided in California at any time during the Data Security Incident." S.A., ¶ 3.

### B.   Settlement Benefits – Monetary Relief

The Settlement negotiated on behalf of the Class provides for a non-reversionary settlement common fund of two-million dollars ($2,000,000) that will be used to provide three separate forms of monetary relief for the Settlement Class: (1) reimbursement for out-of-pocket

losses and lost time up to $25,000 per Settlement Class Member; (2) $200 per California Subclass member as a statutory damage payment for CCPA claims; and (3) $150 per Settlement Class Member not eligible for the statutory damage payments for CCPA claims. S.A., §§ II–V. This relief addresses the types of repercussions and injuries suffered by individuals following a data breach.

### 1. Out-of-Pocket Losses and Attested Time Cash Payments

The first category of payments is designed to provide reimbursement for documented out-of-pocket costs or expenditures related to the Data Security Incident and to compensate Settlement Class Members for time spent remedying issues related to the Data Security Incident. S.A., ¶ 49.

Out-of-Pocket Losses reimbursements can be claimed for up to $25,000 per Settlement Class Member. *Id.* This may include, for example, unreimbursed costs associated with fraud or identity theft including professional fees such as attorneys' fees, accountants' fees, and fees for credit repair services and miscellaneous expenses, as well as costs for credit monitoring costs or other mitigative services, and any other unreimbursed costs associated with the Data Security Incident. Valid reimbursable Out-of-Pocket Losses are those that were actually incurred that are fairly traceable to the Data Security Incident. S.A., ¶ 50. In assessing what qualifies as "fairly traceable," the Settlement Administrator will consider:

> (i) whether the timing of the loss occurred on or after May 1, 2018; and (ii) whether the Personal Information used to commit identity theft or fraud consisted of the type of Personal Information identified in Paysafe's notices of the Data Security Incident. Costs expended for mitigation measures like credit monitoring services, fraud resolution services, and professional services incurred to address identity theft or fraud on or after May 1, 2018, shall be presumed "reasonably incurred."

*Id.*

In addition, Attested Time reimbursements can be claimed for up to five (5) hours spent dealing with the effects of the Data Security Incident, compensated at $25 per hour ($125 total). S.A., ¶ 51.

///

///

### 2.  California Subclass Benefits

In addition to the above benefits, all 15,662 California Subclass Members are eligible for a separate damages award ("CCPA Cash Payment"). The CCPA Cash Payment awarded to California Subclass Members who submit a Valid Claim shall be $200, which can be combined with a claim for Out-of-Pocket Losses and Attested Time. S.A., ¶¶ 48-49.

### 3.  Alternative Cash Payments

Settlement Class Members who are not eligible to receive a CCPA Cash Payment may elect to receive a cash payment in an amount equal to $150 ("Alternative Cash Payment"). S.A., ¶ 54.

### 4.  Pro Rata Adjustments

If the aggregate value of claims for Out-of-Pocket Losses, Attested Time, CCPA Cash Payments, and Alternative Cash Payments exceeds the Net Settlement Fund, the amount of each such claim shall be reduced *pro rata* so that the aggregate value of all claims equals the Net Settlement Fund. S.A., ¶ 55.

Conversely, if the Net Settlement Fund exceeds the aggregate value for all claims for all categories of monetary benefits, the amount of each California Subclass CCPA Cash Payment shall be increased *pro rata* so that the aggregate value of all claims equals the Net Settlement Fund, subject to a maximum of $750 for each California Subclass CCPA Cash Payment. S.A., ¶ 56.

### C.  Equitable Settlement Terms/Injunctive Relief

In addition to the foregoing settlement benefits, Paysafe has agreed to implement and/or maintain certain reasonable steps to adequately secure its systems and environments. *See* S.A., ¶ 63. These include certain remedial measures and enhanced data security measures, including cybersecurity training and awareness programs, data security policies, monitoring and response capabilities, and restrictions on accessing PII. In addition, the legacy website has been disabled. These measures will benefit those members of the Settlement Class whose information remains in Paysafe's possession, and also other customers who do business with Paysafe in the future. Injunctive relief in the form of enhancements to Paysafe's cybersecurity policies and procedures

are valuable settlement benefits and provide Plaintiff and Settlement Class Members with peace of mind that Paysafe will go to great lengths to protect their PII.

### D. Comparison of Settlement Benefits Against Full Recovery

The Settlement provides broad settlement benefits of $2,000,000 to all 91,706 Settlement Class Members in the form of cash payments for: Attested Time spent remedying issues related to the Data Security Incident of up to five hours at $25 per hour; Out-of-Pocket Losses of up to $25,000; **and** either a $200 CCPA Cash Payment or a $150 Alternative Cash Payment. The CCPA Cash Payment is significant for settlement purposes as it gives California Subclass Members the ability to receive $200 (possibly prorated up to $750) in statutory damages, when the damages provided by the CCPA are $100–$750. Generally, the slew of Settlement benefits made available under this Settlement give Plaintiff and Class Members both reimbursement for specific losses and cash to compensate them for ongoing damages and statutory claims, which is what Class Members would be seeking on their best day in court. It also provides for implementation and/or maintenance of business practices to improve Paysafe's security and protect all Class Members whose PII Paysafe continues to retain. At trial, Class Members would run the risk of getting only some or none of these Settlement benefits.

### E. Class Notice and Settlement Administration

The costs of Notice will be paid for out of the Settlement Fund. Notice will be given to the Settlement Class Members via individual notice, which will be provided by mailing the Summary Notice (Exhibit 1 to the Settlement Agreement) to the postal addresses associated with the accounts of Settlement Class Members. Declaration of Jeanne C. Finegan ("Finegan Decl."), ¶ 16; Joint Declaration of M. Anderson Berry and John Yanchunis ("Joint Decl."), ¶ 29.

A Long Notice (also in Exhibit 1 to the Settlement Agreement), will also be posted on the settlement website, www.[TBD].com, along with other important documents such as the Settlement Agreement and the motions for final approval and for attorneys' fees and expenses. S.A., ¶¶ 64, 67. The notice documents have been carefully reviewed to ensure that they are clear and concise, and they directly apprise Settlement Class Members of all the information they need to make a claim or to opt-out or object to the Settlement. Fed. R. Civ. P. 23(c)(2)(B).

Furthermore, a toll-free number with interactive voice response, FAQs, and an option to speak to a live operator will be made available to address Settlement Class Members' inquiries. S.A, ¶ 67.

Plaintiff has retained Kroll Settlement Administration, a nationally recognized and well-regarded class action settlement administrator, to serve as Claims Administrator, subject to the Court's approval. *See* Joint Decl., ¶ 26. The Claims Administrator has estimated that notice and administration costs will total approximately $190,000. Finegan Decl., ¶ 30.

Class Counsel, based on their experience with data breach cases and in consultation with Kroll Settlement Administration, anticipate that there will be a claims rate in this case of between 3–9% of the Class (in other words, roughly 2,752 to 8,254 claims). The Claim Form implemented in this case (Exhibit 2 to the Settlement Agreement) is very similar to others we have used in similar class action settlements involving data breach incidents and with relatively similar Settlement benefits. The parties are recommending the content of the Claim Form in this case based on Class Counsel's experience in successfully soliciting claims and allocating settlement benefits in similar class action cases.

### F.   Attorneys' Fees and Expenses

Plaintiff will separately seek an award of attorneys' fees not to exceed 25 percent of the Net Settlement Fund (*i.e.*, $500,000), and reimbursement of litigation costs and expenses not to exceed $50,000, which shall be paid from the Settlement Fund. S.A. ¶ 85. Plaintiff's pursuit of this case made broad settlement benefits available to the Class, including a $2,000,000 settlement fund providing reimbursement for Out-of-Pocket Losses, Attested Time, CCPA statutory damages, and alternative cash payments. Defendant has agreed to take no position with regard to the fees motion.

Class Counsel's fee request will be well within the range of reasonableness for Settlements of this nature and size. This Court recently stated that "25% [is] considered the benchmark" in the Ninth Circuit. *Pauley v. CF Entm't*, No. 2:13-CV-08011-RGK-CW, 2020 WL 5809953, at *3 (C.D. Cal. July 23, 2020), *citing Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000). In fact, the Ninth Circuit has found attorneys' fees awards of 1/3 of the fund to be reasonable. *See In re*

*Mego Fin. Corp. Sec. Litig*., 213 F.3d 454, 463 (9th Cir. 2000) (affirming award of one-third of total recovery).

To date, Class Counsel have accrued lodestar totaling $567,801.20 with expenses totaling $27,617.24, including the drafting, and filing of these preliminary approval filings. Joint Decl., ¶ 47.  Class Counsel will provide the Court their detailed billing records under seal or for *in camera* review upon request.

### G.    Service Awards to Named Plaintiff

Plaintiff in this case has been vital in litigating this matter, including providing his personal information to proposed Settlement Class Counsel, submitting to a five-hour deposition, and responding to discovery demands going into significant detail about his private information and experiences relating to the Data Security Incident. Plaintiff has been personally involved in the case and supports the Settlement. Joint Decl., ¶ 44. Plaintiff will separately petition the Court for an award of $15,000 in recognition of the time, effort, and expense he incurred pursuing claims that benefited the Settlement Class. *See* S.A., § 7.3.

This amount is reasonable in recognition of the amount of work and effort Plaintiff expended on behalf of the Settlement Class,. *See, e.g.*, *Andrews v. Plains All American Pipeline L.P.,* CV-15-4113-PSG, 2022 WL 4453864, * 5 (C.D. Cal. Sept. 20, 2022) (awarding representative Plaintiffs $15,000 for having searched for and provided facts used to compile Plaintiffs' operative complaint, helped Class Counsel analyze claims, sat for deposition, and reviewed and approved the settlement); *Howell v. Advantage RN, LLC,* 17-CV-883 JLS, 2020 WL 5847565, *5 (S.D. Cal. Oct. 1, 2020) (awarding representative Plaintiff $10,000 despite her not having been deposed); *Gomez v. USF Reddaway, Inc.*, LA CV16-05572 JAK, 2020 WL 10964603, *3 (C.D. Cal. Sept. 21, 2020) (approving service awards of $17,500 and $7,500 out of a settlement fund of only $1,500,000); *Ross v. U.S. Bank Nat. Ass'n*, 2010 WL 3833922, *2 (N.D. Cal. Sept. 29, 2010) (awarding representative Plaintiffs $20,000 each for having reviewed documents, had their depositions taken, and actively participated in settlement negotiations).

///

///

**H.    Release**

Upon entry of the Final Approval Order (Exhibit 3 to the Settlement Agreement), Plaintiff and the Settlement Class will be deemed to have "fully, finally, and forever released, acquitted and discharged Paysafe . . . from any and all Released Claims." S.A., § XV. "Released Claims" are defined, *inter alia*, as:

> Any and all claims or causes of action of every kind and description, including any causes of action in law, claims in equity, complaints, suits, or petitions, and any allegations of wrongdoing, demands for legal, equitable or administrative relief (including, but not limited to, any claims for injunction, rescission, reformation, restitution, disgorgement, constructive trust, declaratory relief, compensatory damages, consequential damages, penalties, exemplary damages, statutory damages, punitive damages, attorneys' fees, costs, interest or expenses) that the Releasing Parties had, have, or may claim now or in the future to have (including, but not limited to, assigned claims and any and all "Unknown Claims" as defined below) that were or could have been asserted or alleged arising out of the same nucleus of operative facts as any of the claims alleged or asserted in the Litigation, including but not limited to the facts, transactions, occurrences, events, acts, omissions, or failures to act that were alleged, argued, raised, or asserted in any pleading or court filing in the Litigation, including but not limited to those concerning: 1) the disclosure of the Participating Settlement Class Members' personal information in the Data Security Incident; 2) Paysafe's maintenance of the Participating Settlement Class Members' personal information as it relates to the Data Security Incident; 3) Paysafe's security policies and practices as it relates to the Data Security Incident; or 4) Paysafe's provision of notice to the Participating Settlement Class Members following the Data Security Incident.

S.A., ¶ 28. Released Claims include Unknown Claims as defined in ¶ 79 of the Settlement Agreement. Released Claims shall not include the right of any Settlement Class Member or any of the Released Persons to enforce the terms of the Settlement Agreement and shall not include the claims of Settlement Class Members who have timely excluded themselves from the Settlement Class.

**V.    LEGAL AUTHORITY**

Plaintiff brings this motion pursuant to Federal Rule Civil Procedure 23(e), under which court approval is required to finalize a class action settlement. Courts, including those in this Circuit, endorse a three-step procedure for approval of class action settlements: (1) preliminary approval of the proposed settlement followed by (2) dissemination of court-approved notice to

the class and (3) a final fairness hearing at which class members may be heard regarding the settlement and at which evidence may be heard regarding the fairness, adequacy, and reasonableness of the settlement. Manual for Complex Litigation (Fourth) (2004) § 21.63.

Here, Plaintiff requests the Court take the first step, and grant preliminary approval of the proposed Settlement Agreement.

## VI.  ARGUMENT

Federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"); 4 Newberg on Class Actions § 11.41 (4th ed. 2002) (citing cases). More traditional means of handling claims like those at issue here—individual litigation—would unduly tax the court system, require massive expenditures of resources, and give the relatively small value of the claims of the individual class members, as compared to the cost of litigation, be impracticable. Thus, a settlement—and specifically the Settlement Agreement proposed here—provides the best vehicle for Settlement Class Members to receive relief in a prompt and efficient manner while avoiding the risks of continued litigation.

The Manual for Complex Litigation (Fourth) advises that in cases presented for both preliminary approval and class certification, the "judge should make a preliminary determination that the proposed class satisfies the criteria." § 21.632. Because a court evaluating certification of a class action that settled is considering certification only in the context of settlement, the court's evaluation is somewhat different than in a case that has not yet settled. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). In some ways, the court's scrutiny in certifying a settlement-only class is lessened: as no trial is anticipated in a settlement-only class case, the question of case management issues inherent in the ascertainable class determination need not be confronted. *See id*. Other certification issues, however, such as "those designed to protect absentees by blocking unwarranted or overbroad class definitions," require heightened scrutiny in the settlement-only

class context "for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id.*

Plaintiff here seeks certification of a Settlement Class consisting of: "the individuals identified on the Settlement Class List, including all individuals who were notified, including by direct notice and publication by Paysafe, that their personal information was or may have been compromised in the Data Security Incident. Excluded from the Settlement Class are: (1) the judges presiding over this Litigation, and members of their direct families; (2) the Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, and employees; and (3) Settlement Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline." S.A., ¶ 33. The Settlement Class contains 91,706 individuals.

In addition, the Settlement creates a California Subclass, consisting of Settlement Class Members "who resided in California at any time during the Data Security Incident." S.A., ¶ 3. The California Subclass contains 15,662 individuals.

The Settlement Class is defined differently, and more specifically, than how it is defined in Plaintiff's Second Amended Complaint, ¶ 72, but both definitions encompass the same set of persons. For the reasons set forth below, the Court should certify the Class for settlement purposes and preliminarily approve the Settlement.

**A.      The Settlement Satisfies Rule 23(a)**

Before assessing the parties' settlement, the Court should first confirm that the underlying settlement class meets the requirements of Rule 23(a). *See Amchem*, 521 U.S. at 620; Manual for Complex Litigation (Fourth), § 21.632. These requirements are well known:  numerosity, commonality, typicality, and adequacy—each of which is met here. Fed. R. Civ. P. 23(a); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979–80 (9th Cir. 2011).

**i. The Proposed Class is Sufficiently Numerous.**

While there is no fixed point at which the numerosity requirement is met, courts generally find numerosity where there are so many class members as to make joinder impracticable. *See* Fed. R. Civ. P. 23(a)(1). "Where the exact size of the class is unknown but general knowledge

1

2

and common sense indicate that it is large, the numerosity requirement is satisfied." *Orantes-Hernandez v. Smith*, 541 F. Supp. 351, 370 (C.D. Cal. 1982). Generally, courts will find

3

numerosity is satisfied where a class includes at least 40 members. *Holly v. Alta Newport Hospital,*

4

Case No.2:19cv07496, 2020 WL 1853308, at *7 (April 10, 2020), *citing Rannis v. Recchia,* 380

5

Fed. App'x 646, 651 (9th Cir. 2010). Numbering 91,706 individuals, the proposed Settlement

6

Class here easily satisfies Rule 23's numerosity requirement. Joinder of the 91,706 individuals is

7

impracticable—thus the numerosity prong is satisfied. *See, e.g., Celano v. Marriott Int'l Inc*., 242

8

F.R.D. 544, 548-49 (N.D. Cal. 2007) (numerosity is generally satisfied when a class has at least

9

40 members).

10

### ii.    The Settlement Class Satisfies the Commonality Requirement.

11

The Settlement Class also satisfies the commonality requirement, which requires that class

12

members' claims "depend upon a common contention," of such a nature that "determination of

13

its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke."

14

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Here, as in most data breach cases,

15

"[t]hese common issues all center on [Defendant's] conduct, satisfying the commonality

16

requirement." *In re the Home Depot, Inc., Customer Data Sec. Breach Litig*., No. 1:14-MD-02583-TWT, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016).

17

18

For the same reason, Plaintiff alleges that predominance is readily met here "where the

19

class is a 'cohesive group of individuals [who] suffered the same harm in the same way because

20

of the [defendant's] conduct.' *In re Google LLC St. View Elec. Commc'ns Litig*., No. 10-MD-02184-CRB, 2020 WL 1288377, at *5 (N.D. Cal. Mar. 18, 2020) (quoting *In re Hyundai & Kia*

21

*Fuel Economy Litig*., 926 F.3d 539, 559 (9th Cir. 2019)). Thus, common questions include, *inter*

22

*alia*, whether Paysafe engaged in the wrongful conduct alleged; whether Class Members' PII was

23

compromised in the Data Security Incident; whether Paysafe owed a duty to Plaintiff and Class

24

Members; whether Paysafe breached its duties; whether Paysafe unreasonably delayed in

25

notifying Plaintiff and Class Members of the material facts of the Data Security Incident; and

26

whether Paysafe committed the common law and statutory violations alleged in the Second

27

Amended Complaint.

28

Thus, Plaintiff has met the commonality requirement of Rule 23(a).

### iii.    Plaintiff's Claims and Defenses are Typical of Those of the Settlement Class.

Plaintiff satisfies the typicality requirement of Rule 23 because Plaintiff's claims, which are based on Defendant's alleged failure to protect Plaintiff's and Class Members' PII, are "reasonably coextensive with those of the absent class members." *See* Fed. R. Civ. P. 23(a)(3); *Meyer v Portfolio Recovery Associates*, 707 F.3d 943, 1041-42 (9th Cir. 2012) (upholding typicality finding). Plaintiff alleges that his and Class Members' PII was compromised in the Data Security Incident, and that they were therefore impacted by the same allegedly inadequate data security. *See Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017) ("[I]t is sufficient for typicality if the plaintiff endured a course of conduct directed against the class.").

### iv.    Plaintiff Will Adequately Protect the Interests of the Class.

The adequacy requirement of Rule 23 is satisfied where (1) there are no antagonistic or conflicting interests between named plaintiff and their counsel and the absent class members; and (2) the named plaintiff and their counsel will vigorously prosecute the action on behalf of the class. Fed. R. Civ. P. 23(a)(4); *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (*citing Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998); *Longest v. Green Tree Servicing LLC*, 308 F.R.D. 310, 325 (C.D. Cal. 2015).

Here, Plaintiff has no conflicts of interest with other class members, is not subject to unique defenses, and he and his counsel have and continue to vigorously prosecute this case on behalf of the class. Plaintiff is a member of the Class who experienced the same alleged injuries and seeks, like other Class Members, compensation in connection with the Data Security Incident. As such, Plaintiff's interests and the interests of his counsel are consistent with those of other Settlement Class Members.

Further, counsel for Plaintiff have decades of combined experience as vigorous class action litigators and are well suited to advocate on behalf of the Settlement Class. *See* Joint Decl., ¶¶ 46, 48. Thus, Plaintiff satisfies the requirement of adequacy.

///

**B.      Rule 23(b)(3)'s Requirements Are Met for Purposes of Settlement.**

"In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3)." *Hanlon*, 150 F.3d at 1022. Here, Plaintiff alleges that the Settlement Class is maintainable for purposes of settlement under Rule 23(b)(3), as common questions predominate over any questions affecting only individual members and class resolution is superior to other available methods for a fair and efficient resolution of the controversy. *Id.*

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623 (citing Wright, et al., Fed. Prac. and Proc. § 1777, p. 518-19 (2d ed. 1986)). "If common questions 'present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication,' then 'there is clear justification for handling the dispute on a representative rather than on an individual basis,' and the predominance test is satisfied." *See Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 526 (C.D. Cal. 2012) (quoting *Hanlon*, 150 F.3d at 1022). To satisfy this requirement, "common issues need only predominate, not outnumber individual issues." *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013) (quotations omitted).

Plaintiff alleges that predominance is readily met here "where the class is a 'cohesive group of individuals [who] suffered the same harm in the same way because of the [defendant's] conduct.'" *In re Google LLC St. View Elec. Commc'ns Litig.*, No. 10-MD-02184-CRB, 2020 WL 1288377, at *5 (N.D. Cal. Mar. 18, 2020) (quoting *In re Hyundai & Kia Fuel Economy Litig.*, 926 F.3d 539, 559 (9th Cir. 2019)). Plaintiff's claims depend, first and foremost, on whether Paysafe used reasonable data security measures to protect consumers' PII. That question can be resolved, for purposes of settlement, using the same evidence for all Settlement Class Members, and thus is precisely the type of predominant question that makes a class-wide settlement worthwhile. *See, e.g., Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) ("When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) … .'") (citation omitted).

Moreover, because the claims are being certified for purposes of settlement, there are no issues with manageability, and resolution of thousands of claims in one action is far superior to individual lawsuits and promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3); *Amchem Prods.*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems").

Rule 23(b)(3) also requires that a district court determine that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." In determining whether the "superiority" requirement is satisfied, a court may consider: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).; *Malta*, 2013 WL 444619, at \*3 (superiority is met where "considerations of judicial economy favor litigating a predominant common issue once in a class action instead of many times in separate lawsuits" and where "small individual claims of class members" made it "unlikely that individual actions will be filed").

For purposes of settlement, a class action is the superior method of adjudicating consumer claims arising from the Data Security Incident—just as in other data breach cases where class-wide settlements have been approved. *See, e.g., In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 5:16-md-02752-LHK (N.D. Cal. July 20, 2019); *Parsons v. Kimpton Hotel & Rest. Group, LLC*, No. 3:16-cv-05387-VC (N.D. Cal. Jan. 9, 2019); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 316-17 (N.D. Cal. 2018); *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 585 (N.D. Cal. 2015). Adjudicating individual actions here is impracticable:  the amount in dispute for individual class members is too small, the technical issues involved are too complex, and the required expert testimony and document review too costly. *See Just Film*, 847 F.3d at 1123.

In addition, no one member of the class has an interest in controlling the prosecution of this action because Plaintiff's claims and the claims of the members of the class are the same. Alternatives to a class action are either no recourse for thousands of individuals, or a multiplicity of suits resulting in an inefficient and possibly disparate administration of justice. Classwide resolution is the only practical method of addressing the alleged violations at issue in this case. There are thousands of class members with modest individual claims, most of whom likely lack the resources necessary to seek individual legal redress. *See Local Joint Exec. Bd. of Culinary/ Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) (cases involving "multiple claims for relatively small individual sums" are particularly well suited to class treatment); *see also Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification."). A class action is therefore superior to other methods for the fair and efficient adjudication of the claims of Plaintiff and the Class.

## C.    The Settlement Should Be Preliminarily Approved Pursuant to Rule 23(e).

"[U]nder Rule 23(e)(1), the issue at preliminary approval turns on whether the Court 'will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal.'" *Reyes v. Experian Info. Sols., Inc.*, No. SACV1600563AGAFMX, 2020 WL 466638, at *1 (C.D. Cal. Jan. 27, 2020). Rule 23(e) provides that a proposed class action may be "settled, voluntarily dismissed, or compromised only with the court's approval." Moreover, "[t]he parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class." If the parties make a sufficient showing that the Court will likely be able to "approve the proposal" and "certify the class for purposes of judgment on the proposal," "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e). Thus, notice should be given to the class, and hence preliminary approval should be granted, where the Court "will likely be able to" finally approve the settlement under Rule 23(e)(2) and certify the class for settlement purposes. *Id.*

1
2
3
4
5
6

"In evaluating a proposed settlement at the preliminary approval stage, some district courts . . . have stated that the relevant inquiry is whether the settlement 'falls within the range of possible approval' or 'within the range of reasonableness.'" *Bykov v. DC Trans. Services, Inc*., No. 2:18-cv-1692 DB, 2019 WL 1430984, at *2 (E.D. Cal. Mar. 29, 2019). That is, "preliminary approval of a settlement has both a procedural and a substantive component." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007).

7
8
9
10
11
12

As to the procedural component, "a presumption of fairness applies when settlements are negotiated at arm's length, because of the decreased chance of collusion between the negotiating parties." *Gribble v. Cool Transports Inc*., No. CV 06-4863 GAF (SHx), 2008 WL 5281665, at *9 (C.D. Cal. Dec. 15, 2008). Likewise, "participation in mediation tends to support the conclusion that the settlement process was not collusive." *Ogbuehi v. Comcast of Cal./Colo./Fla./Or., Inc*., 303 F.R.D. 337, 350 (E.D. Cal. 2014).

13
14
15
16

With respect to the substantive component, "[a]t this preliminary approval stage, the court need only 'determine whether the proposed settlement is within the range of possible approval.'" *Murillo v. Pacific Gas & Elec. Co*., 266 F.R.D. 468, 479 (E.D. Cal. 2010) (*quoting Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982)).

17
18
19
20

In sum, "the purpose of the preliminary approval process is to determine whether there is any reason not to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Lucas v. Kmart Corp*., 234 F.R.D. 688, 693 (D. Colo. 2006). In any event, while a complete fairness evaluation is unnecessary at this early juncture, Plaintiff and his counsel strongly believe that the resolution reached here is in the Settlement Class's best interests.

21
22
23
24
25
26
27

To that end, the Ninth Circuit has identified nine factors to consider in analyzing the fairness, reasonableness, and adequacy of a class settlement: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the views of counsel; (7) the presence of a governmental participant; (8) the reaction of the class members to the proposed settlement and; (9) whether the settlement is a product of collusion among the parties. *In re*

28

*Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935, 946 (9th Cir. 2011); *see also Hanlon,* 150 F.3d at 1026. Rule 23(e) requires a court to consider several additional factors, including whether the class representative and class counsel have adequately represented the class, and whether the settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e).

In applying these factors, this Court should be guided foremost by the general principle that settlements of class actions are favored by federal courts. *See Franklin v. Kaypro Corp*., 884 F.2d 1222, 1229 (9th Cir. 1989) ("It hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits"). Here, the relevant factors support the conclusion that the negotiated settlement is fundamentally fair, reasonable, and adequate, and should be preliminarily approved.

### 1.   The Strength of Plaintiff's Case

Plaintiff believes he has built a strong case for liability. With respect to Plaintiff's negligence claim, Plaintiff believes he will ultimately be able to offer evidence that Defendant was negligent in failing to maintain reasonable and current data security programs and practices, which led directly to the exposure of Plaintiff's and Settlement Class Members' PII. Joint Decl., ¶ 49.

Plaintiff believes his claims are viable and that he has a reasonably good chance of proving that Paysafe's data security was inadequate and, if that central fact is established, that Defendant is likely to be found liable under at least some of the liability theories and statutory and common law claims Plaintiff has pled in the Second Amended Complaint

That said, although Plaintiff believes he has strong claims and would prevail at trial, success is not guaranteed. Plaintiff faces risks given the comparatively novel nature of the claims asserted in data breach class actions. In addition, Paysafe intends to vigorously defend the reasonableness of its data security measures and contends that to date there is no evidence that any person's PII was actually compromised or exfiltrated. Given these considerations, it is "plainly reasonable for the parties at this stage to agree that the actual recovery realized, and risks avoided here outweigh the opportunity to pursue potentially more favorable results through full adjudication." *Dennis v. Kellogg Co*., No. 09-cv-1786-L(WMc), 2013 WL 6055326, at *3 (S.D.

1  Cal. Nov. 14, 2013). In other words, "[h]ere, as with most class actions, there was risk to both

2  sides in continuing towards trial. The settlement avoids uncertainty for all parties involved."

3  *Chester v. TJX Cos.*, No. 5:15-cv-01437-ODW(DTB), 2017 WL 6205788, at *6 (C.D. Cal. Dec.

4  5, 2017).  In light of the substantial obstacles and inherent risks Plaintiff faces, including class

5  certification, summary judgment, and trial, the substantial benefits the Settlement provides

6  decisively favor granting preliminary approval of the Settlement. Joint Decl., ¶ 50.

7          **2.      The Risk, Expense, Complexity, and Likely Duration of Further**
                     **Litigation**
8

9          While Plaintiff believes his case is a strong one, all cases, including this one, are subject

10  to substantial risk. This case involves a proposed class of approximately 92,000 individuals (each

11  of whom, Paysafe has argued, would need to establish cognizable harm and causation to prevail

12  on their claims); a complicated and technical factual background; and a sympathetic and

    motivated Defendant that already has provided some relief to its potentially affected customers.

13

14          Although nearly all class actions involve a high level of risk, expense, and complexity—

15  undergirding the strong judicial policy favoring amicable resolutions, *Linney v. Cellular Alaska*

    *P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998)—this is a particularly complex class due to the

16  constant standing challenges plaintiffs face in data breach class actions. Historically, data breach

17  cases face substantial hurdles in surviving even the pleading stage. *See, e.g., Hammond v. The*

18  *Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060 (RMB) (RLE), 2010 U.S. Dist. LEXIS 71996, at

19  *2-4 (S.D.N.Y. June 25, 2010) (collecting cases). Even cases impacting similarly broad groups

20  and implicating data far more sensitive than that at issue here have been found wanting by district

21  courts. *In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 266 F. Supp. 3d 1, 19 (D.D.C.

22  2017) ("The Court is not persuaded that the factual allegations in the complaints are sufficient to

23  establish . . . standing."), *reversed in part*, 928 F.3d 42 (D.C. Cir. June 21, 2019) (holding that

24  plaintiff had standing to bring a data breach lawsuit).

25          To the extent the law has gradually accepted this relatively new type of litigation, the path

26  to a class-wide monetary judgment remains unforged, particularly in the area of damages. For

27  now, data breach cases are among the riskiest and uncertain of all class action litigation, making

28

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMIANRY
APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:21-CV-07887

settlement the more prudent course when a reasonable one can be reached. The damages methodologies, while theoretically sound in Plaintiff's view, remain untested in a disputed class certification setting and unproven in front of a jury. And as in any data breach case, establishing causation on a class-wide basis is rife with uncertainty.

Each risk, by itself, could impede the successful prosecution of these claims at trial and in an eventual appeal—which could result in zero recovery to the class. "Regardless of the risk, litigation is always expensive, and both sides would bear those costs if the litigation continued." *Paz v. AG Adriano Goldschmeid, Inc.*, No. 14CV1372DMS(DHB), 2016 WL 4427439, at *5 (S.D. Cal. Feb. 29, 2016). Thus, this factor favors approval.

### 3. The Risk of Maintaining Class Action Status Through Trial

While Plaintiff's case is still in the pleadings stage, the parties have not briefed, and the Court has not yet certified any class treatment of this case and Defendant will certainly oppose certification if the case proceeds. If the parties were to proceed to litigate their claims through trial, Plaintiff would therefore encounter risks in obtaining and maintaining certification of the class. Thus, Plaintiff "necessarily risk[s] losing class action status." *Grimm v. American Eagle Airlines, Inc.*, No. LA CV 11-00406 JAK(MANx), 2014 WL 12746376, at *10 (C.D. Cal. Sept. 24, 2014). Class certification in contested consumer data breach cases is not common—first occurring in *Smith v. Triad of Ala.*, LLC, No. 1:14-CV-324-WKW, 2017 U.S. Dist. LEXIS 38574, at *45-46 (M.D. Ala. Mar. 17, 2017), and most recently in *In re Brinker Data Incident Litig.*, No. 3:18-CV-686-TJC-MCR, 2021 WL 1405508, at *1 (M.D. Fla. Apr. 14, 2021), where a class was certified over objection to plaintiff's damages calculations. While certification of additional consumer data breach classes may well follow, the dearth of direct precedent adds to the risks posed by continued litigation.

### 4. The Amount Offered in Settlement

In light of the risks and uncertainties presented by data breach litigation, the value of the Settlement favors approval. The Settlement makes significant relief available to Settlement Class Members in the form of a non-reversionary common fund of $2,000,000. Each Class Member is eligible to make a claim for up to $25,000 in reimbursements for expenses and lost time, an

additional $200 statutory damages award to California Subclass Members, and an additional $150 alternative cash payment for Settlement Class Members who are not eligible for the California statutory damages award. This settlement is a strong result for the Class, and as discussed below is in line with other settlements in cases involving data breaches of similar scope. The settlement amount here is similar to other settlements reached and approved in similar cases, reflecting that the Settlement is fair. *See Calderon v. Wolf Firm*, No. SACV 16-1622-JLS(KESx), 2018 WL 6843723, at *7-8 (C.D. Cal. Mar. 13, 2018) (comparing class settlement with other settlements in similar cases). In light of the difficulties and expenses Class Members would face in pursuing individual claims, and the likelihood that they might be unaware of their claims, this Settlement Amount is appropriate. *See id*. Accordingly, this factor favors approval.

The Settlement value per class member here ($21.80 per class member ($2,000,000 / 91,706 class members) is on par with or exceeds that in other exemplary data breach settlements. For example, the consideration paid by Home Depot to settle a data breach class action was approximately $0.51 per class member. *See In re The Home Depot, Inc., Customer Data Sec. Breach Litig*., No. 1:14-MD-02583-TWT, ECF No. 181-2 (March 7, 2016) (Settlement Agreement); *id*., 2017 U.S. Dist. LEXIS 221736, at *24 (N.D. Ga. Sept. 22, 2017) (order approving settlement). And the Target data breach was resolved with Target paying the equivalent of $0.17 per class member. *See In re Target Corp. Customer Data Sec. Breach Litig*., No. MDL 14-2522-PAM, ECF No. 358-1 (D. Minn. March 18, 2015) (Settlement Agreement); *id*., 2017 U.S. Dist. LEXIS 75455, at *27-29 (D. Minn. May 17, 2017) (order certifying settlement class on remand from the 8th Circuit). These comparisons are not intended to disparage the settlements achieved in those cases, but to underscore that Plaintiff has achieved a good resolution for the Settlement Class.

### 5.       The Extent of Discovery Completed and the Stage of Proceedings

Before entering into settlement discussions on behalf of class members, counsel should have "sufficient information to make an informed decision." *Linney*, 151 F.3d at 1239. Here, Plaintiff vigorously and aggressively gathered all of the information that was available regarding Paysafe and the Data Security Incident—including publicly-available documents concerning

announcements of the Incident and notice of the Incident to its customers. Joint Decl., ¶ 52. The parties also informally exchanged non-public information concerning the Incident and the size of the Class in preparation for a successful mediation. *Id*.

The parties have further engaged in formal discovery, including both paper discovery and the deposition of Plaintiff and two Fed. R. Civ. Pro. 30(b)(6) depositions of corporate representatives of Defendant. This information, together with Class Counsel's collective experience in similar types of privacy and data protection practices, provided substantive knowledge on the subject to enable Class Counsel to represent Plaintiff's and Class Members' interests without expending hundreds of hours and substantial financial resources to come up to speed on the subject area. Joint Decl., ¶ 52. "[T]he efficiency with which the Parties were able to reach an agreement need not prevent this Court from granting . . . approval." *Hillman v. Lexicon Consulting, Inc*., No. EDCV 16-01186-VAP(SPx), 2017 WL 10433869, at *8 (C.D. Cal. April 27, 2017). Accordingly, Plaintiff is well informed about the strengths and weaknesses of this case.

### 6.  The Experience and Views of Counsel

Class Counsel initiated this lawsuit when Paysafe announced the Data Security Incident, which, impacted approximately 92,000 individuals. Class Counsel have substantial experience litigating complex class cases of various types, including data breach cases such as this one. *See* Joint Decl., ¶ 46 & Exs. A and B thereto. Having worked on behalf of the putative class since the Data Security Incident was first announced, evaluated the legal and factual disputes, and dedicated significant time and monetary resources to this litigation, proposed Class Counsel fully endorse the Settlement. *Id*., ¶ 53. A great deal of weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. *See, e.g., Norton*, 2017 WL 1424636, at *6; *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc*., 221 F.R.D. 523, 528 (C.D. Cal. 2004). Thus, this factor supports approval.

Following the Northern District's Procedural Guidance for Class Action Settlements, Class Counsel compare this settlement to a recent similar settlement where they each (in addition to other attorneys) participated as counsel for plaintiffs. In *Schellhorn v Timios, Inc.*, Case No.: 2:21-cv-08661 (C.D. Cal.), over roughly 75,000 individuals had their PII compromised in a 2021

data breach. Unlike this case, the case was resolved before a motion to dismiss on a claims-made basis. The settlement benefits made available to class members in Timios are substantially less than those afforded here in each of the following categories: (1) out-of-pocket expenses reimbursement up to $500; (2) a cash payment for lost time of up to 3 hours at $20 per hour; (3) extraordinary expenses reimbursement up to $3,000; (4) $50 to California class members under the CCPA; and (5) broad enhancements to defendant's cybersecurity policies and procedures. United States District Judge Virginia A. Phillips granted preliminary approval of class action settlement in *Timios* on May 10, 2022, and final approval on November 10, 2022. Because the Settlement forged for Plaintiff and Class Members here provides benefits far greater than those that were preliminarily and finally approved in *Timios*, Plaintiff and the Settlement Class respectfully request that the Court grant preliminary approval of class action settlement in this case.

### 7.  Governmental Participants.

There is no governmental participant in this matter. This factor is neutral.

### 8.  The Reaction of the Class Members to the Proposed Settlement

Because notice has not yet been given, this factor is not yet implicated; however, Representative Plaintiff supports the Settlement. Joint Decl., ¶ 44.

### 9.  Lack of Collusion Among the Parties

The parties negotiated a substantial, multifaceted Settlement, as described above. The parties did not negotiate attorneys' fees until agreement on all substantive portions of the class resolution had been reached, and both the class portion of the resolution and the attorneys' fees were negotiated during periodic arm's-length negotiations. Furthermore, Class Counsel and Paysafe's counsel are well-versed in handling data breach class actions such as this one and fully understand the values recovered in similar cases. Therefore, the Court can be assured that the negotiations were not collusive. Additionally, the parties participated in two separate mediation sessions with an experienced private mediator, Zela Claiborne, Esq. of JAMS, which were highly contentious and were only able to reach a settlement in principle during the second session after having conducted substantial discovery in between the two sessions. *See G. F. v. Contra Costa*

*Cty.*, No. 13-cv-03667-MEJ, 2015 U.S. Dist. LEXIS 100512, at *43 (N.D. Cal. July 30, 2015) ("[T]he assistance of an experienced mediator in the settlement  process confirms that the settlement is non-collusive.") (internal quotation marks and citation omitted); *see also Cohorst v. BRE Props.*, No. 3:10-CV-2666-JM-BGS, 2011 WL 7061923, at *12 (S.D. Cal. Nov. 9, 2011) ("[V]oluntary mediation before a retired judge in which the parties reached an agreement-in-principle to settle the claims in the litigation are highly indicative of fairness . . . . We put a good deal of stock in the product of arms-length, non-collusive, negotiated resolution.")

### 10.    The Settlement Treats Settlement Class Members Equitably

Finally, Rule 23(e)(2)(D) requires that this Court confirm that the settlement treats all class members equitably as possible under the circumstances. The Advisory Committee's Note to Rule 23(e)(2)(D) advises that courts should consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), advisory comm.'s note (2018).

In determining whether this factor weighs in favor of approval, a Court must determine whether the Settlement "improperly grant[s] preferential treatment to class representatives or segments of the class." *Hudson v. Libre Technology Inc.,* No. 3:18-cv-1371-GPC-KSC, 2020 WL 2467060, *9 (S.D. Cal. May 13, 2020) (*quoting In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)).

Here, the Settlement "does not improperly discriminate between any segments of the class, as all class members are entitled to the same relief. Each and every Class Member has the opportunity to make a claim for up to $25,000 in reimbursements for Out-of-Pocket Losses and Attested Time, a $200 CCPA Cash Payment for California residents, and a $150 Alternative Cash Payment for non-California residents. While Plaintiff has been permitted to seek approval of a service award from this Court, as will be explained in detail at Plaintiff's Fees Motion*, an award of $15,000 for one class representative is in line with awards granted in similar cases, is presumptively reasonable, and does not call into question Plaintiff's adequacy or the validity of the Settlement. *See e.g. Roe v. Frito-Lay, Inc.,* No. 14-cv-00751, 2017 WL 1315626, at *8 (N.D.

Cal. Apr. 7, 2017) (noting a $5,000 Service Award is presumptively reasonable in the Ninth Circuit); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947-48 (9th Cir. 2015) (approving service awards of $5,000); *Presley v. Carter Hawley Hale Profit Sharing Plan*, No. C9704316SC, 2000 WL 16437, at *2 (N.D. Cal. 2000) (approving $25,000 service awards); *In re McKesson HBOC, Inc. ERISA Litig.*, 391 F. Supp. 2d 844, 851 (N.D. Cal. 2005) (approving $5,000 service awards); *In re Sorbates Direct Purchaser Antitrust Litig.*, No. 99-1358MMC, 2002 WL 31655191, at *3 (N.D. Cal. Nov. 15, 2002) (approving $7,500 service award); *Williams v. Costco Wholesale Corp.*, 2010 WL 2721452, at *7 (S.D. Cal. July 7, 2010) (approving $5,000 award in an case settling for $440,000). As such, this factor also weighs in favor of approval.

### D.     The Court Should Approve the Proposed Notice Program

Rule 23 requires that before final approval, the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). For classes certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "The notice may be by one or more of the following:  United States mail, electronic means, or other appropriate means." *Id.*

The "best notice practicable," *see* Fed. R. Civ. P. 23(c)(2)(B), means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). To satisfy due process, notice to class members must be the best practicable, and reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. CR 23(c)(2); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Class settlement notices must also present information about a proposed settlement simply, neutrally, and understandably. *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 567 (9th Cir. 2019). Notice is adequate if it generally describes the terms of the class action settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard. *Id.*

Here, and after a competitive bid process, the parties have agreed to a robust notice program to be administered by a well-respected third-party class administrator—Kroll—which

will use all reasonable efforts to provide direct and individual notice to each potential Settlement Class Member via mail. Joint Decl., ¶ 40; Finegan Decl., ¶¶ 14-19. The Notice and Claim Forms negotiated by the Parties are clear and concise and inform Settlement Class Members of their rights and options under the Settlement, including detailed instructions on how to make a claim, object to the Settlement, or opt-out of the Settlement. Joint Decl., ¶ 31; S.A., Exs. 1 & 2.

In addition to the direct notice, the Administrator will also establish a dedicated Settlement Website and will maintain and update the website throughout the Claims Period, with the forms of Summary Notice, Long Notice, and Claim Form approved by the Court, as well as the Settlement Agreement. Finegan Decl., ¶ 20; S.A., Exs. 1, 2. The Claims Administrator will also establish a toll-free help line staffed with a reasonable number of live operators available to provide Settlement Class Members with additional information about the settlement. Finegan Decl., ¶ 21.

Plaintiff has negotiated a notice program that is reasonably calculated under all the circumstances to apprise Settlement Class Members of the pendency of the action and afford them an opportunity to present their objections. The Settlement Class Members provided Defendant with their contact information, and this is not suspected of being a particularly transient class; thus, direct notice via mail, with potential follow up reminder notice by email the best practicable. *Compare Roes 1-2 v. SFBSC Management LLC,* 944 F.3d 1035, 1046 (9th Cir. 2019). Notice programs providing notice by email and mail have been approved by the Ninth Circuit. *See e.g. In re Online DVD-Rental Antitrust Litigation*, 779 F. 3d 934, 946 (9th Cir. 2015) (finding notice provided initially by email, and then by mail to individuals whose emails bounced back was sufficient under both the U.S. Constitution and Rule 23).

Because the notice plan ensures that Settlement Class Members' due process rights are amply protected, this Court should approve it. *See Hartranft v. TVI, Inc*., No. 15-01081-CJC-DFM, 2019 WL 1746137, at *3 (C.D. Cal. Apr. 18, 2019) ("The Court finds that the Class Notice and the manner of its dissemination described in Paragraph 7 above and Section VIII of the Agreement constitutes the best practicable notice under the circumstances and is reasonably calculated, under all the circumstances, to apprise Settlement Class Members of the pendency of

this action, the terms of the Agreement, and their right to object to or exclude themselves from the Settlement Class."); *see also, Spencer v. #1 A LifeSafer of Ariz., LLC*, No. CV-18-02225-PHX-BSB, 2019 WL 1034451, at *3 (D. Ariz. Mar. 4, 2019) (Bade, J.) (preliminarily approving class action settlement and finding "that the proposed notice program is clearly designed to advise the Class Members of their rights").

### E.     Appointment of the Settlement Administrator

In connection with implementation of the Notice Program and administration of the settlement benefits, the Parties request that the Court appoint Kroll Settlement Administration to serve as the Claims Administrator. Kroll has a trusted and proven track record of supporting thousands of class action administrations, with over 50 years of legal administration experience. Finegan Decl., ¶¶ 3, 24. Notice and administration is expected to cost approximately $190,000 and will be paid from the Settlement Fund. *Id.*, ¶ 30.

### F.     Appointment of Settlement Class Counsel

Under Rule 23, "a court that certifies a class must appoint class counsel [who must] fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, courts generally consider the following attributes: the proposed class counsel's (1) work in identifying or investigating potential claims, (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case, (3) knowledge of the applicable law, and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i–iv).

Here, proposed Class Counsel has extensive experience prosecuting class actions and other complex cases, and specifically data breach cases. *See* Joint Decl. ¶ 46, Exs. A and B (firm resumes). Accordingly, Plaintiff respectfully requests that the Court appoint M. Anderson Berry and Gregory Haroutunian of Clayeo C. Arnold, A Professional Law Corporation, and John Yanchunis and Ryan Maxey of Morgan & Morgan as Class Counsel.

## VI.     <u>CONCLUSION</u>

Plaintiff has negotiated a fair, adequate, and reasonable Settlement that will provide Class Members with both significant monetary benefits, identity protection, and equitable relief. The

Settlement is likely to be approved, and as such, Notice should be ordered to issue to the class. For all the above reasons, Plaintiff respectfully requests that this Court grant Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement.

Date: January 26, 2023                    Respectfully Submitted,

                                          */s/M. Anderson Berry*
                                          M. Anderson Berry (SBN 262879)
                                          Gregory Haroutunian (SBN 330263)
                                          **CLAYEO C. ARNOLD,**
                                          **A PROFESSIONAL LAW CORP.**
                                          865 Howe Avenue
                                          Sacramento, CA 95825
                                          Telephone: (916) 239-4778
                                          Facsimile: (916) 924-1829
                                          aberry@justice4you.com
                                          gharoutunian@justice4you.com

                                          John A. Yanchunis (*Pro Hac Vice*)
                                          Ryan D. Maxey (*Pro Hac Vice*)
                                          **MORGAN & MORGAN**
                                          **COMPLEX LITIGATION GROUP**
                                          201 N. Franklin Street, 7th Floor
                                          Tampa, FL 33602
                                          Telephone: (813) 559-4908
                                          Facsimile: (813) 223-5402
                                          jyanchunis@ForThe People.com
                                          rmaxey@ForThe People.com

                                          *Attorneys for Plaintiff*

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMIANRY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 3:21-CV-07887

# EXHIBIT 1

## CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE

This Class Action Settlement Agreement and Release ("Settlement Agreement" or "Agreement") is entered into by and between Kamal Bitmouni, ("Plaintiff"), individually and on behalf of Participating Settlement Class Members (as defined in Paragraph 25, and (2) Paysafe Payment Processing Solutions, LLC ("Defendant" or "Paysafe") (collectively the "Parties"), in the action pending in the United States District Court for the Northern District of California, Case No. 3:21-cv-00641-JCS (the "Litigation").

## RECITALS

WHEREAS, the Litigation, a proposed class action lawsuit, was filed on January 27, 2021, in the United States District Court for the Northern District of California, relating to a data security incident disclosed by Paysafe on or about December 16, 2020, potentially affecting certain sensitive personally identifiable information of people who enrolled for merchant accounts with Paysafe's affiliates.

WHEREAS, on October 11, 2021, Plaintiff filed an Amended Class Action Complaint.

WHEREAS, on March 30, 2022, Plaintiff filed a Second Amended Class Action Complaint.

WHEREAS Paysafe continues to deny: a) the allegations and all liability with respect to any and all facts and claims alleged in the Litigation; b) that the class representative in the Litigation and the classes he purports to represent have suffered any damage; and c) that the Litigation satisfies the requirements to be tried as a class action under Federal Rule of Civil Procedure 23.

WHEREAS Paysafe provided certain information requested by counsel for Plaintiff.

NOW, THEREFORE, in exchange for the mutual promises and valuable consideration provided for in this Agreement, and without any admission or concession by either Party, the Parties agree to a full, complete, and final settlement and resolution of the Litigation, subject to Court approval, on the following terms and conditions:

## I.   DEFINITIONS

In addition to terms defined at various points within this Agreement, the following defined terms shall have the meanings set forth below:

1.      "Approved Claim" means the timely submitted Claim Form by a Participating Settlement Member that has been approved by the Settlement Administrator.

2.      "Attested Time" means time spent remedying issues related to the Data Security Incident, as provided in Section IV of this Agreement.

3.      "California Subclass Member" means a Settlement Class Member who resided in California at any time during the Data Security Incident.

4.      "Claim Form" or "Claim" means the form(s) Participating Settlement Class Members must submit to be eligible for a CCPA Cash Payment, reimbursement of Out-of-Pocket Losses and Attested Time, and/or an Alternative Cash Payment under the terms of the Settlement, which is attached hereto as Exhibit 2.

5.      "Claims Deadline" means the last day to submit a timely Claim Form(s), which will occur ninety (90) days after the Notice Deadline.

6.      "Claims Period" means the period of time during which Settlement Class Members may submit Claim Forms to receive Settlement benefits, which will end on the Claims Deadline.

7.      "Class Counsel" means Michael Anderson Berry, Gregory Haroutunian, John A. Yanchunis, and Ryan D. Maxey.

8.      "Court" means the Honorable Joseph C. Spero, or such other judge to whom the Litigation may hereafter be assigned.

9.      "Data Security Incident" means the data security incident initially disclosed by Paysafe in or around December 2020.

10.      "Effective Date" means one business day following the latest of: (i) the date upon which the time expires for filing or noticing any appeal of the Final Approval Order and Judgment; or (ii) if any appeal, petition, request for rehearing, or other review has been filed, the Final Approval Order and Judgment is affirmed without material change or the appeal is dismissed or otherwise disposed of, no other appeal, petition, rehearing, or other review is pending, and the time for further appeals, petitions, requests for rehearing, or other review has expired.

11.      "Fee Application" means any motion for an award of attorneys' fees, Litigation Costs and Expenses, and Service Award Payments to be paid from the Settlement Fund, as set forth in Paragraphs 83 and 85.

12.      "Fee Award and Costs" means the amount of attorneys' fees and reimbursement of Litigation Costs and Expenses awarded by the Court to Class Counsel.

13.      "Final Approval Order and Judgment" means an order and judgment that the Court enters after the Final Approval Hearing, which finally approves the Settlement Agreement, certifies the Settlement Class, dismisses the Litigation with prejudice, entering judgment in accord with the terms of this Settlement Agreement, and otherwise satisfies the settlement-related provisions of Federal Rule of Civil Procedure 23, and is consistent with all material provisions of this Settlement Agreement. The Parties agree to the Court entering a Final

Approval Order and Judgment consistent with the proposed Final Approval Order and Judgment attached hereto as Exhibit 3.

14.     "Final Approval Hearing" means the hearing to be conducted by the Court to determine the fairness, adequacy, and reasonableness of the Settlement pursuant to Federal Rule of Civil Procedure 23 and whether to issue the Final Approval Order and Judgment.

15.     "Litigation" means the class action lawsuit captioned *Kamal Bitmouni v. Paysafe Payment Processing Solutions, LLC*, Case No. 3:21-cv-00641-JCS pending in the United States District Court for the Northern District of California.

16.     "Litigation Costs and Expenses" means costs and expenses incurred by counsel for Plaintiff in connection with commencing, prosecuting, and settling the Litigation.
.

17.     "Net Settlement Fund" means the amount of funds that remain in the Settlement Fund after funds are paid from or allocated for payment from the Settlement Fund for the following: (i) Notice and Administrative Expenses, (ii) Taxes and Tax-Related Expenses; (iii) Service Awards Payments approved by the Court, and (v) Fee Award and Costs approved by the Court.

18.     "Non-Profit Residual Recipient" means a non-profit organization approved by the Court following distribution of Settlement payments for Approved Claims.

19.     "Notice" means notice of the proposed class action Settlement to be provided to Settlement Class Members pursuant to the Preliminary Approval Order, substantially in the form attached hereto as Exhibit 1.

20.     "Notice Deadline" means the last day by which Notice must issue to the Settlement Class Members, which will occur thirty (30) days after entry of the Preliminary Approval Order.

21.     "Notice and Administrative Expenses" means all of the expenses incurred in the administration of this Settlement, including, without limitation, all expenses or costs associated with providing Notice to the Settlement Class, locating Settlement Class Members, processing claims, determining the eligibility of any person to be a Settlement Class Member, and administering, calculating and distributing the Settlement Fund to Participating Settlement Class Members. Administrative Expenses also includes all reasonable third-party fees and expenses incurred by the Settlement Administrator in administering the terms of this Agreement.

22.     "Objection Deadline" is the last day on which a Settlement Class Member may file an objection to the Settlement or Fee Application, which will be forty (40) days after the Notice Deadline.

23.     "Opt-Out Deadline" is the last day on which a Settlement Class Member may file a request to be excluded from the Settlement Class, which will be forty (40) days after the Notice Deadline.

24.     "Out-of-Pocket Losses" means documented out-of-pocket costs or expenditures that a Settlement Class Member actually incurred that are fairly traceable to the Data Security Incident, and that have not already been reimbursed by a third party. Out-of-Pocket Losses may include, without limitation, unreimbursed costs associated with fraud or identity theft including professional fees including attorneys' fees, accountants' fees, and fees for credit repair services and miscellaneous expenses such as notary, fax, postage, copying, mileage, and long-distance telephone charges, as well as costs for credit monitoring costs or other mitigative services that were incurred on or between May 1, 2018 and the Notice Deadline.

25.     "Participating Settlement Class Member" means a Settlement Class Member who does not submit a valid Request for Exclusion prior to the Opt-Out Deadline.

26.     "Paysafe's Counsel" means Debevoise & Plimpton LLP.

27.     "Preliminary Approval Order" means an order directing issuance of Notice to Settlement Class Members, determining that the Court will likely be able to approve the Settlement under Federal Rule of Civil Procedure 23(e)(2), and determining that the Court will likely be able to certify the Settlement Class for purposes of judgment, that is consistent with all material provisions of this Settlement Agreement.

28.     "Released Claims" means any and all claims or causes of action of every kind and description, including any causes of action in law, claims in equity, complaints, suits, or petitions, and any allegations of wrongdoing, demands for legal, equitable or administrative relief (including, but not limited to, any claims for injunction, rescission, reformation, restitution, disgorgement, constructive trust, declaratory relief, compensatory damages, consequential damages, penalties, exemplary damages, statutory damages, punitive damages, attorneys' fees, costs, interest or expenses) that the Releasing Parties had, have, or may claim now or in the future to have (including, but not limited to, assigned claims and any and all "Unknown Claims" as defined below) that were or could have been asserted or alleged arising out of the same nucleus of operative facts as any of the claims alleged or asserted in the Litigation, including but not limited to the facts, transactions, occurrences, events, acts, omissions, or failures to act that were alleged, argued, raised, or asserted in any pleading or court filing in the Litigation, including but not limited to those concerning: 1) the disclosure of the Participating Settlement Class Members' personal information in the Data Security Incident; 2) Paysafe's maintenance of the Participating Settlement Class Members' personal information as it relates to the Data Security Incident; 3) Paysafe's security policies and practices as it relates to the Data Security Incident; or 4) Paysafe's provision of notice to the Participating Settlement Class Members following the Data Security Incident.

29.     "Request for Exclusion" is the written communication by or on behalf of a Settlement Class Member in which he or she requests to be excluded from the Settlement Class in the form and manner provided for in the Notice.

30.     "Service Award Payment" means compensation awarded by the Court and paid to the Settlement Class Representative in recognition of their role in this litigation.

31.    "Settlement" means the settlement of the Litigation by and between the Parties, and the terms thereof as stated in this Settlement Agreement.

32.    "Settlement Administrator" means the administrator chosen by Class Counsel. Class Counsel and Paysafe's Counsel may, by agreement, substitute a different Settlement Administrator, subject to Court approval.

33.    "Settlement Class" means the individuals identified on the Settlement Class List, including all individuals who were notified, including by direct notice and publication by Paysafe, that their personal information was or may have been compromised in the Data Security Incident. Excluded from the Settlement Class are: (1) the judges presiding over this Litigation, and members of their direct families; (2) the Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, and employees; and (3) Settlement Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline.

34.    "Settlement Class List" means the list generated by Paysafe containing the full names, current or last known addresses where known, for all persons who fall under the definition of the Settlement Class, which Paysafe shall provide to the Settlement Administrator within twenty-one (21) days of entry of the Preliminary Approval Order.

35.    "Settlement Class Member" means an individual who falls within the definition of the Settlement Class.

36.    "Settlement Class Representative" means Kamal Bitmouni.

37.    "Settlement Fund" means two million dollars and zero cents ($2,000,000.00) to be paid by Paysafe or its insurance carrier as specified in Paragraphs 41–46, including any interest accrued thereon after payment.

38.    "Settlement Payment" or "Settlement Check" means the payment to be made electronically via Zelle, Venmo, or PayPal, or mailed in the form of a MasterCard pre-paid debit card or check to a Participating Settlement Class Member pursuant to Paragraphs 57–61.

39.    "Settlement Website" means the website that the Settlement Administrator will establish as soon as practicable following entry of the Preliminary Approval Order, but prior to the mailing of the Notice, as a means for Settlement Class Members to obtain notice of and information about the Settlement and relevant case documents and deadlines. The Settlement Website shall contain relevant documents, including, but not limited to, the Notice, this Agreement, Plaintiffs' motion for preliminary approval of the Settlement, the Preliminary Approval Order, Plaintiffs' Fee Application, and the operative complaints in the Litigation. The Settlement Website shall also include a toll-free telephone number, e-mail address, and mailing address through which Settlement Class Members may contact the Settlement Administrator directly. The Settlement Website shall not include any advertising and shall remain operational until at least sixty (60) days after all Settlement Payments have been distributed.

40.     "Taxes and Tax-Related Expenses" means any and all applicable taxes, duties, and similar charges imposed by a government authority (including any estimated taxes, interest or penalties) arising in any jurisdiction, if any, with respect to the income or gains earned by or in respect of the Settlement Fund, including, without limitation, any taxes that may be imposed upon Paysafe with respect to any income or gains earned by or in respect of the Settlement Fund for any period while it is held in the Settlement Fund.

## II.     SETTLEMENT FUND

41.     **Establishment of Settlement Fund**. Within twenty-one (21) days of the Effective Date, Paysafe will pay to the Claims Administrator the Settlement Fund minus the amounts advanced for notice and claims administration costs as described in the next sentence. Within thirty (30) days of entry of the Preliminary Approval Order, Paysafe will pay $100,000.00 from the Settlement Fund to the Claims Administrator to defray the actual expenses of notice and claims administration. To the extent this Settlement Agreement is not finally approved, Paysafe will be entitled to the return of any amounts not already incurred by the Claims Administrator in connection with Settlement Administration.

42.     **Non-Reversionary**. The Settlement Fund is non-reversionary. As of the Effective Date, all rights of Paysafe in or to the Settlement Fund shall be extinguished, except in the event this Settlement Agreement is terminated, as described in Paragraph 76.

43.     **Qualified Settlement Fund**. The Parties agree that the Settlement Fund is intended to be maintained as a qualified settlement fund within the meaning of Treasury Regulation § 1.468 B-1, and that the Settlement Administrator, within the meaning of Treasury Regulation § 1.468 B-2(k)(3), shall be responsible for filing tax returns and any other tax reporting for or in respect of the Settlement Fund and paying from the Settlement Fund any Taxes and Tax-Related Expenses owed with respect to the Settlement Fund. The Parties agree that the Settlement Fund shall be treated as a qualified settlement fund from the earliest date possible and agree to any relation-back election required to treat the Settlement Fund as a qualified settlement fund from the earliest date possible. Any and all funds held in the Settlement Fund shall be held in an interest-bearing account insured by the Federal Deposit Insurance Corporation. Funds may be placed in a non-interest-bearing account as may be reasonably necessary during the check clearing process. The Settlement Administrator shall provide an accounting of any and all funds in the Settlement Fund, including any interest accrued thereon and payments made pursuant to this Agreement, upon request of any of the Parties.

44.     **Custody of Settlement Fund**. The Settlement Fund shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the entirety of the Settlement Fund is distributed pursuant to this Settlement Agreement or the balance returned to those who paid the Settlement Fund in the event this Settlement Agreement is terminated in accordance with Paragraph 76.

45.     **Use of the Settlement Fund**. As further described in this Agreement, the Settlement Fund shall be used by the Settlement Administrator to pay for the following: (i)

Notice and Administrative Expenses; (ii) Taxes and Tax-Related Expenses; (iii) Service Award Payment approved by the Court; (iv) Fee Award and Costs; (v) CCPA Cash Payments; (vi) reimbursement for Out-of-Pocket Losses and Attested Time; and (vii) Alternative Cash Payments. No amounts may be withdrawn from the Settlement Fund unless expressly authorized by this Agreement or approved by the Court.

46.     **Taxes and Representations**. Taxes and Tax-Related Expenses relating to the Settlement Fund shall be considered Notice and Administrative Expenses and shall be timely paid by the Settlement Administrator out of the Settlement Fund without prior order of the Court. Further, the Settlement Fund shall indemnify and hold harmless the Parties and their counsel for Taxes and Tax-Related Expenses (including, without limitation, taxes payable by reason of any such indemnification payments). The Parties and their respective counsel have made no representation or warranty with respect to the tax treatment by any Settlement Class Representative or any Settlement Class Member of any payment or transfer made pursuant to this Agreement or derived from or made pursuant to the Settlement Fund. Each Settlement Class Representative and Participating Settlement Class Member shall be solely responsible for the federal, state, and local tax consequences to him, her or it of the receipt of funds from the Settlement Fund pursuant to this Agreement.

## III.    CLAIMS UNDER THE CALIFORNIA CONSUMER PRIVACY ACT

47.     **Statutory Damage Payments for CCPA Claims.** California Subclass Members who claim that the California Consumer Privacy Act ("CCPA") was violated as to them will be eligible for a statutory damage payment ("CCPA Cash Payment") in the amount of two hundred dollars and zero cents ($200.00) on a claims-made basis subject to the terms below.

48.     **Procedure for CCPA Claims.**  In order to submit a claim for a CCPA Cash Payment, California Subclass Members must provide to the Settlement Administrator the information required to evaluate the claim, including the following: the California Subclass Member's full name, email address, mailing address, and phone number.  Only the subset of California Subclass Members whose name and (i) Social Security number; or (ii) tax identification number; or (iii) bank account number were accessed or potentially accessed in the Data Security Incident, as confirmed by Paysafe's business records, will be eligible to submit a CCPA claim. The Parties acknowledge that not all California Subclass Members will be eligible for this relief.

## IV.    REIMBURSEMENT FOR OUT-OF-POCKET LOSSES AND ATTESTED TIME

49.     **Reimbursement for Out-of-Pocket Losses.** All Settlement Class Members may submit a claim for up to $25,000.00 for reimbursement of Out-of-Pocket Losses. To receive reimbursement for Out-of-Pocket Losses, Settlement Class Members must submit a valid Claim Form that includes the following: (i) third party documentation supporting the loss; and (ii) a brief description of the documentation describing the nature of the loss, if the nature of the loss is not apparent from the documentation alone. Third-party documentation can include receipts or other documentation not "self-prepared" by the Settlement Class Member that documents the costs incurred. Self-prepared documents such as handwritten receipts are, by themselves,

insufficient to receive reimbursement, but can be considered to add clarity or support other submitted documentation. A legal guardian for a Settlement Class Member who is under the age of eighteen (18) at the time of claim submission may submit a Minor Claim Form seeking reimbursement of Out-of-Pocket Losses on the minor's behalf.

50.     **Assessing Claims for Out-of-Pocket Losses**. The Settlement Administrator shall verify that each person who submits a Claim Form is a Settlement Class Member. The Settlement Administrator shall have the sole discretion and authority to determine whether and to what extent documentation for Out-of-Pocket Losses reflects valid Out-of-Pocket Losses actually incurred that are fairly traceable to the Data Security Incident but may consult with Class Counsel in making individual determinations. In assessing what qualifies as "fairly traceable," the Settlement Administrator will consider (i) whether the timing of the loss occurred on or after May 1, 2018; and (ii) whether the Personal Information used to commit identity theft or fraud consisted of the type of Personal Information identified in Paysafe's notices of the Data Security Incident. Costs expended for mitigation measures like credit monitoring services, fraud resolution services, and professional services incurred to address identity theft or fraud on or after May 1, 2018, shall be presumed "reasonably incurred." The Settlement Administrator is authorized to contact any Settlement Class Member (by e-mail, telephone, or U.S. mail) to seek clarification regarding a submitted claim prior to making a determination as to its validity.

51.     **Reimbursement for Attested Time**. All Settlement Class Members may submit a claim for reimbursement of Attested Time up to five (5) hours at twenty-five dollars ($25) per hour. Settlement Class Members can receive reimbursement of Attested Time with a brief description of the actions taken in response to the Data Security Incident and the time associated with each action. Claims for Attested Time are capped at $125.00 per individual. A claim for Attested Time may be **combined** with reimbursement for Out-of-Pocket Losses but in no circumstance will a Settlement Class Member be eligible to receive more than the $25,000.00 individual cap.

52.     **Assessing Claims for Attested Time**. The Settlement Administrator shall have the sole discretion and authority to determine whether the prerequisites have been met in order to award payments of Attested Time but may consult with Class Counsel in making individual determinations. The Settlement Administrator is authorized to contact any Settlement Class Member (by e-mail, telephone, or U.S. mail) to seek clarification regarding a submitted claim prior to making a determination as to its validity.

53.     **Disputes**. To the extent the Settlement Administrator determines a claim for Out-of-Pocket Losses or Attested Time is deficient in whole or part, within a reasonable time of making such a determination, the Settlement Administrator shall notify the Settlement Class Member of the deficiencies and give the Settlement Class Member twenty-one (21) days to cure the deficiencies. Such notifications shall be sent via e-mail, unless the claimant did not provide an e-mail address, in which case such notifications shall be sent via U.S. mail. If the Settlement Class Member attempts to cure the deficiencies but, at the sole discretion and authority of the Settlement Administrator, fails to do so, the Settlement Administrator shall notify the Settlement Class Member of that determination within ten (10) days of the determination. The Settlement Administrator may consult with Class Counsel in making such determinations.

## V.     ALTERNATIVE CASH PAYMENTS

54.     **Alternative Cash Payments.** Participating Settlement Class Members who are not eligible to receive a CCPA Cash Payment may elect to receive a cash payment in an amount equal to $150.00.  If a Participating Settlement Class Member attempts to seek both a CCPA Cash Payment and an Alternative Cash Payment under the Settlement, the Settlement Administrator is authorized to contact the Participating Settlement Class Member (by e-mail, telephone, or U.S. mail) to seek clarification regarding the Participating Settlement Class Member's eligibility for the benefit selected.

## VI.    PRO RATA ADJUSTMENTS

55.     **Pro Rata Adjustments Downward for All Claims.**  If the aggregate value of claims for CCPA Cash Payments, reimbursement for Out-Of-Pocket Losses and Attested Time, and Alternative Cash Payments exceeds the Net Settlement Fund, the amount of each such claim shall be reduced *pro rata* so that the aggregate value of all claims equals the Net Settlement Fund.

56.     **Pro Rata Adjustments Upward for CCPA Cash Payments.**  If the Net Settlement Fund exceeds the aggregate value of claims for CCPA Cash Payments, reimbursement for Out-Of-Pocket Losses and Attested Time, and Alternative Cash Payments, the amount of each CCPA Cash Payment shall be increased *pro rata* so that the aggregate value of all claims equals the Net Settlement Fund, subject to a maximum of $750.00 for each CCPA Cash Payment.  If the CCPA Cash Payments reach the $750.00 maximum and the Net Settlement Fund still exceeds the aggregate value of all claims, the excess funds shall be distributed pro ratably to the remaining class members who file claims, subject to Paragraph 60.

## VII.   PAYMENTS TO PARTICIPATING SETTLEMENT CLASS MEMBERS

57.     **Payment Timing.** Payments for Approved Claims for CCPA Cash Payments, reimbursement for Out-of-Pocket Losses and Attested Time, and/or Alternative Cash Payments shall be issued in the form of an electronic payment via Zelle, Venmo, or PayPal, or mailed in the form of a MasterCard or check to a Participating Settlement Class Member by the Settlement Administrator pursuant to Paragraphs 57-61 as soon as practicable after the allocation and distribution of funds are determined by the Settlement Administrator following the Effective Date.

58.     **Expiration of Checks.** Settlement Checks shall bear in the legend that they expire if not negotiated within ninety (90) days of their date of issue. If a Settlement Check is not cashed within sixty (60) days after the date of issue, the Settlement Administrator is authorized to send an e-mail and/or place a telephone call to that Participating Settlement Class Member reminding him/her of the deadline to cash such check.

59.     **Uncashed Checks.** To the extent that a Settlement Check is not cashed within ninety (90) days after the date of issue, the Settlement Administrator shall undertake the

following actions: (1) attempt to contact the Participating Settlement Class Member by e-mail and/or telephone to discuss how to obtain a reissued check; (2) if those efforts are unsuccessful, make reasonable efforts to locate an updated address for the Participating Settlement Class Member using advanced address searches or other reasonable methods; and (3) reissuing a check or mailing the Participating Settlement Class Member a postcard (either to an updated address if located or the original address if not) providing information regarding how to obtain a reissued check. Any reissued Settlement Checks issued to Participating Settlement Class Members shall remain valid and negotiable for sixty (60) days from the date of their issuance and may thereafter automatically be canceled if not cashed by the Participating Settlement Class Members within that time.

60.    **Unclaimed Property.** No portion of the Settlement Fund shall revert or be repaid to Paysafe after the Effective Date. Any undistributed funds shall be distributed as set forth in Paragraph 56, unless such funds cannot reasonably be distributed due to the administrative costs and burden in distributing such residual funds to class members who filed claims, in which case such excess funds shall be awarded to a mutually agreed-upon and qualified *cy pres* recipient subject to the Court's approval.

61.    **Checks to Deceased Class Members.** If the Settlement Administrator is notified that a Participating Settlement Class Member is deceased, the Settlement Administrator is authorized to reissue the Settlement Check to the Participating Settlement Class Member's estate upon receiving proof the Participating Settlement Class Member is deceased and after consultation with Class Counsel.

## VIII.    CLAIM SUBMISSION

62.    **Submission of Electronic and Hard Copy Claims.** Participating Settlement Class Members may submit Claim Forms to the Settlement Administrator electronically via a claims website or physically by mail to the Settlement Administrator. Claim Forms must be submitted electronically or postmarked during the Claims Period and on or before the Claims Deadline. Paysafe shall not be entitled to access information regarding which Settlement Class Members submitted a Claim Form or otherwise participated in the Settlement. Paysafe's Counsel may obtain this information on a showing of good cause, including but not limited to any disputes arising out of the claims process.

## IX.    BUSINESS PRACTICE COMMITMENTS

63.    **Business Practice Changes**. Paysafe agrees to provide Class Counsel information concerning the remedial actions taken since the Data Security Incident to enhance its cybersecurity training and awareness programs, data security policies, security measures, restrictions to accessing Personal Information, and its monitoring and response capabilities.

## X.    SETTLEMENT CLASS NOTICE

64.    **Notice**. Within twenty-one (21) days after the date of the Preliminary Approval Order, Paysafe shall provide the Settlement Class List to the Settlement Administrator. The

Settlement Administrator shall execute a Business Associate Agreement, including an agreement to maintain the confidentiality of the Settlement Class List, to implement appropriate safeguards to prevent unauthorized access to the Settlement Class List, and to use the Settlement Class List strictly for the business purpose of administering the Settlement.  The Settlement Administrator shall not provide the Settlement Class List to Class Counsel. Within seven (7) days after receipt of the Settlement Class List, the Settlement Administrator shall disseminate Notice to the members of the Settlement Class. Notice shall be disseminated via U.S. mail to all Settlement Class members. Class Counsel may direct the Settlement Administrator to send reminder notices to Settlement Class Members at any time prior to the Claims Deadline.

## XI.   OPT-OUTS AND OBJECTIONS

65.    **Opt-Outs**. The Notice shall explain the procedure for Settlement Class Members to exclude themselves or "opt-out" of the Settlement by submitting a Request for Exclusion to the Settlement Administrator postmarked no later than forty (40) days after the Notice Deadline. The Request for Exclusion must include the name of the proceeding, the individual's full name, current address, personal signature, and the words "Request for Exclusion" or a comparable statement that the individual does not wish to participate in the Settlement at the top of the communication. The Notice must state that any Settlement Class Member who does not file a timely Request for Exclusion in accordance with this Paragraph will lose the opportunity to exclude himself or herself from the Settlement and will be bound by the Settlement.

66.    **Objections**. The Notice shall explain the procedure for Settlement Class Members to object to the Settlement or Fee Application by submitting written objections to the Settlement Administrator postmarked no later than forty (40) days after the Notice Deadline. The written objection must include: (i) the name of the proceedings; (ii) the Settlement Class Member's full name, current mailing address, and telephone number; (iii) a statement of the specific grounds for the objection, as well as any documents supporting the objection; (iv) a statement as to whether the objection applies only to the objector, to a specific subset of the class, or to the entire class; (v) the identity of any attorneys representing the objector; (vi) a statement regarding whether the Settlement Class Member (or his/her attorney) intends to appear at the Final Approval Hearing; and (vii) the signature of the Settlement Class Member or the Settlement Class Member's attorney. The Notice must set forth the time and place of the Final Approval Hearing (subject to change) and state that any Settlement Class Member who does not file a timely and adequate objection in accordance with this Paragraph waives the right to object or to be heard at the Final Approval Hearing and shall be forever barred from making any objection to the Settlement.

## XII.   DUTIES OF THE SETTLEMENT ADMINISTRATOR

67.    **Duties of Settlement Administrator**. The Settlement Administrator shall perform the functions and duties necessary to effectuate the Settlement and as specified in this Agreement, including, but not limited to, the following:

   a.  Creating, administering, and overseeing the Settlement Fund;

b.  Obtaining the Settlement Class List for the purpose of disseminating Notice to Settlement Class Members;

c.  Providing Notice to Settlement Class Members via U.S. mail and e-mail;

d.  Establishing and maintaining the Settlement Website;

e.  Establishing and maintaining a toll-free telephone line for Settlement Class Members to call with Settlement-related inquiries, and answering the questions of Settlement Class Members who call with or otherwise communicate such inquiries within one (1) business day;

f.  Responding to any mailed or emailed Settlement Class Member inquiries within one (1) business day;

g.  Reviewing, determining the validity of, and processing all claims submitted by Participating Settlement Class Members;

h.  Receiving Requests for Exclusion and objections from Settlement Class Members and providing Class Counsel and Paysafe's Counsel a copy thereof no later than three (3) days following the deadline for submission of the same. If the Settlement Administrator receives any Requests for Exclusion, objections, or other requests from Settlement Class Members after the Opt-Out and Objection Deadlines, the Settlement Administrator shall promptly provide copies thereof to Class Counsel and to Paysafe's Counsel;

i.  After the Effective Date, processing and transmitting Settlement Payments to Participating Settlement Class Members;

j.  Providing weekly or other periodic reports to Class Counsel and Paysafe's Counsel that include information regarding the number of Settlement Payments sent or Settlement Checks mailed and delivered, Settlement Checks cashed, undeliverable information, and any other requested information relating to Settlement Payments. The Settlement Administrator shall also, as requested by Class Counsel or Paysafe's Counsel and from time to time, provide the amounts remaining in the Net Settlement Fund;

k.  In advance of the Final Approval Hearing, preparing a sworn declaration to submit to the Court that: (i) attests to implementation of Notice in accordance with the Preliminary Approval Order; and (ii) identifies each Settlement Class Member who timely and properly submitted a Request for Exclusion; and

l.  Performing any function related to Settlement administration at the agreed-upon instruction of Class Counsel or Paysafe's Counsel, including, but not limited to, verifying that Settlement Payments have been distributed.

68.     **Limitation of Liability**. The Parties, Class Counsel, and Paysafe Counsel shall not have any liability whatsoever with respect to: (i) any act, omission or determination of the Settlement Administrator, or any of its respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment or distribution of the Settlement Fund; (iii) the formulation, design or terms of the disbursement of the Settlement Fund; (iv) the determination, administration, calculation or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by or fluctuations in the value of the Settlement Fund; or (vi) the payment or withholding of any Taxes and Tax-Related Expenses.

69.     **Indemnification**. The Settlement Administrator shall indemnify and hold harmless the Parties, Class Counsel, and Paysafe's Counsel for: (i) any act or omission or determination of the Settlement Administrator, or any of Settlement Administrator's designees or agents, in connection with the Notice Plan and the administration of the Settlement; (ii) the management, investment or distribution of the Settlement Fund; (iii) the formulation, design or terms of the disbursement of the Settlement Fund; (iv) the determination, administration, calculation or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by, or fluctuations in the value of the Settlement Fund; or (vi) the payment or withholding of any Taxes and Tax-Related Expenses.

## XIII.   <u>PRELIMINARY APPROVAL, FINAL APPROVAL, AND JURISDICTION</u>

70.     **Certification of the Settlement Class**. For purposes of this Settlement only, the Parties stipulate to the certification of the Settlement Class, which is contingent upon the Court entering the Final Approval Order and Judgment of this Settlement and the occurrence of the Effective Date.

71.     **Preliminary Approval**. Following execution of this Agreement, Class Counsel shall file a motion for preliminary approval of the settlement within 10 days.

72.     **Final Approval**. Class Counsel shall move the Court for a Final Approval Order and Judgment of this Settlement, to be issued following the Final Approval Hearing, within a reasonable time after the Notice Deadline, Objection Deadline, and Opt-Out Deadline.

73.     **Jurisdiction**. The Court shall retain exclusive jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement that cannot be resolved by negotiation and agreement by counsel for the Parties. The Court shall retain exclusive jurisdiction over all parties to this Action and the Settlement Class for the purpose of consummating, implementing, administering, and enforcing all terms of the Agreement. The Court shall also retain exclusive jurisdiction over all questions and/or disputes related to the Notice and the Settlement Administrator. As part of its agreement to render services in connection with this Settlement, the Settlement Administrator shall consent to the jurisdiction of the Court for this purpose.  From and after the entry of the Preliminary Approval Order, all Class Members who have not opted out are barred and enjoined from filing, commencing, continuing, prosecuting, intervening in, or participating as class members in any other suit, action, proceeding, case, controversy, or dispute in any jurisdiction against any or all

of the Released Parties based on or relating to the Agreement or the matters, claims, or causes of action, or the facts and circumstances relating thereto in this Litigation, that are to be released upon entry of the Final Approval Order and Judgment pursuant to the Agreement, except as required by law or as required to effectuate this Agreement.  Furthermore, all persons are enjoined from filing, commencing, prosecuting, litigating, or continuing a lawsuit in any jurisdiction on behalf of Settlement Class Members who have not timely excluded themselves, that is based on or relating to the claims and causes of action, or the facts and circumstances relating thereto, in this Litigation.

## XIV.   <u>MODIFICATION AND TERMINATION</u>

74.    **Modification.** The terms and provisions of this Agreement may be amended, modified, or expanded by written agreement of the Parties and approval of the Court; provided, however, that, after entry of the Preliminary Approval Order, the Parties may, by written agreement, effect such amendments, modifications, or expansions of this Agreement and its implementing documents (including all exhibits hereto) without further notice to the Settlement Class or approval by the Court if such changes are consistent with the Court's Preliminary Approval Order and do not materially alter, reduce, or limit the rights of Settlement Class Members under this Agreement.

75.    **Decertification of the Settlement Class if Settlement Not Approved.** If: (1) the Court does not issue the Preliminary Approval Order or Final Approval Order and Judgment; or (2) the Effective Date not occur, the certification of the Settlement Class shall be void. Paysafe reserves the right to contest class certification for all other purposes. Any orders preliminarily or finally approving the certification of any class contemplated by the Settlement shall be null, void, and vacated, and shall not be used or cited thereafter by any person or entity in support of claims or defenses or in support or in opposition to a class certification motion. In addition, the fact that Paysafe did not oppose certification of a class under the Settlement shall not be used or cited thereafter by any person or entity, including in a contested proceeding relating to class certification.

76.    **Termination.** Settlement Class Representative and Defendant shall have the right to terminate this Agreement by providing written notice of their or its election to do so ("Termination Notice") within seven (7) days of: (1) the Court's refusal to issue the Preliminary Approval Order; or (2) within fourteen (14) days of any of the following: (i) the Court's refusal to enter the Final Approval Order and Judgment, or (ii) the date upon which the Final Approval Order and Judgment is modified or reversed in any material respect by any appellate or other court.

77.    **Effect of Termination.** In the event of a termination as provided in Paragraph 76, this Agreement and the Settlement shall be considered null and void; all of the Parties' obligations under the Agreement shall cease to be of any force and effect and the Parties shall return to the status quo ante in the Litigation as if the Parties had not entered into this Agreement or the Settlement. In addition, in the event of such a termination, all of the Parties' respective pre-Settlement claims and defenses will be preserved.

## XV.   <u>RELEASES</u>

78.    **The Release.** Upon the Effective Date, and in consideration of the Settlement benefits described herein, each of the Settlement Class Representative and Participating Settlement Class Members, and each of their respective heirs, executors, administrators, representatives, agents, partners, successors, attorneys, and assigns, present and former ("Releasing Parties"), shall be deemed to have fully, finally, and forever released, acquitted, and discharged Paysafe and its present and former predecessors, successors, assigns, parents, subsidiaries, divisions, affiliates, departments, and any and all of their past, present, and future officers, directors, employees, stockholders, partners, servants, agents, successors, attorneys, advisors, consultants, representatives, insurers, reinsurers, subrogees and the predecessors, successors, and assigns of any of the foregoing (collectively, the "Released Persons") from any and all Released Claims. This release expressly includes Paysafe's insurer with respect to all obligations under any part of the insurance policy applicable to the Released Claims, and from any and all claims arising out of the investigation, handling, adjusting, defense, or settlement of the claim including, without limitation, any claims for negligence, invasion of privacy, violations of California's Unfair Competition Law (cal. Bus. & Prof. Code § 17200, et seq.), and violations of California's Consumer Privacy Act (Cal. Civ. Code § 1798.150).

79.    **Unknown Claims.** The Released Claims include the release of Unknown Claims. "Unknown Claims" means claims that could have been raised in the Litigation and that any of the Settlement Class Representative or Participating Settlement Class Members, and each of their respective heirs, executors, administrators, representatives, agents, partners, successors, attorneys, and assigns, does not know or suspect to exist, which, if known by him, her, or it, might affect his, her, or its agreement to release Paysafe and its present and former predecessors, successors, assigns, parents, subsidiaries, divisions, affiliates, departments, and any and all of their past, present, and future officers, directors, employees, stockholders, partners, servants, agents, successors, attorneys, advisors, consultants, representatives, insurers, reinsurers, subrogees and the predecessors, successors, and assigns of any of the foregoing, or the Released Claims, or might affect his, her, or its decision to agree, object, or not to object to the Settlement. Upon the Effective Date, each of the Settlement Class Representative and Participating Settlement Class Members, and each of their respective heirs, executors, administrators, representatives, agents, partners, successors, attorneys, and assigns shall be deemed to have, and shall have, waived any and all provisions, rights, and benefits conferred by any law of any state, the District of Columbia or territory of the United States, by federal law, or principle of common law, or the law of any jurisdiction outside of the United States. The Settlement Class Representative and Participating Settlement Class Members, and each of their respective heirs, executors, administrators, representatives, agents, partners, successors, attorneys, and assigns acknowledge that they may discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of the Release, but that it is their intention to finally and forever settle and release the Released Claims, including but not limited to any Unknown Claims they may have, as that term is defined in this Paragraph.

80.    **Release of Class Representative and Class Counsel**. Upon the Effective Date, Paysafe and its representatives, officers, agents, directors, affiliates, employees, insurers, and attorneys shall be deemed to have released, acquitted, and forever discharged the Settlement

Class Representative and Class Counsel from any and all claims or causes of action of every kind and description, including any causes of action in law, claims in equity, complaints, suits or petitions, and any allegations of wrongdoing, demands for legal, equitable, or administrative relief (including, but not limited to, any claims for injunction, rescission, reformation, restitution, disgorgement, constructive trust, declaratory relief, compensatory damages, consequential damages, penalties, exemplary damages, punitive damages, attorneys' fees, costs, interest or expenses), whether known or unknown, that arise out of, are based upon, or relate to prosecution of the Litigation, the Settlement Agreement, or the Settlement claims process (provided, however, that this release and discharge shall not include claims relating to the enforcement of the terms of the Settlement or this Agreement).

81.    **Bar to Future Suits.** Upon entry of the Final Approval Order and Judgment, the Settlement Class Representative and other Participating Settlement Class Members shall be enjoined from prosecuting any claim they have released in the preceding Paragraphs in any proceeding against any of the Released Parties or based on any actions taken by any of the Released Parties that are authorized or required by this Agreement or by the Final Approval Order and Judgment. Likewise, Paysafe and its representatives, officers, agents, directors, affiliates, employees, insurers, and attorneys shall be enjoined from prosecuting any claim they have released in the preceding Paragraphs in any proceeding against Settlement Class Representative and Class Counsel or based on any actions taken by Settlement Class Representative and Class Counsel that are authorized or required by this Agreement or by the Final Approval Order and Judgment. It is further agreed that the Settlement may be pleaded as a complete defense to any claim or proceeding described in this Section.

82.    **Satisfaction of Judgment.** Once all obligations in this Settlement Agreement have been satisfied, the Parties agree to file a satisfaction of judgment with the Court.

## XVI.  SERVICE AWARD PAYMENT

83.    **Service Award Payment**. At least thirty (30) days before the Opt-Out and Objection Deadlines, Class Counsel will file a Fee Application that will include a request for a Service Award Payment for the Settlement Class Representative in recognition of his contributions to this Litigation. Paysafe agrees not to oppose Class Counsel's request for a service award not to exceed $15,000.00. The Settlement Administrator shall make the Service Award Payment to the Settlement Class Representative from the Settlement Fund. Such Service Award Payment shall be paid by the Settlement Administrator, in the amount approved by the Court, no later than thirty (30) days after the Effective Date.

84.    **No Effect on Agreement**. In the event the Court declines to approve, in whole or in part, the Service Award Payment in the amount requested, the remaining provisions of this Agreement shall remain in full force and effect. No decision by the Court, or modification or reversal or appeal of any decision by the Court, concerning the amount of the Service Award Payment, shall constitute grounds for termination of this Agreement.

## XVII.  ATTORNEYS' FEES, COSTS, EXPENSES

85.     **Attorneys' Fees and Costs and Expenses**. At least thirty (30) days before the Opt-Out and Objection Deadlines, Class Counsel will file a Fee Application for an award of attorneys' fees and Litigation Costs and Expenses to be paid from the Settlement Fund. Class Counsel will request an award of attorneys' fees not to exceed twenty five percent (25%) of the Settlement Fund and reimbursement of litigation costs and expenses not to exceed $50,000. Prior to the disbursement or payment of the Fee Award and Costs under this Agreement, Class Counsel shall provide to Paysafe and the Settlement Administrator a properly completed and duly executed IRS Form W-9. Fee Award and Costs (plus any interest accrued thereon) shall be paid by the Settlement Administrator, in the amount approved by the Court, no later than thirty (30) days after the Effective Date.

86.     **Allocation**. Unless otherwise ordered by the Court, Class Counsel shall have the sole and absolute discretion to allocate any approved Fee Award and Costs amongst Plaintiffs' counsel and any other attorneys for Plaintiff. Paysafe shall have no liability or other responsibility for allocation of any such attorneys' fees and costs.

## XVIII. <u>NO ADMISSION OF LIABILITY</u>

87.     **No Admission of Liability**. The Parties understand and acknowledge that this Agreement constitutes a compromise and settlement of disputed claims. No action taken by the Parties either previously or in connection with the negotiations or proceedings connected with this Agreement shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made, or an acknowledgment or admission by any party of any fault, liability, or wrongdoing of any kind whatsoever.

88.     **No Use of Agreement**. Neither the Settlement Agreement, nor any act performed or document executed pursuant to or in furtherance of the Settlement: (i) is or may be deemed to be, or may be used as, an admission of, or evidence of, the validity of any claim made by Plaintiff; or (ii) is or may be deemed to be, or may be used as, an admission of, or evidence of, any fault or omission by Paysafe in the Litigation or in any proceeding in any court, administrative agency, or other tribunal.

## XIX.    <u>MISCELLANEOUS</u>

89.     **Integration of Exhibits**. The exhibits to this Agreement and any exhibits thereto are a material part of the Settlement and are incorporated and made a part of the Agreement.

90.     **Entire Agreement**. This Agreement, including all exhibits hereto, shall constitute the entire Agreement among the Parties with regard to the subject matter hereof and shall supersede any previous agreements, representations, communications, and understandings among the Parties. This Agreement may not be changed, modified, or amended except in writing signed by all Parties, subject to Court approval. The Parties contemplate that, subject to Court approval or without such approval where legally permissible, the exhibits to this Agreement may be modified by subsequent Agreement of counsel for the Parties prior to dissemination of the Settlement Class Notice to the Settlement Class.

91.   **Deadlines**. If any of the dates or deadlines specified herein falls on a weekend or legal holiday, the applicable date or deadline shall fall on the next business day. All reference to "days" in this agreement shall refer to calendar days unless otherwise specified.

92.   **Construction**. For the purpose of construing or interpreting this Agreement, the Parties agree that this Agreement is to be deemed to have been drafted equally by all Parties hereto and shall not be construed strictly for or against any Party.

93.   **Cooperation of Parties**. The Parties to this Agreement agree to cooperate in good faith to prepare and execute all documents, to seek Court approval, defend Court approval, and to do all things reasonably necessary to complete and effectuate the Settlement described in this Agreement.

94.   **Obligation to Meet and Confer**. Before filing any motion in the Court raising a dispute arising out of or related to this Agreement, the Parties shall consult with each other in good faith prior to seeking Court intervention.

95.   **Governing Law**. The Agreement shall be construed in accordance with, and be governed by, the laws of the state of California, without regard to the principles thereof regarding choice of law.

96.   **Counterparts**. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, even though all signatories do not sign the same counterparts. Original signatures are not required. Any signature submitted electronically through e-mail of an Adobe PDF shall be deemed an original.

97.   **Notices**. All notices to Class Counsel provided for herein, shall be sent by overnight mail and email to:

M. Anderson Berry (SBN 262879)
Gregory Haroutunian (SBN 330263)
CLAYEO C. ARNOLD,
A PROFESSIONAL LAW CORP.
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 777-7777
Facsimile: (916) 924-1829
aberry@justice4you.com
gharoutunian@justice4you.com

John A. Yanchunis
Ryan D. Maxey
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
201 N. Franklin Street, 7th Floor

Tampa, Florida 33602
(813) 223-5505
jyanchunis@ForThePeople.com
rmaxey@ForThePeople.com

All notices to Paysafe provided for herein, shall be sent by overnight mail and email to:

Jim Pastore
Kristin D. Kiehn
DEBEVOISE AND PLIMPTON
919 Third Avenue
New York, NY 10022
212-909-6000
jjpastore@debevoise.com
kdkiehn@debevoise.com

The notice recipients and addresses designated above may be changed by written notice.

98.     **Authority**. Any person executing this Agreement in a representative capacity represents and warrants that he or she is fully authorized to do so and to bind the Party on whose behalf he or she signs this Agreement to all of the terms and provisions of this Agreement.

By: _____          Date: December 18, 2022

Printed Name: Philip J. Ragona
On behalf of Paysafe

Its: SVP and Deputy General Counsel

By: _____          Date: December 20, 2022
Jim Pastore
Debevoise & Plimpton LLP

By: _____          Date: December 20, 2022
Kristin D. Kiehn
Debevoise & Plimpton LLP

*Counsel for Paysafe*

By: _____          Date: 12/27/2022
Ryan D. Maxey
MORGAN & MORGAN

By: _____          Date: 12/21/2022

19

M. Anderson Berry
ARNOLD LAW FIRM

By: _____          Date: __12/22/22_____

John A. Yanchunis
MORGAN & MORGAN

By: _____          Date: __12/22/22_____

Gregory Haroutunian
ARNOLD LAW FIRM

*Counsel for Plaintiff and the Settlement Class*

# EXHIBIT 1

## **Court Approved Legal Notice**
**Case No. 3:21-cv-00641-JCS**

### If You Were Subject to the PAYSAFE PAYMENT PROCESSING SOLUTIONS DATA SECURITY INCIDENT, You Could be Eligible for a Payment.

*A California federal court has authorized this Notice. This is not a solicitation from a lawyer.*

### Complete and Return the Claim Form by Month XX, 202X.

www.[website].com

1-888-888-8888

*Para una notificación en Español, llamar 1-888-888-8888 o visitar nuestro sitio web www.[website].com.*

---

*Kamal Bitmouni v. Paysafe Payment Processing Solutions, LLC*
P.O. Box _____
_____, __ _____

---

Forwarding Service Requested

### Zip code not valid!

Postal Service: Please do not mark barcode
Claim No.:

[CLAIMANT INFO]

---

A proposed Settlement for a data security incident has been reached with Paysafe Payment Processing Solutions, LLC ("Paysafe"). On November 6, 2020, Paysafe discovered that an unauthorized actor may have accessed a legacy server under Paysafe's custody or control. As a result, Personal Information of approximately 91,706 individuals who enrolled for merchant services with Paysafe's affiliate may have been accessed, including name, contact details, Social Security number, and bank account information.

**Who is Included?** If you received this Notice by mail or email, records indicate you are included in this Settlement. The Court decided that Settlement Class Members include individuals identified on the Settlement Class List, including all individuals who were notified, including by direct notice and publication by Paysafe, that their personal information was or may have been compromised in the data security incident initially disclosed by Paysafe on or about December 16, 2020.

**What does the Settlement Provide?** The Settlement establishes a $2.0 million Settlement Fund to be used to pay for CCPA Cash Payments, reimbursement of Out-of-Pocket Losses and/or Attested Time, and/or Alternative Cash Payments; costs of notice and administration; Service Award to the Class Representative; and attorneys' fees, costs, and expenses. Also, Paysafe has agreed to undertake certain remedial measures and enhanced data security measures. Claimants may select between a CCPA Cash Payment or an Alternative Cash Payment, as well as reimbursement for Out-of-Pocket Losses and/or Attested Time.

**CCPA Cash Payment** – a Class Member who was a resident of California at any time during the Data Security Incident (*i.e.*, from May 2018 to October 2020) may elect to receive a CCPA Cash Payment of $200, which may be increased *pro rata* up to a maximum of $750 or decreased *pro rata* depending on the number of claims and funds available.

**Reimbursement of Out-of-Pocket Losses** – all Class Members may submit a claim for up to $25,000 for reimbursement of Out-of-Pocket Losses, which may be combined with reimbursement for Attested Time. A claim for Out-of-Pocket Losses may be reduced *pro rata* depending on the number of claims and funds available.

**Reimbursement of Attested Time** – all Class Members may submit a claim for reimbursement of Attested Time up to five (5) hours at $25 per hour, which may be combined with reimbursement for Out-of-Pocket Losses. A claim for Attested Time may be reduced *pro rata* depending on the number of claims and funds available.

**Alternative Cash Payment** – a Class Member who is not eligible to receive a CCPA Cash Payment may elect to receive a cash payment of $150, which may be reduced *pro rata* if the aggregate value of all claims exceeds the Net Settlement Fund.

**How To Get Benefits:** You must complete and file a Claim Form online or by mail postmarked by **Month XX, 202X**, including required documentation. You can file your claim online at **www.[website].com**. You may also get a paper Claim Form at the website, or by calling the toll-free number, and submit by mail.

**Your Other Options.** If you do not want to be bound by the legally Settlement, you must exclude yourself by **Month XX, 202X**. If you do not exclude yourself, you will release any claims you may have against Paysafe or related parties related to the Paysafe Data Security Incident, as more fully described in the Settlement Agreement, available at the settlement website. If you do not exclude yourself, you may object to the Settlement by **Month XX, 202X**.

**The Final Approval Hearing.** The Court has scheduled a hearing in this case (*Kamal Bitmouni v. Paysafe Payment Processing Solutions, LLC, Case No. 3:21-cv-00641-JCS*) for **Month XX, 2022**, to consider: whether to approve the Settlement, Service Award, attorneys' fees and expenses, as well as any objections. You or your attorney may attend and ask to appear at the hearing, but you are not required to do so.

**More Information.** Complete information about your rights and options, as well as the Claim Form, the Long Form Notice, and Settlement Agreement are available at **www.[website].com**, or by calling toll free 1-888-888-8888.

Email Notice

# If You Were Subject to the PAYSAFE DATA SECURITY INCIDENT, You Could Be Eligible for a Payment.

*The United States District Court for the Northern District of California has authorized this Notice. This is not a solicitation from a lawyer.*

*Para una notificación en Español, llamar 1-888-888-8888 o visitar nuestro sitio web www.[website].com.*

# Click here to file a claim by Month XX, 202X.

A proposed Settlement for a data security incident has been reached with Paysafe Payment Processing Solutions, LLC ("Paysafe"). On or about November 6, 2020, Paysafe discovered that an unauthorized actor may have accessed a legacy server under Paysafe's custody or control. As a result, Personal Information of approximately 91,706 individuals who enrolled for merchant services with Paysafe's affiliate may have been accessed, including name, contact details, Social Security number, and bank account information.

**Who is Included?** If you received this Notice by mail or email, records indicate you are included in this Settlement. The Court decided that Settlement Class Members include individuals identified on the Settlement Class List, including all individuals who were notified, including by direct notice and publication by Paysafe, that their personal information was or may have been compromised in the data security incident initially disclosed by Paysafe on or about December 16, 2020.

**What does the Settlement Provide?** The Settlement establishes a $2.0 million Settlement Fund to be used to pay for CCPA Cash Payments, reimbursement of Out-of-Pocket Losses and/or Attested Time, and/or Alternative Cash Payments; costs of notice and administration; Service Award to the Class Representative; and attorneys' fees, costs, and expenses. Also, Paysafe has agreed to undertake certain remedial measures and enhanced data security measures. Claimants may select between: CCPA Cash Payments or Alternative Cash Payments, and reimbursement of Out-of-Pocket Losses and/or Attested Time.

**CCPA Cash Payment** – a Class Member who was a resident of California at any time during the Data Security Incident (*i.e.*, from May 2018 to October 2020) may elect to receive a CCPA Cash Payment of $200, which may be increased *pro rata* up to a maximum of $750 or decreased *pro rata* depending on the number of claims and funds available.

**Reimbursement of Out-of-Pocket Losses** – all Class Members may submit a claim for up to $25,000 for reimbursement of Out-of-Pocket Losses, which may be combined with reimbursement for Attested Time. A claim for Out-of-Pocket Losses may be reduced *pro rata* depending on the number of claims and funds available.

**Reimbursement of Attested Time** – all Class Members may submit a claim for reimbursement of Attested Time up to five (5) hours at $25 per hour, which may be combined with reimbursement for Out-of-Pocket Losses. A claim for Attested Time may be reduced *pro rata* depending on the number of claims and funds available.

**Alternative Cash Payment** – a Class Member who is not eligible to receive a CCPA Cash Payment may elect to receive a cash payment of $150, which may be reduced *pro rata* if the aggregate value of all claims exceeds the Net Settlement Fund.

**How To Get Benefits**: You must complete and file a Claim Form online or by mail postmarked by Month XX, 202X, including required documentation. You can file your claim online at www.[website].com. You may also get a paper Claim Form at the website, or by calling the toll-free number, and submit by mail.

**Your Other Options**. If you do not want to be legally bound by the Settlement, you must exclude yourself by Month XX, 202X. If you do not exclude yourself, you will release any claims you may have against Paysafe or related parties related to the Paysafe Data Security Incident, as more fully described in the Settlement Agreement, available at the settlement website. If you do not exclude yourself, you may object to the Settlement by Month XX, 202X.

**The Final Approval Hearing**. The Court has scheduled a hearing in this case (Kamal Bitmouni v. Paysafe Payment Processing Solutions, LLC, Case No. 3:21-cv-00641-JCS) for Month XX, 2022, to consider: whether to approve the Settlement, Service Award, attorneys' fees and expenses, as well as any objections. You or your attorney may attend and ask to appear at the hearing, but you are not required to do so.

More Information. Complete information about your rights and options, as well as the Claim Form, the Long Form Notice, and Settlement Agreement are available at www.[website].com, or by calling toll free 1-888-888-8888.

*Kamal Bitmouni v. Paysafe Payment Processing Solutions, LLC*
**Case No. 3:21-cv-00641-JCS (N.D. Cal.)**

# Notice of Paysafe Data Security Incident Class Action Settlement

*A California federal court has authorized this Notice. This is <u>not</u> a solicitation from a lawyer.*
*Please read this Notice carefully and completely.*

**<u>THIS NOTICE MAY AFFECT YOUR RIGHTS. PLEASE READ IT CAREFULLY.</u>**

*Para una notificación en Español, llamar 1-888-888-8888 o visitar nuestro sitio web www.[website].com.*

- A Settlement has been proposed in a class action lawsuit against Paysafe Payment Processing Solutions, LLC ("Paysafe"), relating to a data security incident that Paysafe initially disclosed in or around December 2020 (the "Data Security Incident"). The Data Security Incident occurred from May 2018 to October 2020, during which time a legacy server under Paysafe's custody or control may have been accessed without authorization. As a result, Personal Information of thousands of individuals who enrolled for merchant services with Paysafe's affiliate(s) may have been accessed by unauthorized persons. The Personal Information obtained may have included name, contact details, Social Security number, and bank account information. If your Personal Information may have been compromised as a result of the Data Security Incident, you are included in this Settlement as a member of the Settlement Class.

- Under the Settlement, Paysafe has agreed to establish a $2.0 million Settlement Fund to: (1) make statutory damages payments ("CCPA Cash Payment") of up to $750 to Class Members who resided in California at any time during the Data Security Incident (*i.e.*, from May 2018 to October 2020); (2) reimburse Class Members for up to $25,000 in Out-Of-Pocket Losses and/or Attested Time; and (3) provide cash payments of up to $150 to Class Members who are not eligible to receive CCPA Cash Payments ("Alternative Cash Payment"). The Settlement Fund will also be used to pay for the costs of the settlement administration, a court-approved Service Award for the named Plaintiff, and the Fee Award and Costs. In addition, Paysafe has agreed to undertake certain remedial measures and enhanced security measures that they will continue to implement.

- Your legal rights will be affected whether you act or do not act. <u>You should read this entire Notice carefully.</u>

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **FILE A CLAIM FORM**<br><br>**EARLIEST DEADLINE: [xxxx xx, 202X]** | Submitting a Claim Form is the only way that you can receive any of the Settlement Benefits provided by this Settlement, including a CCPA Cash Payment, reimbursement for Out-of-Pocket Losses and/or Attested Time, and/or an Alternative Cash Payment. A Settlement Class Member who submits a Claim Form is a "Participating Settlement Class Member."<br><br>If you submit a Claim Form, you will give up the right to sue Paysafe and certain related parties in a separate lawsuit about the legal claims this Settlement resolves. |
| **EXCLUDE YOURSELF FROM THIS SETTLEMENT**<br><br>**DEADLINE: [XXXX XX, 202X]** | This is the only option that allows you to sue, continue to sue, or be part of another lawsuit against Paysafe, or certain related parties, for the claims this Settlement resolves.<br><br>If you exclude yourself, you will give up the right to receive any Settlement Benefits from this Settlement. |
| **OBJECT TO OR COMMENT ON THE SETTLEMENT**<br><br>**DEADLINE: [XXXX XX, 202X]** | You may object to the Settlement by writing to the Court and informing it why you do not think the Settlement should be approved. You can also write the Court to provide comments or reasons why you support the Settlement.<br><br>If you object, you may also file a Claim Form to receive Settlement Benefits, but you will give up the right to sue Paysafe in a separate lawsuit about the legal claims this Settlement resolves. |
| **GO TO THE "FINAL APPROVAL" HEARING**<br><br>**DATE: XXXX XX, 202X** | You may attend the Final Approval Hearing where the Court may hear arguments concerning approval of the Settlement. If you wish to speak at the Final Approval Hearing, you must make a request to do so in your written objection or comment. You are <u>not</u> required to attend the Final Approval Hearing. |
| **DO NOTHING** | If you do nothing, you will not receive any of the monetary Settlement Benefits and you will give up your rights to sue Paysafe and certain related parties for the claims this Settlement resolves. |

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice.

- The Court in charge of this case still has to decide whether to approve the Settlement. No Settlement Benefits or payments will be

**This Settlement affects your legal rights even if you do nothing.**
**Questions? Go to www.[website].com or call 1-888-888-8888.**

provided unless the Court approves the Settlement and it becomes final.

## BASIC INFORMATION

**1.     Why did I get this Notice?**

The United States District Court for the Northern District of California authorized this Notice because you have the right to know about the proposed Settlement of this class action lawsuit and about all of your rights and options before the Court decides whether to grant final approval of the Settlement. This Notice explains the lawsuit, the Settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

The Honorable Joseph C. Spero of the U.S. District Court for the Northern District of California is overseeing this class action. The case is known as *Kamal Bitmouni v. Paysafe Payment Processing Solutions, LLC,* Case No. 3:21-cv-00641-JCS (the "Action"). The person who filed this lawsuit is called the "Plaintiff" and the entity he sued, Paysafe Payment Processing Solutions, LLC ("Paysafe"), is called the "Defendant." The Plaintiff and the Defendant agreed to this Settlement.

**2.     What is this lawsuit about?**

On or about November 6, 2020, Paysafe discovered that an unauthorized actor may have accessed a legacy server under Paysafe's custody or control from May 2018 to October 2020. As a result, Personal Information of approximately 91,706 individuals who enrolled for merchant services with Paysafe's affiliate(s) may have been accessed. Impacted Personal Information may have included name, contact details, Social Security number, and bank account information.

The Plaintiff claims that Paysafe failed to adequately protect his and other Class Members' Personal Information and that he and other Class Members were injured as a result. Paysafe denies any wrongdoing, and no court or other entity has made any judgment or other determination of any wrongdoing or that the law has been violated. Paysafe denies these and all other claims made in the Action. By entering into the Settlement, Paysafe is not admitting that it did anything wrong.

**3.     Why is this a class action?**

In a class action, one or more people called the Class Representatives sue on behalf of all people who have similar claims. Together all of these people are called a Class or Class Members. One court resolves the issues for all Class Members, except for those Class Members who exclude themselves from the Class.

The Settlement Class Representative in this case is Kamal Bitmouni.

**4.     Why is there a Settlement?**

The Settlement Class Representative and Paysafe do not agree about the claims made in this Action. The Action has not gone to trial and the Court has not decided in favor of the Settlement Class Representative or Paysafe. Instead, the Settlement Class Representative and Paysafe have agreed to settle the Action. The Class Representative and the attorneys for the Class ("Class Counsel") believe the Settlement is best for all Class Members because of the risks and uncertainty associated with continued litigation and the nature of the defenses raised by Paysafe.

## WHO IS INCLUDED IN THE SETTLEMENT

**5.     How do I know if I am part of the Settlement?**

The Court has decided that everyone who fits the following description is a member of the Settlement Class:

> All individuals who were notified, including by direct notice and publication by Paysafe, that their personal information was or may have been compromised in the Data Security Incident.

If you received Notice of this Settlement, you have been identified by the Settlement Administrator as a Settlement Class Member. More specifically, you are a Settlement Class Member, and you are affected by this Settlement.

You may contact the Settlement Administrator if you have any questions as to whether you are a Settlement Class Member.

**6.     Are there exceptions to individuals who are included as Class Members in the Settlement?**

Yes, the Settlement does not include: (1) the judges presiding over this Litigation, and members of their direct families; (2) the Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, and employees; and (3) Settlement Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline.

**7.     What if I am still not sure whether I am part of the Settlement?**

If you are still not sure whether you are a Class Member, you may go to the Settlement Website at www.*[website]*.com, or call the Settlement Administrator's toll-free number at 1-888-888-8888.

## THE SETTLEMENT BENEFITS—WHAT YOU GET IF YOU QUALIFY

**8.     What does the Settlement provide?**

As a Class Member, you are eligible to make a claim for **one or more of the following**:

- **CCPA Cash Payment**: a Class Member who was a resident of California at any time during the Data Security Incident (*i.e.*, from May 2018 to October 2020) may elect to receive a CCPA Cash Payment of $200, which may be increased *pro rata* up to a maximum of $750 if the Net Settlement Fund exceeds the aggregate value of all claims or may be reduced *pro rata* if the aggregate value of all claims exceeds the Net Settlement Fund.

- **Reimbursement for Out-of-Pocket Losses:** all Class Members may submit a claim for up to $25,000 for reimbursement of Out-of-Pocket Losses, which must be supported by (i) third-party documentation supporting the loss; and (ii) a brief description of the nature of the loss. A claim for Out-of-Pocket Losses may be combined with reimbursement for Attested Time but in no circumstance will a Settlement Class Member be eligible to receive more than the $25,000. A claim for Out-of-Pocket Losses may be reduced *pro rata* if the aggregate value of all claims exceeds the Net Settlement Fund.

- **Reimbursement for Attested Time:** all Class Members may submit a claim for reimbursement of Attested Time up to five (5) hours at $25 per hour, which must be supported by a brief description of the actions taken in response to the Data Security Incident and the time associated with each action. A claim for Attested Time may be combined with reimbursement for Out-of-Pocket Losses but in no circumstance will a Settlement Class Member be eligible to receive more than the $25,000. A claim for Attested Time may be reduced *pro rata* if the aggregate value of all claims exceeds the Net Settlement Fund.

- **Alternative Cash Payment:** a Class Member who is not eligible to receive a CCPA Cash Payment may elect to receive a cash payment of $150, which may be reduced *pro rata* if the aggregate value of all claims exceeds the Net Settlement Fund.

If a Participating Settlement Class Member attempts to claim both a CCPA Cash Payment and an Alternative Cash Payment under the Settlement, the Settlement Administrator is authorized to contact the Settlement Class Member (by e-mail, telephone, or U.S. mail) to seek clarification regarding the Participating Settlement Class Member's eligibility for the benefit selected.

In addition, Paysafe has agreed to take certain remedial measures and enhanced security measures as a result of this Action.

**9.     CCPA Cash Payment.**

If you resided in California at any time during the Data Security Incident (*i.e.*, from May 2018 to October 2020), you may elect to receive a cash payment of $200. This is the "CCPA Cash Payment." The CCPA Cash Payment may be increased *pro rata* up to a maximum of $750 if the Net Settlement Fund exceeds the aggregate value of all claims or may be reduced *pro rata* if the aggregate value of all claims exceeds the Net Settlement Fund. To receive a CCPA Cash Payment, you must submit a completed Claim Form electing to receive a CCPA Cash Payment.

You are not required to provide Reasonable Documentation with your Claim Form to receive a CCPA Cash Payment.

**10.     Reimbursement for Out-of-Pocket Losses.**

You may elect to submit a Claim Form for reimbursement of Out-of-Pocket Losses. If you spent money remedying or addressing identity theft and fraud that was more likely than not related to the Data Security Incident or you spent money to protect yourself from future harm because of the Data Security Incident, and this amount was not otherwise recoverable through insurance, you may make a claim for Out-of-Pocket Losses for reimbursement of up to $25,000.

Out-of-Pocket Losses consist of unreimbursed losses incurred on or after May 1, 2018, that were related to identity theft and fraud and are more likely than not a result of the Data Security Incident, as well as any expenses related to the Data Security Incident. For example, credit card or debit card cancellation or replacement fees, late fees, declined payment fees, overdraft fees, returned check fees, customer service fees, credit-related costs associated with purchasing credit reports, credit monitoring or identity theft protection, costs to place a freeze or alert on credit reports, costs to replace a Social Security number, professional services, and out-of-pocket expenses for notary, fax, postage, delivery, copying, mileage, and long-distance telephone charges. Other losses or costs related to the Data Security Incident that are not insurance reimbursable may also be eligible for reimbursement. To protect the Settlement Fund and valid claims, all Claim Forms submitted that seek payment related to credit or debit card fraudulent transactions will be carefully scrutinized by the Settlement Administrator.

Claims for Out-of-Pocket Losses must be supported by third party documentation. Third party documentation means written documents supporting your claim, such as credit card statements, bank statements, invoices, telephone records, and receipts.

A claim for Out-of-Pocket Losses may be reduced *pro rata* if the aggregate value of all claims exceeds the Net Settlement Fund.

To receive reimbursement for Out-of-Pocket Losses, you must submit a completed Claim Form electing to receive reimbursement for Out-of-Pocket Losses. If you file a Claim Form for Out-of-Pocket Losses and it is rejected by the Settlement Administrator and you do not correct it, you will not be eligible for reimbursement of Out-of-Pocket Losses.

**11.      Reimbursement for Attested Time**

In addition to Reimbursement for Out-of-Pocket Losses, you may elect to submit a Claim Form for reimbursement of Attested Time. If you lose time related to your efforts undertaken to prevent or mitigate fraud and identity theft following announcement of the data breach, you may make a claim for Reimbursement for Attested Time for up to five (5) hours of lost time at a rate of $25 per hour, for a maximum of $125.

Claims for Reimbursement for Attested Time must be supported by a brief narrative of the nature of the lost time and other mitigation efforts for which payment is sought.

A claim for Attested Time may be reduced *pro rata* if the aggregate value of all claims exceeds the Net Settlement Fund.

To receive reimbursement for Attested Time you must submit a completed Claim Form electing to receive reimbursement for Attested Time. If you file a Claim Form for Attested Time and it is rejected by the Settlement Administrator and you do not correct it, you will not be eligible for reimbursement of Attested Time.

**12.      Alternate Cash Payment.**

If you are not eligible to receive a CCPA Cash Payment, you may elect to receive an alternative cash payment of $150. This is the "Alternative Cash Payment." The Alternative Cash Payment may be reduced *pro rata* if the aggregate value of all claims exceeds the Net Settlement Fund.  To receive an Alternate Cash Payment, you must submit a completed Claim Form electing to receive an Alternative Cash Payment.

You are not required to provide Reasonable Documentation with your Claim Form to receive an Alternative Cash Payment.

**13.      How will Settlement Benefits be paid?**

Court awarded attorneys' fees up to a maximum of 25% of the $ 2.0 million Settlement Fund (*i.e.*, $500,000.00), reasonable costs and expenses incurred by attorneys for the Class up to $50,000, Administrative Expenses for costs of the settlement administration, and a Service Award of up to $15,000 to the Class Representative will be deducted from the Settlement Fund before making payments to Class Members. The Court may award less than these amounts. The remainder of the Settlement Fund (the "Net Settlement Fund") will be distributed to Participating Settlement Class Members.

In the event that the aggregate value of all claims exceeds the Net Settlement Fund, then the value of such payments shall be reduced on a *pro rata* basis, such that the aggregate value of all claims equals the Net Settlement Fund.  In the event that the Net Settlement Fund exceeds the aggregate value of all claims, then the value of CCPA Cash Payments shall be increased on a *pro rata* basis, to a maximum of $750 each, such that the aggregate value of all claims equals the Net Settlement Fund.  If the Net Settlement Fund still exceeds the aggregate value of all claims, then the remaining funds will be distributed to the remaining Participating Settlement Class Members on a *pro rata* basis, unless the administrative costs and burden of making these additional distributions is unreasonable, in which case the excess funds shall be awarded to a mutually agreed-upon and qualified charitable recipient subject to the Court's approval. All *pro rata* determinations shall be performed by the Settlement Administrator.

**14.      Tell me more about Paysafe's remedial measures and enhanced security measures.**

Paysafe agrees to provide Class Counsel with information concerning the remedial actions taken since the Data Security Incident to enhance its cybersecurity training and awareness programs, data security policies, security measures, restrictions to accessing Personal Information, and its monitoring and response capabilities.

**15.      What is the total value of the Settlement?**

The Settlement provides a $2.0 million Settlement Fund and remedial actions to be taken by Paysafe for the benefit of the Class. Any court-approved attorneys' fees, costs, and expenses, Service Awards to the Class Representatives, taxes due on any interest earned by the Settlement Fund, if necessary, and any notice and settlement administration expenses will be paid out of the Settlement Fund, and the balance ("Net Settlement Fund") will be used to pay for the above Settlement Benefits. Any costs associated with Paysafe's remedial and enhanced security measures will be paid by Paysafe in addition to the Settlement Fund.

**16.      What am I giving up to get a Settlement Benefit or stay in the Class?**

Unless you exclude yourself, you are choosing to remain in the Class as a Participating Settlement Class Member. If the Settlement is approved and becomes final, all of the Court's orders will apply to you and legally bind you. You will not be able to sue, continue to sue, or be part of any other lawsuit against Paysafe and related parties about the legal issues in this Action, resolved by this Settlement,

and released by the Class Action Settlement Agreement and Release. The specific rights you are giving up are called Released Claims (*see* next question).

**17.**     **What are the Released Claims?**

In exchange for the Settlement, each of the Settlement Class Representatives and Participating Settlement Class Members, and each of their respective heirs, executors, administrators, representatives, agents, partners, successors, attorneys, and assigns, present and former ("Releasing Parties"), shall be deemed to have fully, finally, and forever released, acquitted, and discharged Paysafe and its present and former predecessors, successors, assigns, parents, subsidiaries, divisions, affiliates, departments, and any and all of their past, present, and future officers, directors, employees, stockholders, partners, servants, agents, successors, attorneys, advisors, consultants, representatives, insurers, reinsurers, subrogees and the predecessors, successors, and assigns of any of the foregoing (collectively, the "Released Persons") from any and all Released Claims. This release expressly includes Paysafe's insurer with respect to all obligations under any part of the insurance policy applicable to the Released Claims, and from any and all claims arising out of the investigation, handling, adjusting, defense, or settlement of the claim including, without limitation, any claims for negligence, invasion of privacy, violations of California's Unfair Competition Law (cal. Bus. & Prof. Code § 17200, et seq.), and violations of California's Consumer Privacy Act (Cal. Civ. Code § 1798.150).

"Released Claims" means any and all claims or causes of action of every kind and description, including any causes of action in law, claims in equity, complaints, suits, or petitions, and any allegations of wrongdoing, demands for legal, equitable or administrative relief (including, but not limited to, any claims for injunction, rescission, reformation, restitution, disgorgement, constructive trust, declaratory relief, compensatory damages, consequential damages, penalties, exemplary damages, statutory damages, punitive damages, attorneys' fees, costs, interest or expenses) that the Releasing Parties had, have, or may claim now or in the future to have (including, but not limited to, assigned claims and any and all "Unknown Claims" as defined below) that were or could have been asserted or alleged arising out of the same nucleus of operative facts as any of the claims alleged or asserted in the Litigation, including but not limited to the facts, transactions, occurrences, events, acts, omissions, or failures to act that were alleged, argued, raised, or asserted in any pleading or court filing in the Litigation, including but not limited to those concerning: 1) the disclosure of the Participating Settlement Class Members' personal information in the Data Security Incident; 2) Paysafe's maintenance of the Participating Settlement Class Members' personal information as it relates to the Data Security Incident; 3) Paysafe's security policies and practices as it relates to the Data Security Incident; or 4) Paysafe's provision of notice to the Participating Settlement Class Members following the Data Security Incident.

The Released Claims include the release of Unknown Claims. "Unknown Claims" means claims that could have been raised in the Litigation and that any of the Settlement Class Representative or Participating Settlement Class Members, and each of their respective heirs, executors, administrators, representatives, agents, partners, successors, attorneys, and assigns, does not know or suspect to exist, which, if known by him, her, or it, might affect his, her, or its agreement to release Paysafe and its present and former predecessors, successors, assigns, parents, subsidiaries, divisions, affiliates, departments, and any and all of their past, present, and future officers, directors, employees, stockholders, partners, servants, agents, successors, attorneys, advisors, consultants, representatives, insurers, reinsurers, subrogees and the predecessors, successors, and assigns of any of the foregoing, or the Released Persons, or might affect his, her or its decision to agree, object, or not to object to the Settlement. Upon the Effective Date, each of the Settlement Class Representative and Participating Settlement Class Members, and each of their respective heirs, executors, administrators, representatives, agents, partners, successors, attorneys, and assigns s shall be deemed to have, and shall have, waived any and all provisions, rights and benefits conferred by any law of any state, the District of Columbia or territory of the United States, by federal law, or principle of common law, or the law of any jurisdiction outside of the United States. The Settlement Class Representative and Participating Settlement Class Members, and each of their respective heirs, executors, administrators, representatives, agents, partners, successors, attorneys, and assigns acknowledge that they may discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of the Release, but that it is their intention to finally and forever settle and release the Released Claims, including but not limited to any Unknown Claims they may have, as that term is defined in this Paragraph.

More information is provided in the Class Action Settlement Agreement and Release which is available at ==www.*[website]*.com.==

## HOW TO GET SETTLEMENT BENEFITS—SUBMITTING A CLAIM FORM

**18.**     **How do I make a claim for Settlement Benefits?**

You must complete and submit a Claim Form online by ==xxxx xx, 202X== , 11:59 pm Pacific Time, or via mail so the form is postmarked by ==xxxx xx, 202X==. Claim Forms may be submitted online at ==www.*[website]*.com==, or printed from the website and mailed to the Settlement Administrator at the address on the form. Claim Forms are also available by calling 1-==888-888==-8888 or by writing to Paysafe Data Breach Settlement, P.O. Box ==_____, _____, __ _____.== The quickest way to file a claim is online.

If you received a Notice by mail, use your Class Member ID to file your Claim Form. If you lost or do not know your Class Member ID, please call 1-888-888-8888 to obtain it.

You may submit a claim for a CCPA Cash Payment, reimbursement for Out-of-Pocket Losses and/or Attested Time, and/or an Alternative Cash Payment by submitting a Claim Form on the Settlement Website, or by downloading, printing, and completing a Claim Form, and mailing it to the Settlement Administrator.

Of the Settlement Benefits provided under the Settlement, you may file a claim for a CCPA Cash Payment or an Alternative Cash Payment. In addition, you may file a claim for reimbursement for Out-of-Pocket Losses and/or Attested Time.

**19.     How do I make a claim for a CCPA Cash Payment or an Alternative Cash Payment?**

To file a claim for a CCPA Cash Payment or an Alternative Cash Payment you must submit a valid Claim Form electing to receive a CCPA Cash Payment or an Alternative Cash Payment. To submit a claim for a CCPA Cash Payment or an Alternative Cash Payment, you may either complete a Claim Form on the Settlement Website by **xxxx xx, 202X** or print and mail a completed Claim Form to the Settlement Administrator, postmarked on or before **xxxx xx, 202X.**

Instructions for filling out a claim for a CCPA Cash Payment or an Alternative Cash Payment are included on the Claim Form. You may access the Claim Form at www.*[website]*.com.

If you elect to receive a CCPA Cash Payment, you are not eligible for an Alternative Cash Payment. If you elect to receive an Alternative Cash Payment, you are not eligible for a CCPA Cash Payment. In addition to electing to receive a CCPA Cash Payment or an Alternative Cash Payment, you may claim reimbursement for Out-of-Pocket Losses and/or Attested Time.

The deadline to file a claim for a CCPA Cash Payment or an Alternative Cash Payment is **xxxx xx, 202X**. Claims must be filed or postmarked if mailed by this deadline.

**20.     How do I make a claim for a reimbursement of Out-of-Pocket Losses?**

To file a claim for reimbursement of Out-of-Pocket Losses of up to $25,000, you must submit a valid Claim Form electing to receive reimbursement for Out-of-Pocket Losses. To submit a claim for reimbursement of Out-of-Pocket Losses, you may either complete a Claim Form on the Settlement Website by **xxxx xx, 202X** or print and mail a completed Claim Form to the Settlement Administrator, postmarked on or before **xxxx xx, 202X.**

The Claim Form requires that you sign the attestation regarding the information you provided and that you include third party documentation, such as credit card statements, bank statements, invoices, telephone records, and receipts.

If your claim for reimbursement of Out-of-Pocket Losses is rejected by the Settlement Administrator and you do not correct it, and you will not be eligible for reimbursement of Out-of-Pocket Losses.

Instructions for filling out a claim for reimbursement of Out-of-Pocket Losses are included on the Claim Form. You may access the Claim Form at www.*[website]*.com.

The deadline to file a claim for reimbursement of Out-of-Pocket Losses is **xxxx xx, 202X.** Claims must be filed or postmarked if mailed by this deadline.

**21.     How do I make a claim for reimbursement of Attested Time?**

To file a claim for reimbursement of Attested Time of up to $125, you must submit a valid Claim Form electing to receive reimbursement for Attested Time. To submit a claim for reimbursement of Attested Time, you may either complete a Claim Form on the Settlement Website by **xxxx xx, 202X** or print and mail a completed Claim Form to the Settlement Administrator, postmarked on or before **xxxx xx, 2022.**

The Claim Form requires that you indicate the number of hours (up to 5) lost to efforts undertaken to prevent or mitigate fraud or identity theft following the announcement of the Data Security Incident and provide a brief narrative of the nature of the lost time and other mitigation efforts for which payment is sought. The Claim Form also requires that you sign the attestation regarding the information you provided concerning reimbursement of Attested Time.

Instructions for filling out a claim for reimbursement of Attested Time are included on the Claim Form. You may access the Claim Form at www.*[website]*.com.

The deadline to file a claim for reimbursement of Attested Time is **xxxx xx, 202X.** Claims must be filed or postmarked if mailed by this deadline.

**22.     What happens if my contact information changes after I submit a claim?**

If you change your mailing address or email address after you submit a Claim Form, it is your responsibility to inform the Settlement Administrator of your updated information. You may notify the Settlement Administrator of any changes by calling 1-888-888-8888 or by writing to:

Paysafe Data Breach Settlement Administrator
P.O. Box XXXX
XXXXXX, XX XXXXX

**23.     When and how will I receive the Settlement Benefits I claim from the Settlement?**

Payment for valid claims for a CCPA Cash Payment, reimbursement for Out-of-Pocket Losses and/or Attested Time, and/or an Alternative Cash Payment will be provided by the Settlement Administrator after the Settlement is approved by the judge and becomes final. You may elect to receive payment for valid claims for a CCPA Cash Payment, reimbursement for Out-of-Pocket Losses and/or Attested Time, and/or an Alternative Cash Payment via Zelle, Venmo, or PayPal instead of a MasterCard pre-paid debit card or check by submitting the appropriate information with your Claim Form filed through the Settlement Website. Anyone who does not elect to receive payment via Zelle, Venmo, or PayPal will receive their payment via a MasterCard pre-paid debit card or check sent through U.S. Mail.

The court approval process may take time. Please be patient and check www.*[website].*com for updates.

**24.     What happens if money remains after all of the Settlement Claims are paid?**

None of the money in the $2.0 million Settlement Fund will be paid back to Paysafe. If any money remains in the Settlement Fund 150 days after the distribution of payments to Class Members, including *pro rata* payments, the excess funds shall be awarded to a mutually agreed-upon and qualified charitable recipient subject to the Court's approval.

## THE LAWYERS REPRESENTING YOU

**25.     Do I have a lawyer in this case?**

Yes, the Court has appointed Michael Anderson Berry and Gregory Haroutunian of Clayeo C. Arnold, PLC and John A. Yanchunis and Ryan D. Maxey of Morgan & Morgan Complex Litigation Group, as Class Counsel to represent you and the Class for the purposes of this Settlement. You may hire your own lawyer at your own cost and expense if you want someone other than Class Counsel to represent you in this Action.

**26.     How will Class Counsel be paid?**

Class Counsel will file a motion asking the Court to award them attorneys' fees of up to a maximum of 25% of the $2.0 million Settlement Fund (*i.e.*, $500,000.00), plus reasonable costs and expenses up to $50,000. They will also ask the Court to approve up to $15,000 as a Service Award to the Class Representatives for participating in this Action and for his efforts in achieving the Settlement. If awarded, these amounts will be deducted from the Settlement Fund before making payments to Class Members. The Court may award less than these amounts.

Class Counsel's application for attorneys' fees and expenses, and the Service Award, will be made available on the Settlement Website at www.*[website].*com before the deadline for you to comment or object to the Settlement. You can request a copy of the application by contacting the Settlement Administrator, at 1-888-888-8888.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you are a Class Member and want to keep any right you may have to sue or continue to sue Paysafe on your own based on the claims raised in this Action or released by the Released Claims, then you must take steps to get out of the Settlement. This is called excluding yourself from – or "opting out" of – the Settlement.

**27.     How do I get out of the Settlement?**

To exclude yourself from the Settlement, you must complete and sign a Request for Exclusion. The Request for Exclusion must be in writing and identify the case name *Kamal Bitmouni v. Paysafe Payment Processing Solutions, LLC, Case No. 3:21-cv-00641-JCS*; state the name, address, and telephone number of the Class Members seeking exclusion; be physically signed by the Person(s) seeking exclusion; and must also contain a statement to the effect that "I/We hereby request to be excluded from the proposed Settlement Class in *Kamal Bitmouni v. Paysafe Payment Processing Solutions, LLC, Case No. 3:21-cv-00641-JCS*." The Request for Exclusion must be (i) submitted electronically on the Settlement Website, or (ii) postmarked or received by the Settlement Administrator at the address below no later than xxxx xx, 202X:

**Questions? Go to www.[website].com or call 1-888-888-8888.**
**This Settlement affects your legal rights even if you do nothing.**

Paysafe Data Breach Settlement Administrator
P.O. Box XXXX
XXXXXXX, XX XXXXX

You cannot exclude yourself by telephone or by e-mail.

**28.      If I exclude myself, can I still get a Settlement Payment?**

No. If you exclude yourself, you are telling the Court that you do not want to be part of the Settlement. You can only get a cash payment if you stay in the Settlement and submit a valid Claim Form.

**29.      If I do not exclude myself, can I sue Paysafe for the same thing later?**

No. Unless you exclude yourself, you give up any right to sue Paysafe and Released Parties for the claims that this Settlement resolves. You must exclude yourself from this Action to start or continue with your own lawsuit or be part of any other lawsuit against Paysafe or any of the Released Parties. If you have a pending lawsuit, speak to your lawyer in that case immediately.

## OBJECT TO OR COMMENT ON THE SETTLEMENT

**30.      How do I tell the Court that I do not like the Settlement?**

You can ask the Court to deny approval of the Settlement by filing an objection. You cannot ask the Court to order a different settlement; the Court can only approve or reject the Settlement. If the Court denies approval, no settlement payments will be sent out and the lawsuit will continue. If that is what you want to happen, you must object.

Any objection to the proposed settlement must be in writing. If you file a timely written objection, you may, but are not required to, appear at the Final Approval Hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for hiring and paying that attorney. All written objections and supporting papers must (a) clearly identify the case name and number (*Kamal Bitmouni v. Paysafe Payment Processing Solutions, LLC, Case No. 3:21-cv-00641-JCS*); (b) state your full name, current mailing address, and telephone number; (c) contain a signed statement that you believe you are a member of the Settlement Class; (d) identify the specific grounds for the objection; (e) include all documents or writings that you desire the Court to consider; (f) contain a statement regarding whether you (or counsel of your choosing) intend to appear at the Final Approval Hearing; (g) be submitted to the Court either by filing them with the Court or mailing them to the United States District Court for the Northern District of California, San Francisco Courthouse, Courtroom F – 15th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102; and (h) be filed with the Court or postmarked on or before **xxxx xx, 202X**.

**31.      What is the difference between objecting and requesting exclusion?**

Objecting is telling the Court you do not like something about the Settlement. You can object only if you stay in the Class (that is, do not exclude yourself). Requesting exclusion is telling the Court you do not want to be part of the Class or the Settlement. If you exclude yourself, you cannot object to the Settlement because it no longer affects you.

## THE FINAL APPROVAL HEARING

**32.      When and where will the Court decide whether to approve the Settlement?**

The Court will hold a Final Approval Hearing on **xxxx xx, 202X** at **__:_0 _.m.** before the Honorable Joseph C. Spero, United States District Court for the Northern District of California, San Francisco Courthouse, Courtroom F – 15th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102.

The date and time of the Final Approval Hearing is subject to change without further notice to the Settlement Class. Class Members should monitor the Settlement Website or the Court's PACER site (see Question 36) to confirm whether the date for the Final Approval Hearing is changed.

At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate, and will decide whether to approve: the Settlement; Class Counsel's application for attorneys' fees, costs and expenses; and the Service Award to the Class Representative. If there are objections, the Court will consider them. The Court will also listen to people who have asked to speak at the hearing.

**33.      Do I have to come to the Final Approval Hearing?**

No. Class Counsel will answer any questions the Court may have. However, you are welcome to attend at your own expense. If you send an objection, you do not have to come to Court to talk about it. As long as you mail your written objection on time, the Court will consider it.

**34.      May I speak at the Final Approval Hearing?**

Yes. If you wish to attend and speak at the Final Approval Hearing, you must indicate this in your written objection (see Question 30). Your objection must state that it is your intention to appear at the Final Approval Hearing and must identify any witnesses you may call to testify or exhibits you intend to introduce into evidence at the Final Approval Hearing. If you plan to have your attorney speak for you at the Final Approval Hearing, your objection must also include your attorney's name, address, and phone number.

## IF YOU DO NOTHING

**35.    What happens if I do nothing at all?**

If you are a Class Member and you do nothing, you will not receive any Settlement Benefits. You will also give up certain rights, including your right to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against Paysafe or any of the Released Parties about the legal issues in this Action and released by the Settlement Agreement.

## GETTING MORE INFORMATION

**36.    How do I get more information?**

This Notice summarizes the proposed Settlement. For the precise terms and conditions of the Settlement, please see the Settlement Agreement available at www.*[website]*.com, or by contacting Class Counsel (see below), or by accessing the Court docket in this case, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov.

If you have questions about the proposed Settlement or anything in this Notice, you may contact Class Counsel at:

| **M. Anderson Berry** | **Gregory Haroutunian** | **John A. Yanchunis** | **Ryan D. Maxey** |
|---|---|---|---|
| Clayeo C. Arnold, A Professional Law Corp. 865 Howe Avenue Sacramento, CA 95825 (916) 777-7777 Fax: (916) 924-1829 Email: aberry@justice4you.com | Clayeo C. Arnold, A Professional Law Corporation 865 Howe Avenue Sacramento, CA 95825 (916) 777-7777 Fax: (916) 924-1829 Email: gharoutunian@justice4you.com | Morgan and Morgan, P.A. 201 N. Franklin Street, 7th Floor Tampa, FL 33602 (813) 275-5272 Email: jyanchunis@forthepeople.com | Morgan and Morgan Complex Litigation Group 201 N. Franklin Street, 7th FL Tampa, FL 33602 813-223-5505 Email: rmaxey@forthepeople.com |

**PLEASE DO NOT CONTACT THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIM PROCESS.**

# EXHIBIT 2

## <u>CLAIM FORM FOR PAYSAFE DATA SECURITY INCIDENT BENEFITS</u>

**USE THIS FORM TO MAKE A CLAIM FOR A CCPA CASH PAYMENT, REIMBURSEMENT OF OUT-OF-POCKET LOSSES AND/OR ATTESTED TIME, AND/OR AN ALTERNATIVE CASH PAYMENT.**

*Para una notificación en Español, llamar 1-888-888-8888 o visitar nuestro sitio web www.[website].com.*

**The DEADLINE to submit this Claim Form is [XXXX XX, 202X] (either on-line or postmarked: [XXXX XX, 202X])**

### I.      GENERAL INSTRUCTIONS

If you are an individual whose Personal Information may have been compromised as a result of a data security incident that occurred from May 2018 to October 2020 when an unauthorized actor may have accessed a legacy server under the custody or control of Paysafe Payment Processing Solutions, LLC ("Paysafe") (the "Data Security Incident") you are a Class Member. The legacy server contained the personal information of individuals who enrolled for merchant services with Paysafe's affiliate(s).

As a Class Member, you are eligible to make a claim for **<u>one or more of the following</u>**:

- **Reimbursement for Out-of-Pocket Losses:** all Class Members may submit a claim for up to $25,000 for reimbursement of Out-of-Pocket Losses, which must be supported by (i) third-party documentation supporting the loss; and (ii) a brief description of the nature of the loss. A claim for Out-of-Pocket Losses may be combined with reimbursement for Attested Time, but in no circumstance will a Settlement Class Member be eligible to receive more than the $25,000. A claim for Out-of-Pocket Losses may be reduced *pro rata* if the aggregate value of all claims exceeds the Net Settlement Fund.

- **Reimbursement for Attested Time:** all Class Members may submit a claim for reimbursement of Attested Time up to five (5) hours at $25 per hour, which must be supported by a brief description of the actions taken in response to the Data Security Incident and the time associated with each action. A claim for Attested Time may be combined with reimbursement for Out-of-Pocket Losses, but in no circumstance will a Settlement Class Member be eligible to receive more than the $25,000. A claim for Attested Time may be reduced *pro rata* if the aggregate value of all claims exceeds the Net Settlement Fund.

In addition to claiming reimbursement for Out-of-Pocket Losses and/or Attested Time, Class Members are also eligible to make a claim for **<u>either</u>**:

- **California Consumer Protection Act ("CCPA") Cash Payment:** a Class Member who was a resident of California at any time during the Data Security Incident (*i.e.*, from May 2018 to October 2020) may elect to receive a CCPA Cash Payment of $200, which may be increased *pro rata* up to a maximum of $750 if the Net Settlement Fund exceeds the aggregate value of all claims or may be reduced *pro rata* if the aggregate value of all claims exceeds the Net Settlement Fund.

**OR:**

- **Alternative Cash Payment:** a Class Member who is not eligible to receive a CCPA Cash Payment may elect to receive a cash payment of $150, which may be reduced *pro rata* if the aggregate value of all claims exceeds the Net Settlement Fund.

**Questions? Go to www.[website].com or call 1-XXXXXXXX.**

If you attempt to claim both a CCPA Cash Payment and an Alternative Cash Payment, the Settlement Administrator is authorized to contact you (by e-mail, telephone, or U.S. mail) to seek clarification regarding your eligibility for the benefit selected.

In the event that the aggregate value of all claims exceeds the Net Settlement Fund, then the value of such payments shall be reduced on a *pro rata* basis, such that the aggregate value of all claims equals the Net Settlement Fund.  In the event that the Net Settlement Fund exceeds the aggregate value of all claims, then the value of CCPA Cash Payments shall be increased on a *pro rata* basis, to a maximum of $750 each, until the aggregate value of all claims equals the Net Settlement Fund.  Complete information about the Settlement and its benefits are available at www.*[website]*.com.

This Claim Form may be submitted online at www.*[website]*.com or completed and mailed to the address below. Please type or legibly print all requested information in blue or black ink. You may mail your completed Claim Form, including any supporting documentation, by U.S. mail to:

Paysafe Data Security Incident  Settlement Administrator
PO Box XXXX
XXXXX, XX XXXXX

## II. CLAIMANT INFORMATION

The Settlement Administrator will use this information for all communications regarding this Claim Form and the Settlement. If this information changes prior to distribution of cash payments, you must notify the Settlement Administrator in writing at the address above.

First Name                                    M.I.    Last Name

ernative Name(s)

Mailing Address, Line 1: Street Address/P.O. Box

iling Address, Line 2:

y:                                                           State:        Zip Code:

Telephone Numbers (Cell)                    Telephone Numbers (Home)

Email Address

e of Birth (mm/dd/yyyy)                    Unique ID Number Provided on mailed Notice (if known)

**You may only select one of the following options:**

### III.    CLASS MEMBERSHIP

☐ Please check this box if you received a notice related to this Class Action and provide your Unique ID Number in Section II above.

☐ Please check this box if you have **not** received a notice but believe that you should be included in the Class.  You must provide Reasonable Documentation demonstrating that you were impacted by the Data Security Incident.

### IV.    CCPA CASH or ALTERNATIVE CASH PAYMENT

**Select one and only one of the following options:**

**CCPA CASH PAYMENT**

☐ If you wish to receive a CCPA Cash Payment, you must check off the box for this section, provide a California address where you resided at any time during the Data Security Incident, and then simply return this Claim Form.

I certify that I resided at the following address at any time from May 2018 to October 2020:

Street Number and Name: _____

Unit or Apartment Number: _____

City: _____

State: California

Zip Code: _____

**Or**

**ALTERNATIVE CASH PAYMENT**

☐ If you wish to receive an Alternative Cash Payment, you must check off the box for this section, and then simply return this Claim Form.

Email Address [Mandatory]:

| | | | | | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

**You may also select one or more of the following if applicable:**

**V. REIMBURSEMENT FOR OUT-OF-POCKET LOSSES**

Questions? Go to www.[website].com or call 1-XXXXXXXX.

☐ Please check off this box for this section if you are electing to seek reimbursement for up to $25,000 of Out-of-Pocket Losses you incurred that are more likely than not traceable to the Data Security Incident and are not otherwise reimbursable from insurance. Out-of-Pocket Losses include unreimbursed losses and consequential expenses that are more likely than not related to the Data Security Incident and incurred on or after May 1, 2018.

In order to make a claim for Reimbursement of Out-of-Pocket Losses, **you must** (i) fill out the information below and/or on a separate sheet submitted with this Claim Form; (ii) sign the attestation at the end of this Claim Form (section VIII); and (iii) include third party documentation supporting each claimed cost along with this Claim Form. Out-of-Pocket Losses need to be deemed more likely than not due to the Data Security Incident by the Settlement Administrator based on the documentation you provide and the facts of the Data Security Incident. **Failure to meet the requirements of this section may result in your claim being rejected by the Settlement Administrator.**

| Cost Type (Fill all that apply) | Approximate Date of Loss | Amount of Loss | Description of Supporting Reasonable Documentation (Identify what you are attaching and why) |
|---|---|---|---|
| ○ Unreimbursed fraud losses or charges | ☐☐ / ☐☐ / ☐☐ (mm/dd/yy) | $ ☐☐☐☐☐☐ . ☐☐ | *Examples: Account statement with unauthorized charges highlighted; Correspondence from financial institution declining to reimburse you for fraudulent charges* |
| ○ Professional fees incurred in connection with identity theft or falsified tax returns | ☐☐ / ☐☐ / ☐☐ (mm/dd/yy) | $ ☐☐☐☐☐☐ . ☐☐ | *Examples: Receipt for hiring service to assist you in addressing identity theft; Accountant bill for re-filing tax return* |
| ○ Lost interest or other damages resulting from a delayed state and/or federal tax refund in connection with fraudulent tax return filing | ☐☐ / ☐☐ / ☐☐ (mm/dd/yy) | $ ☐☐☐☐☐☐ . ☐☐ | *Examples: Letter from IRS or state about tax fraud in your name; Documents reflecting length of time you waited to receive your tax refund and the amount* |
| ○ Credit freeze | ☐☐ / ☐☐ / ☐☐ (mm/dd/yy) | $ ☐☐☐☐☐☐ . ☐☐ | *Examples: Notices or account statements reflecting payment for a credit freeze:* |
| ○ Credit monitoring that was ordered on or after May 1, 2018 | ☐☐ / ☐☐ / ☐☐ (mm/dd/yy) | $ ☐☐☐☐☐☐ . ☐☐ | *Example: Receipts or account statements reflecting purchases made for credit monitoring services* |

| | | | |
|---|---|---|---|
| ○ Miscellaneous expenses such as notary, fax, postage, copying, mileage, and long- distance telephone charges | / / (mm/dd/yy) | $ . | *Example: Phone bills, gas receipts, postage receipts; detailed list of locations to which you traveled (i.e. police station, IRS office), indication of why you traveled there (i.e. police report or letter from IRS re: falsified tax return) and number of miles you traveled to remediate or address issues related to the Paysafe Data Security Incident.* |
| ○ Other (provide detailed description) | / / (mm/dd/yy) | $ . | *Please provide detailed description below or in a separate document submitted with this Claim Form:* |

If you do not submit third party documentation supporting a Reimbursement for Out-of-Pocket Losses, or your claim for a Reimbursement for Out-of-Pocket Losses claim is rejected by the Settlement Administrator for any reason and you do not cure the defect, you will not be eligible to receive reimbursement for such losses.

## VI. REIMBURSEMENT FOR ATTESTED TIME

☐ Please check off this box for this section if you are electing to seek reimbursement for Attested Time you undertook to prevent or mitigate fraud and identity theft following the announcement of the Data Security Incident. Class Members who elect to submit a Claim for reimbursement of Attested Time may claim up to five (5) hours of lost time at a rate of $25 per hour, for a maximum of $125.

Please indicate below how much time (round to the nearest hour and check only one box) that you spent to prevent or mitigate fraud and identity theft following the announcement of the Data Security Incident:

❑ 1 Hour     ❑ 2 Hours     ❑ 3 Hours     ❑ 4 Hours     ❑ 5 Hours

***Examples***: Select "1 Hour" if you spent at least one full hour calling customer service lines, writing letters or emails, or on the Internet trying to get unauthorized charges reversed or reimbursed.  Please note that the time it takes to fill out this Claim Form is not reimbursable and should not be included in the total number of hours claimed.

***Required***: If time was spent on the telephone or online in an attempt to prevent fraud or identity theft, in the space below, describe what you did, or attach a copy of any letters or emails that you wrote.  If the time was spent trying to get unauthorized charges reversed or reimbursed, describe what you did.

_____

_____

_____

**Questions? Go to www.[website].com or call 1-XXXXXXXX.**

## VII. METHOD OF PAYMENT

If you made a claim for a cash payment in this claim form, you can elect to receive your payment either electronically by Zelle, Venmo, PayPal, or ACH or via a Mastercard pre-paid debit card or check mailed to you.

Which method of payment do you prefer? (***CHOOSE ONE***)

☐     Zelle – Zelle email or mobile number:    _____

☐     Venmo – Venmo username:    _____

☐     PayPal – PayPal email address:    _____

☐     Mastercard
Pre-Paid Debit Card – mailing address:    _____
   _____

☐     Check - mailing address    _____
   _____

## VIII.. CERTIFICATION

By submitting this Claim Form, I certify that I am eligible to make a claim in this settlement and that the information provided in this Claim Form and any attachments are true and correct. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. I understand that this claim may be subject to audit, verification, and Court review and that the Settlement Administrator may require supplementation of this Claim or additional information from me. I also understand that all claim payments are subject to the availability of settlement funds and may be reduced in part or in whole, depending on the type of claim and the determinations of the Settlement Administrator.

_____     Date:_____
Signature

_____
Print Name

## IX. ATTESTATION
## (REQUIRED FOR REIMBURSEMENT OF OUT-OF-POCKET EXPENSES AND ATTESTED TIME CLAIMS)

I, _____, declare that I suffered the Attested Time and/or incurred Out-of-Pocket Losses claimed above.
    [Name]

I also attest that the Attested Time and/or incurred Out-of-Pocket Losses claimed above are accurate and were not otherwise reimbursable by insurance.

**Questions? Go to www.[website].com or call 1-XXXXXXXX.**

I declare under penalty of perjury under the laws of California and of the United States of America that the foregoing is true and correct. Executed on _____, in _____, _____.

                                 [Date]                  [City]       [State]

_____
                [Signature]

# EXHIBIT 3

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION

|  |  |
|---|---|
| KAMAL BITMOUNI, on behalf of himself and all others similarly situated,<br><br>          Plaintiff,<br>vs.<br><br>PAYSAFE PAYMENT PROCESSING SOLUTIONS, LLC, a Delaware limited Liability company,<br><br>          Defendant. | Case No. 3:21-cv-00641-JSC<br><br>**[PROPOSED] FINAL APPROVAL ORDER AND JUDGMENT** |

WHEREAS, the Court, having considered the Settlement Agreement filed [InsertFilingDate] (the "Settlement") between and among Named Plaintiff and Class Representative Kamal Bitmouni ("Plaintiff" or the "Settlement Class Representative"), individually and on behalf of the Settlement Class, and Defendant Paysafe Payment Processing Solutions, LLC ("Paysafe" or "Defendant") (collectively, the "Settling Parties"), having considered the Court's Order Granting Preliminary Approval of Class Action Settlement Agreement and Conditionally Certifying Settlement Class for Settlement Purposes Only ("Preliminary Approval Order"), having held a Final Approval Hearing on [InsertHearingDate], having considered all of the submissions and arguments with respect to the Settlement, and otherwise being fully informed, and good cause appearing therefor;

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:**

1.      Plaintiff's Motion for Final Approval of Class Action Settlement Agreement and Award of Attorneys' Fees, Costs, and Expenses, and Class Representative Service Award is GRANTED.

2.      This Order and Judgment incorporates herein and makes a part hereof, the Settlement (including its exhibits) and the Preliminary Approval Order. Unless otherwise provided herein, the

terms defined in the Settlement and Preliminary Approval Order shall have the same meanings for purposes of this Order and Judgment.

3.     The Court has personal jurisdiction over Plaintiff, the Settlement Class Members, and Defendant for purposes of this settlement, and has subject matter jurisdiction over this matter including, without limitation, jurisdiction to approve the Settlement, confirm certification of the Settlement Class for settlement purposes only, to settle and release all claims released in the Settlement, and to dismiss the Action with prejudice.

## I.     CERTIFICATION OF THE SETTLEMENT CLASS

4.     Based on its review of the record, including the Settlement, all submissions in support of the Settlement, and all prior proceedings in the Action, the Court finally certifies the following Nationwide Class and California Subclass (collectively, the "Settlement Class") for settlement purposes only:

> The Nationwide Class: All individuals identified on the Settlement Class List, including all individuals who were notified, including by direct notice and publication by Paysafe, that their personal information was or may have been compromised in the Data Security Incident.

> The California Subclass: All Settlement Class Members who resided in California at any time during the Data Security Incident.

5.     Excluded from the Settlement Class are: (1) the judges presiding over this Litigation, and members of their direct families; and (2) Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, and employees.

6.     Also excluded from the Settlement Class are those persons identified in Exhibit A hereto, each of whom submitted a timely and valid Request for Exclusion from the Settlement Class prior to the Opt-Out Deadline. Such persons shall not receive the benefits of the Settlement and shall not be bound by this Order and Judgment.

7.     For settlement purposes only, with respect to the Settlement Class, the Court confirms that the prerequisites for a class action pursuant to Federal Rule of Civil Procedure 23 have been met, in that: (a) the Settlement Class is so numerous that joinder of all individual Settlement Class members in a single proceeding is impracticable; (b) questions of law and fact common to all members of the Settlement Class predominate over any potential individual questions; (c) the claims of Plaintiff are typical of the claims of the Settlement Class; (d) Plaintiff and proposed Class Counsel will fairly and adequately represent the interests of the Settlement Class; and (e) a class action is the superior method to fairly and efficiently adjudicate this controversy.  Any objections to the Settlement have been considered and are hereby overruled.

## II.     NOTICE TO THE SETTLEMENT CLASS

8.     The Court finds that Notice has been given to the Settlement Class in the manner directed by the Court in the Preliminary Approval Order. The Court finds that such Notice: (i) was reasonable and constituted the best practicable notice under the circumstances; (ii) was reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Action, the terms of the Settlement including its Releases, their right to exclude themselves from the Settlement Class or object to all or any part of the Settlement, their right to appear at the Final Approval Hearing (either on their own or through counsel hired at their own expense), and the binding effect of final approval of the Settlement on all persons who do not exclude themselves from the Settlement Class; (iii) constituted due, adequate, and sufficient notice to all persons or entities entitled to receive notice; and (iv) fully satisfied the requirements of the United States Constitution (including the Due Process Clause), and any other applicable law.

9.     Furthermore, the Court finds that notice under the Class Action Fairness Act was effectuated within the time required by 28 U.S.C. § 1715, and that ninety (90) days has passed without comment or objection from any governmental entity.

1

## III.     FINAL APPROVAL OF THE SETTLEMENT

2

3        10.     The Court finds that the Settlement resulted from arm's-length negotiations between

Class Counsel and Defendant.

4

5        11.     The Court hereby finally approves in all respects the Settlement as fair, reasonable,

and adequate, and in the best interest of the Settlement Class.

6

7        12.     The Court finds that Plaintiff and Class Counsel fairly and adequately

represented the interests of Settlement Class Members in connection with the Settlement.

8

9        13.     The Settling Parties shall consummate the Settlement in accordance with the terms

10   thereof. The Settlement, and each and every term and provision thereof, including its Releases, shall be

11   deemed incorporated herein as if explicitly set forth herein and shall have the full force and effect of an

12   order of this Court.

13

## IV.     DISMISSAL OF CLAIMS AND RELEASE

14

15       14.     The Action is hereby dismissed with prejudice as to all Parties including the

16   Settlement Class and without cost to any party, except as otherwise provided herein or in the

17   Settlement.

18       15.     Upon the Effective Date, and in consideration of the benefits set forth in the Settlement,

19   each of the Settlement Class Representative and Participating Settlement Class Members, and each of

20   their respective heirs, executors, administrators, representatives, agents, partners, successors, attorneys,

21   and assigns, present and former ("Releasing Parties"), shall be deemed to have fully, finally, and

22   forever released, acquitted, and discharged Paysafe and its present and former predecessors, successors,

23   assigns, parents, subsidiaries, divisions, affiliates, departments, and any and all of their past, present,

24   and future officers, directors, employees, stockholders, partners, servants, agents, successors, attorneys,

25   advisors, consultants, representatives, insurers, reinsurers, subrogees and the predecessors, successors,

26

27   and assigns of any of the foregoing (collectively, the "Released Persons") from any and all Released

28

Claims. This release expressly includes Paysafe's insurer with respect to all obligations under any part of the insurance policy applicable to the Released Claims, and from any and all claims arising out of the investigation, handling, adjusting, defense, or settlement of the claim including, without limitation, any claims for negligence, invasion of privacy, violations of California's Unfair Competition Law (cal. Bus. & Prof. Code § 17200, et seq.), and violations of California's Consumer Privacy Act (Cal. Civ. Code § 1798.150).

16.     For purposes of this Final Approval Order and Judgment, "Released Claims" means any and all claims or causes of action of every kind and description, including any causes of action in law, claims in equity, complaints, suits, or petitions, and any allegations of wrongdoing, demands for legal, equitable or administrative relief (including, but not limited to, any claims for injunction, rescission, reformation, restitution, disgorgement, constructive trust, declaratory relief, compensatory damages, consequential damages, penalties, exemplary damages, statutory damages, punitive damages, attorneys' fees, costs, interest or expenses) that the Releasing Parties had, have, or may claim now or in the future to have (including, but not limited to, assigned claims and any and all "Unknown Claims" (as defined in the Settlement) that were or could have been asserted or alleged arising out of the same nucleus of operative facts as any of the claims alleged or asserted in the Litigation, including but not limited to the facts, transactions, occurrences, events, acts, omissions, or failures to act that were alleged, argued, raised, or asserted in any pleading or court filing in the Litigation, including but not limited to those concerning: 1) the disclosure of the Participating Settlement Class Members' personal information in the Data Security Incident; 2) Paysafe's maintenance of the Participating Settlement Class Members' personal information as it relates to the Data Security Incident; 3) Paysafe's security policies and practices as it relates to the Data Security Incident; or 4) Paysafe's provision of notice to the Participating Settlement Class Members following the Data Security Incident.

17.     Upon entry of this Final Approval Order and Judgment, the Settlement Class Representative and other Participating Settlement Class Members are enjoined from prosecuting any Released Claims in any proceeding against any of the Released Parties or based on any actions taken by any of the Released Parties that are authorized or required by the Settlement or by this Final Approval Order and Judgment. Likewise, Paysafe and its representatives, officers, agents, directors, affiliates, employees, insurers, and attorneys shall be enjoined from prosecuting any claim they have released in the Settlement in any proceeding against the Settlement Class Representative and Class Counsel or based on any actions taken by the Settlement Class Representative and Class Counsel that are authorized or required by the Settlement or by this Final Approval Order and Judgment. The Settlement may be pleaded as a complete defense to any claim or proceeding described in this Paragraph.

## V.     ATTORNEYS' FEES, COSTS, AND EXPENSES AND REPRESENTATIVE PLAINTIFF'S SERVICE AWARD

18.     The Court awards attorneys' fees of $[TBD] and reimbursement of costs and expenses in the amount of $[TBD], totaling $[TBD], and payment of a service award in the amount of $[TBD] to Plaintiff. The Court directs the Settlement Administrator to pay such amounts in accordance with the terms of the Settlement. Class Counsel, in their sole discretion to be exercised reasonably, shall allocate and distribute the attorneys' fees, costs, and expenses awarded by the Court among Plaintiff's counsel of record in the Action.

## VI.    OTHER PROVISIONS

19.     Without affecting the finality of this Final Approval Order and Judgment in any way, the Court retains continuing and exclusive jurisdiction over the Settling Parties and the Settlement Class for the purpose of consummating, implementing, administering, and enforcing all terms of the Settlement.

20.     Nothing in this Final Approval Order and Judgment, the Settlement, or any documents or statements relating thereto, is or shall be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by Defendant.

21.     In the event the Effective Date does not occur, this Final Approval Order and Judgment shall be rendered null and void and shall be vacated and, in such event, as provided in the Settlement, this Order and Judgment and all orders entered in connection herewith shall be vacated and null and void, the Settling Parties shall be restored to their respective positions in the Action, all of the Parties' respective pre-Settlement claims and defenses will be preserved, and the terms and provisions of the Settlement shall have no further force and effect with respect to the Settling Parties and shall not be used in the Action or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Settlement shall be treated as vacated, *nunc pro tunc*.

**IT IS SO ORDERED.**

Dated:                                              By:_____
                                                          MAGISTRATE JUDGE JOSEPH C. SPERO