M. Anderson Berry (SBN 262879)
Gregory Haroutunian (SBN 330263)
**CLAYEO C. ARNOLD**
**A PROFESSIONAL CORPORATION**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 239-4778
Facsimile: (916) 924-1829
aberry@justice4you.com
gharoutunian@justice4you.com

John A. Yanchunis (*Pro Hac Vice*)
Ryan D. Maxey (*Pro Hac Vice*)
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 559-4908
Facsimile: (813) 223-5402
jyanchunis@ForThe People.com
rmaxey@ForThe People.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| KAMAL BITMOUNI, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br>vs.<br><br>PAYSAFE PAYMENT PROCESSING SOLUTIONS LLC, a Delaware limited liability company,<br><br>    Defendant. | Case No. 3:21-cv-00641-JCS<br><br>**PLAINTIFF'S NOTICE OF UNOPPOSED RENEWED MOTION AND  MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:<br>Time:  2:00 p.m.<br>Courtroom: Courtroom F – 15th Floor<br>Judge:  Hon. Joseph C. Spero |

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on ____, 2023, at 2:00 p.m., or as soon thereafter as counsel may be heard, before the Honorable Joseph C. Spero, at San Francisco Courthouse, Courtroom F – 15th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiff will and hereby does move this Court, pursuant to Federal Rule of Civil Procedure 23, for an order granting Plaintiff's Unopposed Renewed Motion for Preliminary Approval of Class Action Settlement.

Plaintiff bases his Renewed Motion for Preliminary Approval of Class Action Settlement on this Notice; the Memorandum of Law in Support of this Motion; the Joint Declaration of M. Anderson Berry and John A. Yanchunis in Support of Plaintiffs' Unopposed Renewed Motion for Preliminary Approval of Class Action Settlement ("Joint Decl."); the Declaration of Jeanne C. Finegan; all other records and papers on file in this action; any oral argument on the Motion; and all other matters properly before the Court.

Plaintiff seeks an order pursuant to Federal Rule of Civil Procedure 23(b)(3) certifying the Settlement Class more fully described in the Settlement Agreement,; preliminarily approving the Settlement as fair, reasonable, and adequate; directing notice to be  disseminated to the Settlement Class in the form and manner proposed by the parties as set forth in the Settlement Agreement and attached to the Motion for Preliminary Approval as exhibits 4 & 6 thereto; appointing Kroll Settlement Administration to serve as the Settlement Administrator; appointing Plaintiff as Class Representative and the undersigned attorneys as Class Counsel; and setting a hearing date and schedule for final approval of the Settlement and consideration of Class Counsel's forthcoming motion for an award of fees, costs, expenses, and service awards.

This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on March 3, 2023, and at numerous times and on numerous dates thereafter.

Date: May 2, 2023                              Respectfully Submitted,

                                               */s/M. Anderson Berry*
                                               M. Anderson Berry (SBN 262879)
                                               Gregory Haroutunian (SBN 330263)
                                               **CLAYEO C. ARNOLD**
                                               **A PROFESSIONAL CORPORATION**
                                               865 Howe Avenue
                                               Sacramento, CA 95825
                                               Telephone: (916) 239-4778
                                               Facsimile: (916) 924-1829
                                               aberry@justice4you.com
                                               gharoutunian@justice4you.com

                                               John A. Yanchunis (*Pro Hac Vice*)
                                               Ryan D. Maxey (*Pro Hac Vice*)
                                               **MORGAN & MORGAN**
                                               **COMPLEX LITIGATION GROUP**
                                               201 N. Franklin Street, 7th Floor
                                               Tampa, FL 33602
                                               Telephone: (813) 559-4908
                                               Facsimile: (813) 223-5402
                                               jyanchunis@ForThe People.com
                                               rmaxey@ForThe People.com

M. Anderson Berry (SBN 262879)
Gregory Haroutunian (SBN 330263)
**CLAYEO C. ARNOLD**
**A PROFESSIONAL CORPORATION**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 777-7777
Facsimile: (916) 924-1829
aberry@justice4you.com
gharoutunian@justice4you.com

John A. Yanchunis (Pro Hac Vice)
Ryan D. Maxey (Pro Hac Vice)
**MORGAN & MORGAN COMPLEX**
**LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 559-4908
Facsimile: (813) 223-5402
jyanchunis@ForThe People.com
rmaxey@ForThe People.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| KAMAL BITMOUNI, on behalf of himself and all others similarly situated,<br><br>                 Plaintiff,<br><br>vs.<br><br>PAYSAFE PAYMENT PROCESSING SOLUTIONS LLC, a Delaware limited liability company,<br><br>                 Defendant. | Case Number: 3:21-cv-00641-JCS<br><br>**PLAINTIFF'S UNOPPOSED RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT** |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION……………………………………………………………    2

II.   STATEMENT OF FACTS…………………………………………………    2

III.  PROCEDURAL HISTORY………………………………………………..    2

IV.   THE SETTLEMENT TERMS……………………………………………    3

    A.  Proposed Settlement Class………………………………………………    3

    B.  Settlement Benefits – Monetary Relief………………………………..    4

        1. Out-of-Pocket Losses and Attested Time Cash Payments………………...    4

        2. Residual Cash Payment……………………………………………    4

        3. Unclaimed Property…………………………………………………    5

    C.    Equitable Settlement Terms/Injunctive Relief…………………………..    5

    D.    Comparison of Settlement Benefits Against Full Recovery………………    5

    E.    Class Notice and Settlement Administration………………………………    6

    F.    Attorneys' Fees, Expenses, and Service Award…………………………    7

    G.    Release……………………………………………………………..    8

V.    ARGUMENT………………………………………………………………    8

    A.    The Settlement Satisfies Rule 23(a)………………………………………    9

        i.    The Proposed Class is Sufficiently Numerous…………………………    10

        ii.   The Settlement Class Satisfies the Commonality Requirement………...    10

        iii.  Plaintiff's Claims are Typical of Settlement Class……………………    10

        iv.  Plaintiff Will Adequately Protect the Interests of the Class…………….    11

    B.    Rule 23(b)(3)'s Requirements Are Met for Purposes of Settlement…………    11

-ii-

PLAINTIFF'S UNOPPOSED RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
CASE NO. 3:21-CV-00641

# TABLE OF CONTENTS

Page

C.  The Settlement Should Be Preliminarily Approved Pursuant to Rule 23(e)…  13

    1.  The Strength of Plaintiff's Case………………………………………  15

    2.  The Risk, Expense, Complexity, and Likely Duration of Litigation…  15

    3.  The Risk of Maintaining Class Action Status Through Trial………...  18

    4.  The Amount Offered in Settlement…………………………………..  18

    5.  The Extent of Discovery Completed and the Stage of Proceedings….  19

    6.  The Experience and Views of Counsel………………………………  20

    7.  Governmental Participants……………………………………………  21

    8.  The Reaction of the Class Members to the Proposed Settlement…….  21

    9.  Lack of Collusion Among the Parties…………………………………  21

    10. The Settlement Treats Settlement Class Members Equitably…………  21

D.  The Court Should Approve the Proposed Notice Program……………………  22

E.  Appointment of the Settlement Administrator…………………………………  24

F.  Appointment of Settlement Class Counsel……………………………………  24

VI.  CONCLUSION…………………………………………………………………………  25

1

## TABLE OF AUTHORITIES

2

**Cases**                                                                                    **Page**

3

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)……………………………………. 9, 11

4

*Andrews v. Plains All American Pipeline L.P.,* CV-15-4113-PSG, 2022 WL 4453864,

5
    (C.D. Cal. Sept. 20, 2022)………………………………………………………………….. 7

6

*Butler v. Sears, Roebuck & Co*., 727 F.3d 796, 801 (7th Cir. 2013)………………………… 12

7

*Bykov v. DC Trans. Services, Inc*., No. 2:18-cv-1692 DB, 2019 WL 1430984,

8
    (E.D. Cal. Mar. 29, 2019)…………………………………………………………………….. 14

9

*Calderon v. Wolf Firm*, No. SACV 16-1622-JLS(KESx), 2018 WL 6843723,

10
    (C.D. Cal. Mar. 13, 2018)……………………………………………………………………. 18

11

*Celano v. Marriott Int'l Inc*., 242 F.R.D. 544, 548-49 (N.D. Cal. 2007)…………………….. 10

12

*Chester v. TJX Cos*., No. 5:15-cv-01437-ODW(DTB), 2017 WL 6205788,

13
    (C.D. Cal. Dec. 5, 2017)……………………………………………………………………… 17

14

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)…………………….. 8

15

*Cohorst v. BRE Props*., No. 3:10-CV-2666-JM-BGS, 2011 WL 7061923

16
    (S.D. Cal. Nov. 9, 2011)……………………………………………………………………… 21

17

*Compare Roes 1-2 v. SFBSC Management LLC,* 944 F.3d 1035, 1046 (9th Cir. 2019)…….. 24

18

*Dennis v. Kellogg Co*., No. 09-cv-1786-L(WMc), 2013 WL 6055326,

19
    (S.D. Cal. Nov. 14, 2013)……………………………………………………………………. 16

20

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974)…………………………………… 22

21

*Ellis v. Costco Wholesale Corp*., 657 F.3d 970, 979–80 (9th Cir. 2011)……………………. 9, 11

22

*Franklin v. Kaypro Corp*., 884 F.2d 1222, 1229 (9th Cir. 1989)……………………………. 15

23

*G. F. v. Contra Costa Cty*., No. 13-cv-03667-MEJ, 2015 WL 4606078,

24
    (N.D. Cal. July 30, 2015)……………………………………………………………………... 21

25

*Gautreaux v. Pierce*, 690 F.2d 616 (7th Cir. 1982)…………………………………………. 14

26

*Gomez v. USF Reddaway, Inc.*, LA CV16-05572 JAK (FFMx), 2020 WL 10964603,

27
    (C.D. Cal. Sept. 21, 2020)…………………………………………………………………... 7

28

1

# <u>TABLE OF AUTHORITIES</u>

2

**<u>Cases</u>**                                                                                                                    **<u>Page</u>**

3

*Gribble v. Cool Transports Inc.*, No. CV 06-4863 GAF (SHx), 2008 WL 5281665,

4
(C.D. Cal. Dec. 15, 2008)…………………………………………………………….. 14

5

*Grimm v. American Eagle Airlines, Inc.*, No. LA CV 11-00406 JAK(MANx),

6
2014 WL 1274376 (C.D. Cal. Sept. 24, 2014)………………………………………….. 18

7

*Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060 (RMB) (RLE),
2010 WL 2643307(S.D.N.Y. June 25, 2010)……………………………………….... 17

8

9
*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)…………………………11, 12, 16

10
*Hartranft v. TVI, Inc.*, No. SACV 15-01081-CJC-DFM, 2019 WL 1746137,
(C.D. Cal. Apr. 18, 2019)…………………………………………………………….. 24

11

12
*Hillman v. Lexicon Consulting, Inc.*, No. EDCV 16-01186-VAP(SPx), 2017 WL 10433869,
(C.D. Cal. April 27, 2017)…………………………………………………………….. 20

13

14
*Holly v. Alta Newport Hospital,* Case No.2:19-cv-07496 ODW (MRWx),
2020 WL 1853308, (April 10, 2020)………………………………………………….. 10

15

16
*Howell v. Advantage RN, LLC,* 17-CV-883 JLS (BLM), 2020 WL 5847565,
(S.D. Cal. Oct. 1, 2020)……………………………………………………………….. 7

17
*Hudson v. Libre Technology Inc.,* No. 3:18-cv-1371-GPC-KSC, 2020 WL 2467060,
(S.D. Cal. May 13, 2020)…………………………………………………………… 22

18

19
*In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 316-17 (N.D. Cal. 2018)………….. 13

20
*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)……………. 16

21
*In re Brinker Data Incident Litig.*, No. 3:18-CV-686-TJC-MCR, 2021 WL 1405508,
(M.D. Fla. Apr. 14, 2021)…………………………………………………………….. 18

22

23
*In re Google LLC St. View Elec. Commc'ns Litig.*, No. 10-MD-02184-CRB,
2020 WL 1288377 (N.D. Cal. Mar. 18, 2020)……………………………………….. 12

24

25
*In re Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-MD-02583-TWT,
2016 WL 6902351 (N.D. Ga. Aug. 23, 2016)………………………………………...10, 19

26
*In re Hyundai & Kia Fuel Economy Litig.*, 926 F.3d 539, 559 (9th Cir. 2019)……………...12, 23

27
*In re McKesson HBOC, Inc. ERISA Litig.*, 391 F. Supp. 2d 844, 851 (N.D. Cal. 2005)…….. 22

28

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                    **Page**

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000)…………………………..    7

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947-48 (9th Cir. 2015)……………22, 24

*In re Sorbates Direct Purchaser Antitrust Litig.*, No. 99-1358MMC, 2002 WL 31655191,
    (N.D. Cal. Nov. 15, 2002)……………………………………………………………………..    22

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007)……………..14, 22

*In re Target Corp. Customer Data Sec. Breach Litig.*, No. MDL 14-2522-PAM,
    (D. Minn. March 18, 2015); 2017 WL 2178306
    (D. Minn. May 17, 2017)…………………………………………………………………………    19

*In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 266 F. Supp. 3d 1 (D.D.C. 2017)...    17

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 5:16-md-02752-LHK
    (N.D. Cal. July 20, 2019)…………………………………………………………………………    13

*Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017)…………………………………11, 13

*Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 526 (C.D. Cal. 2012)……………………    12

*Linney v. Cellular  Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998)……………………..17, 19

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
    244 F.3d 1152, 1163 (9th Cir. 2001)……………………………………………………………    13

*Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006)…………………………………    14

*Malta v. Federal Home Mortg. Corp.,* 10-cv-1290 BEN (NLS), 2013 WL 444619,
    (S.D. Cal. Feb. 5, 2013) ………………………………………………………...…………..    12

*Meyer v Portfolio Recovery Associates*, 707 F.3d 943, 1041-42 (9th Cir. 2012)……………...    10

*Murillo v. Pacific Gas & Elec. Co.*, 266 F.R.D. 468, 479 (E.D. Cal. 2010)…………………...    14

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)………    20

*Norton v. Maximus, Inc.*, 1:14-0030 WBS, 2017 WL 1424636 (D. Idaho, April 17, 2017)….    20

*Ogbuehi v. Comcast of Cal./Colo./Fla./Or., Inc.*, 303 F.R.D. 337, 350 (E.D. Cal. 2014)…….    14

*Orantes-Hernandez v. Smith*, 541 F. Supp. 351, 370 (C.D. Cal. 1982)………………………    6

## TABLE OF AUTHORITIES

**Cases**                                                                                             **Page**

*Parsons v. Kimpton Hotel & Rest. Group, LLC*, No. 3:16-cv-05387-VC
   (N.D. Cal. Jan. 9, 2019)……………………………………………………………...   13

*Pauley v. CF Entm't*, No. 2:13-CV-08011-RGK-CW, 2020 WL 5809953,
   (C.D. Cal. July 23, 2020)…………………………………………………………………   7

*Paz v. AG Adriano Goldschmeid, Inc*., No. 14CV1372DMS(DHB), 2016 WL 4427439
   (S.D. Cal. Feb. 29, 2016)…………………………………………………………………   18

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985)…………………………………   23

*Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000)……………………………………   7

*Presley v. Carter Hawley Hale Profit Sharing Plan*, No. C9704316SC, 2000 WL 16437,
   (N.D. Cal. 2000)…………………………………………………………………………..   22

*Rannis v. Recchia,* 380 Fed. App'x 646, 651 (9th Cir. 2010)…………………………………   10

*Reyes v. Experian Info. Sols., Inc.*, No. SACV1600563AGAFMX, 2020 WL 466638,
   (C.D. Cal. Jan. 27, 2020)…………………………………………………………………   14

*Roe v. Frito-Lay, Inc.,* No. 14-cv-00751, 2017 WL 1315626, at *8 (N.D. Cal. Apr. 7, 2017)..   22

*Ross v. U.S. Bank Nat. Ass'n*, 2010 WL 3833922, *2 (N.D. Cal. Sept. 29, 2010)…………….   8

*Schellhorn v. Timios, Inc.*, No. 2:21-cv-08661-VAP-(JCx) (C.D. Cal.)………………………20, 21

*Smith v. Triad of Ala.*, LLC, No. 1:14-CV-324-WKW, 2017 WL 1044692,
   (M.D. Ala. Mar. 17, 2017)………………………………………………………………...   18

*Spencer v. #1 A LifeSafer of Ariz., LLC*, No. CV-18-02225-PHX-BSB, 2019 WL 1034451,
   (D. Ariz. Mar. 4, 2019)…………………………………………………………………   24

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016)……………………………..   12

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)…………………………………   10

*Williams v. Costco Wholesale Corp*., 02cv2003 IEG (AJB), 2010 WL 2721452
   (S.D. Cal. July 7, 2010)……………………………………………………………...….   23

*Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010)…………….   13

-vii-

PLAINTIFF'S UNOPPOSED RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
CASE NO. 3:21-CV-00641

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

**<u>Statutes</u>**                                                                                    **<u>Page</u>**

Cal. Civ. Code § 384……………………………………………………………..    5

Fed. R. Civ. P. 23(a)(1)…………………………………………………………..    10

Fed. R. Civ. P. 23(a)(3)…………………………………………………………..    11

Fed. R. Civ. P. 23(c)(2)(B)………………………………………………………6, 22, 23

Fed. R. Civ. P. 23(e)…………………………………………………………..passim

Fed. R. Civ. P. 23(e)(1)…………………………………………………………..    13

Fed. R. Civ. P. 23(e)(2)………………………………………………………2, 13, 14

Fed. R. Civ. P. 23(e)(2)(D)……………………………………………………    22

Fed. R. Civ. P. 23(g)(1)(B)……………………………………………………    24

Fed. R. Civ. P. 23(g)(1)(A)(i–iv)………………………………………………...    25

**<u>Other</u>**                                                                                    **<u>Page</u>**

4 Newberg on Class Actions § 11.41 (4th ed. 2002)……………………………………    9

Calvin C. Fayward, Jr. & Charles S. McCowan, Jr., *The Cy Pres Doctrine:*
     *"A Settling Concept,"* 58 LA. B.J. 248, 251 (2011)………………………………...    5

Daniel Blynn, *Cy Pres Distributions: Ethics & Reform*,
     25 GEO. J. LEGAL ETHICS 435, 438 (2012)………………………………………...    5

Danny Van Horn & Daniel Clayton, *It Adds Up: Class Action Residual Funds*
     *Support Pro Bono Efforts*, 45 TENN. B.J. 12, 13-14 (2009)…………………………    5

Manual for Complex Litigation (Fourth), § 21.632………………………………………..    9

Wright, et al., Fed. Prac. and Proc. § 1777, p. 518-19 (2d ed. 1986)………………………    11

On March 3, 2023, the Court held a hearing on Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement ("Original Motion"). ECF Nos. 89, 90. The Court ordered that Plaintiff Kamal Bitmouni and Defendant Paysafe Payment Processing Solutions LLC ("Paysafe" and together with Plaintiff, the "Parties") further meet and confer on the terms of the proposed settlement. The Parties have now negotiated modifications to the settlement to address various questions raised by the Court, which are documented in an amended Class Action Settlement Agreement and Release ("Amended Settlement Agreement" or "A.S.A."), attached hereto as **Exhibit 1** ("A.S.A."), and in this Renewed Motion for Preliminary Approval of Class Action Settlement ("Renewed Motion").

The Parties have agreed to (1) modify the benefits to the Class such that after any Valid Claims[1] for Out-of-Pocket losses and Attested Time are paid, the value of the Net Settlement Fund will be distributed to the Settlement Class on a *pro-rata* basis; (2) increase the amount of Attested Time for which Settlement Class members may be reimbursed; (3) donate any unclaimed or unpaid funds to an organization devoted to the benefit of California residents; (4) make procedural changes to the timing of the opt-out and objection deadlines and to the procedure for making objections; (5) make changes to the Claims and Notice forms to address comments made by the Court; and (6) agree to a cap of $399,000 for settlement administration and claims costs. Joint Declaration of M. Anderson Berry and John A. Yanchunis in Support of Preliminary Approval of Class Action Settlement ("Decl."), ¶ 42 (attached as **Exhibit 2**). With these changes, Plaintiff hereby submits the Renewed Motion pursuant to Fed. R. Civ. P. 23(e).

Before filing this Renewed Motion, Plaintiff conferred with Paysafe and determined that the motion is unopposed. The Renewed Motion is supported by the accompanying Memorandum in Support and by the Original Motion and accompanying filings. ECF No. 89.

**PLAINTIFF'S MEMORANDUM IN SUPPORT**

## I.    INTRODUCTION

Plaintiff requests that the Court grant preliminary approval of the Settlement so that notice under Fed. R. Civ. P. 23(e)(2) may be issued to Class members. Plaintiff further requests that the Court enter the Proposed Order, which will: (1) Preliminarily approve the Settlement as fair, reasonable, and adequate for the Class; (2) Conditionally certify the Class; (3) Designate Plaintiff as Settlement Class Representative; (4) Designate M. Anderson Berry and Gregory Haroutunian of Clayeo C. Arnold, A Professional Law Corp., and John A. Yanchunis and Ryan Maxey of Morgan and Morgan as Class Counsel; (5) Designate Kroll Settlement Administration as Claims Administrator; (6) Approve the form, content, and methods of the Long and Short Form Notices; (7) Establish procedures and schedule deadlines for notice to the Class, and for Class members to object and/or opt-out of the Settlement and to submit a Claim Form; (8) Schedule deadlines for the filing of papers in support of final approval, and in support of motions for attorneys' fees and the Settlement Class Representative's Service Award; (9) Schedule a date for the Final Fairness Hearing; and (10) Establish other requirements and procedures to effectuate the Settlement.

## II.    STATEMENT OF FACTS

Plaintiff refers to and hereby incorporates the Statement of Facts included in the Original Motion. ECF No. 89.

## III.    PROCEDURAL HISTORY

Plaintiff refers to and hereby incorporates the procedural history recited in the Original Motion (ECF No. 89) and limits his description of the history of this matter to that which is relevant to the instant motion. On January 27, 2021, Plaintiff filed the instant lawsuit. For several months, the Parties informally, and sometimes contentiously, discussed settlement. While the

---

[1] Capitalized terms not defined herein are stated in the Amended Settlement Agreement.

PLAINTIFF'S UNOPPOSED RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
CASE NO. 3:21-CV-00641

parties agreed to mediate in February 2022, the mediation was rescheduled due to COVID-19, until May 25, 2022. The parties attended an all-day in-person mediation with highly experienced mediator Zela G. Claiborne, Esq. of JAMS in San Francisco. While no settlement was reached, the parties agreed to exchange informal and formal discovery, including depositions, relating to the nature of the Data Security Incident and Paysafe's response to it, as well Plaintiff's claims. On August 30, 2022, the Parties attended a second in-person mediation session with Ms. Claiborne, where the Parties settled in principle. Over the next several months the Parties finalized and executed the original Settlement Agreement on December 27, 2022. (ECF No. 89-1 Ex. 1). Following the March 3, 2023 conference with the Court, the Parties negotiated the amended Settlement. Decl., ¶ 17.

## IV.    THE SETTLEMENT TERMS

### A.    Proposed Settlement Class

The Amended Settlement provides relief for a Class of "individuals identified on the Settlement Class List, which includes all individuals who were notified by direct notice by Paysafe that their personal information was or may have been compromised in the Data Security Incident." A.S.A., ¶ 33. The Nationwide Class alleged in the operative Complaint (ECF No. 72, ¶ 75) is defined as, "[a]ll individuals who are residents of the United States and whose PII was or may have been accessed during the cybersecurity incident referenced in the Notice of Data Breach dated December 16, 2020 that Merchant Services (including CHI Payments, iPayment, and Paysafe) sent to Plaintiff (the 'Nationwide Class')." The definition in the A.S.A. is more specific while including the same individuals included in the Complaint, because it includes all 91,706 persons who received notice that their PII may have been accessed in the Data Security Incident. The claims released by the Settlement Class are the same as those that would have been released by the Nationwide Class in the Complaint.

**B.  Settlement Benefits – Monetary Relief**

The Settlement provides for a non-reversionary common fund of two-million dollars ($2,000,000) that affords two forms of monetary relief: (1) reimbursement for Out-of-Pocket Losses and Attested Time up to $25,000 per Class member; and (2) a residual cash payment to each class member. A.S.A., §§ II–V. This relief addresses the types of damages suffered following a data breach and provides benefits to every Settlement Class Member.

**1.        Out-of-Pocket Losses and Attested Time Cash Payments.**

Settlement Class Members may submit claims for unreimbursed Out-of-Pocket Losses related to the Data Security Incident up to $25,000 per class member. A.S.A., ¶¶ 47. Valid Out-of-Pocket Losses are those that were actually incurred that are fairly traceable to the Data Security Incident. A.S.A., ¶ 48. In assessing what qualifies as "fairly traceable," the Settlement Administrator will consider:

> (i) whether the timing of the loss occurred on or after May 1, 2018; and (ii) whether the Personal Information used to commit identity theft or fraud consisted of the type of Personal Information identified in Paysafe's notices of the Data Security Incident. Costs expended for mitigation measures like credit monitoring services, fraud resolution services, and professional services incurred to address identity theft or fraud on or after May 1, 2018, shall be presumed "reasonably incurred."

Settlement Class Members may also submit claims for reimbursement for time spent remedying issues related to the Data Security Incident (*i.e.*, Attested Time) for up to ten (10) hours at $25 per hour ($250 total). A.S.A., ¶ 49. Such payments are included in the $25,000 cap for Out-of-Pocket Losses. *Id*. If the aggregate value of claims for Out-of-Pocket Losses and Attested Time exceeds $400,000, the amount of each such claim shall be reduced *pro rata* so that the aggregate value of all such claims equals $400,000. A.S.A., ¶ 53.

**2.        Residual Cash Payments.**

After payment of all Approved Claims for Out-of-Pocket Losses and Attested Time, all Settlement Class Members are entitled to a cash payment equal to a *pro rata* share of the Net Settlement Fund. A.S.A., ¶ 52.

### 3.    Unclaimed Property

None of the Settlement Fund shall revert or be repaid to Paysafe after the Effective Date. Any undistributed funds shall be awarded to the Legal Aid Association of California ("LAAC"). Several states specifically provide for legal services programs to receive *cy pres* distributions, including California. *See* Cal. Civ. Code § 384 (2002). The rationale for such a recipient is to increase access to justice, which makes legal aid organizations appropriate recipients of *cy pres*[2]. Here, given that there were certain claims made on behalf of California residents only, the Parties believe it best to distribute any undistributed funds for the benefit of California residents, and therefore to the LAAC.

### C.    Equitable Settlement Terms/Injunctive Relief

In addition to the foregoing benefits, Paysafe agrees to implement or maintain steps to enhance the security of its systems. *See* A.S.A., ¶ 63. These include remedial and enhanced data security measures, including cybersecurity training and awareness programs, data security policies, monitoring and response capabilities, and restrictions on accessing PII. The legacy website at issue in the Data Security Incident has also been disabled. These measures will benefit class members whose PII Paysafe still possesses and are valuable benefits that will provide the class with peace of mind that Paysafe will protect their PII.

### D.    Comparison of Settlement Benefits Against Full Recovery

The Settlement provides benefits of $2,000,000 to all class members in the form of: reimbursement for Out-of-Pocket Losses of up to $25,000; reimbursement for Attested Time up to 10 hours at $25 per hour; and a Residual Cash Payment. The Residual Cash Payment means

---

[2] *See e.g.,* Daniel Blynn, *Cy Pres Distributions: Ethics & Reform*, 25 GEO. J. LEGAL ETHICS 435, 438 (2012); Calvin C. Fayward, Jr. & Charles S. McCowan, Jr., *The Cy Pres Doctrine: "A Settling Concept,"* 58 LA. B.J. 248, 251 (2011); Danny Van Horn & Daniel Clayton, *It Adds Up: Class Action Residual Funds Support Pro Bono Efforts*, 45 TENN. B.J. 12, 13-14 (2009).

every class member is entitled to a *pro-rata* share of the Net Settlement Fund after valid claims are paid. The class is reimbursed for losses and receives cash to compensate them for ongoing damages, which is what they would receive on their best day in court. The Settlement also provides for improving Paysafe's security and protects PII that Paysafe retains, preventing further loss. At trial, the class would risk getting only some or none of these benefits.

### E.    Class Notice and Settlement Administration

Notice costs will be paid from the Settlement Fund. The Summary Notice (Exhibit 1 to the A.S.A. will be mailed to each class member at the postal address to which notice of the Data Security Incident was mailed. Declaration of Jeanne C. Finegan ("Finegan Decl.") (attached as **Exhibit 3**), ¶ 16; Decl., ¶ 32. A Long Notice (also Exhibit 1 to the A.S.A.) will also be posted on the Settlement Website, www.[TBD].com, along with other important documents such as the A.S.A. and the motions for final approval and for attorneys' fees and expenses. A.S.A., ¶¶ 64, 67. The notice documents are clear and concise, and apprise the class of all information necessary to submit a claim or to opt-out or object to the Settlement. Fed. R. Civ. P. 23(c)(2)(B). A toll-free number with interactive voice response, FAQs, and an option to speak to a live operator will also be made available to address any inquiries. A.S.A, ¶ 67.

Plaintiff has retained Kroll Settlement Administration ("Kroll"), a nationally recognized and well-regarded class action settlement administrator, to serve as Claims Administrator, subject to the Court's approval. *See* Decl., ¶ 29. Kroll has estimated that Notice and Administration Expenses, including a potential media campaign will total $399,000. Thus, the A.S.A. caps the total cost of settlement administration at $399,000. A.S.A., ¶ 70.

Based on their experience with data breach cases and in consultation with Kroll, Class Counsel anticipates a claims rate of between 1 and 9 percent. The Claim Form (Exhibit 2 to the A.S.A.) is similar to others used in settlements involving data breach incidents and claims for

Out-of-Pocket Losses and Attested Time rarely exceed 9 percent. Decl., ¶ 25. Class Counsel recommends the contents of the Claim Form based on their experience in successfully soliciting claims and allocating settlement benefits in similar class actions.

### F.    Attorneys' Fees, Expenses, and Service Award

Class Counsel will seek an award of attorneys' fees not to exceed 25 percent of the Settlement Fund (*i.e.*, $500,000), and reimbursement of litigation costs and expenses not to exceed $50,000, which shall be paid from the Settlement Fund. A.S.A., ¶ 86. Class Counsel's fee request is well within the range of reasonableness for settlements of this nature and size. "25% [is] considered the benchmark" in the Ninth Circuit. *Pauley v. CF Entm't*, No. 2:13-CV-08011-RGK-CW, 2020 WL 5809953, at *3 (C.D. Cal. July 23, 2020), *citing Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000). The Ninth Circuit has found fee awards of 1/3 of the fund to be reasonable. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000). To date, Class Counsel have accrued lodestar of $620,128.20 with $27,648.42 in expenses. Decl., ¶ 51.

Plaintiff has been vital in resolving this matter, providing his personal information, submitting to a five-hour deposition, and responding to discovery in significant detail about his private information and experiences. Plaintiff has been involved in and supports the Settlement. Decl., ¶ 44. Plaintiff will petition the Court for an award of $15,000 in recognition of the time, effort, and expense he incurred pursuing claims that benefited the class. *See* A.S.A., § XV. This amount is reasonable in recognition of Plaintiff's efforts.[3]

---

[3] *See, e.g., Andrews v. Plains All American Pipeline L.P.,* CV-15-4113-PSG, 2022 WL 4453864, * 5 (C.D. Cal. Sept. 20, 2022) (awarding $15,000 for providing facts for the complaint, helping analyze claims, being deposed, and approving the settlement); *Howell v. Advantage RN, LLC,* 17-CV-883 JLS (BLM), 2020 WL 5847565, *5 (S.D. Cal. Oct. 1, 2020) (awarding plaintiff $10,000 despite her not being deposed); *Gomez v. USF Reddaway, Inc.*, LA CV16-05572 JAK (FFMx), 2020 WL 10964603, *3 (C.D. Cal. Sept. 21, 2020) (awarding $17,500 and $7,500 out of a settlement of only $1,500,000); *Ross v. U.S. Bank Nat. Ass'n*, C 07-02951 SI., 2010 WL

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### G.     Release

Upon entry of the Final Approval Order (A.S.A., Ex. 3), Plaintiff and the class will be deemed to have "fully, finally, and forever released, acquitted and discharged Paysafe . . . from any and all Released Claims." A.S.A., § XIV. "Released Claims" are defined, *inter alia*, as:

> Any and all claims or causes of action of every kind and description, including any causes of action in law, claims in equity, complaints, suits, or petitions, and any allegations of wrongdoing, demands for legal, equitable or administrative relief (including, but not limited to, any claims for injunction, rescission, reformation, restitution, disgorgement, constructive trust, declaratory relief, compensatory damages, consequential damages, penalties, exemplary damages, statutory damages, punitive damages, attorneys' fees, costs, interest or expenses) that the Releasing Parties had, have, or may claim now or in the future to have (including, but not limited to, assigned claims and any and all "Unknown Claims" as defined below) that were or could have been asserted or alleged arising out of the same nucleus of operative facts as any of the claims alleged or asserted in the Litigation, including but not limited to the facts, transactions, occurrences, events, acts, omissions, or failures to act that were alleged, argued, raised, or asserted in any pleading or court filing in the Litigation, including but not limited to those concerning: 1) the disclosure of the Participating Settlement Class Members' personal information in the Data Security Incident; 2) Paysafe's maintenance of the Participating Settlement Class Members' personal information as it relates to the Data Security Incident; 3) Paysafe's security policies and practices as it relates to the Data Security Incident; or 4) Paysafe's provision of notice to the Participating Settlement Class Members following the Data Security Incident.

A.S.A., ¶ 27. These include Unknown Claims as defined in ¶ 80 of the A.S.A. Released Claims do include the enforcement of the terms of the A.S.A., or the claims of excluded Class members.

## V.     ARGUMENT

Plaintiff brings this motion pursuant to Fed. R. Civ. P. 23(e). Settlements are highly favored, particularly in class actions and other complex matters where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"); 4 Newberg on Class Actions § 11.41 (4th ed. 2002) (citing cases). Other

3833922, *2 (N.D. Cal. Sept. 29, 2010) (awarding $20,000 for reviewing documents, being deposed, and participating in settlement).

means of handling the claims at issue here, for example, individual litigation, would require huge expenditures of resources, and, given the small value of the claims of the individual Class members, be impracticable. Thus, a settlement—and specifically the A.S.A.—provides the best vehicle for the Class to receive fair, reasonable and adequate relief. The Manual for Complex Litigation (Fourth) advises that the "judge should make a preliminary determination that the proposed class satisfies the criteria" of Rule 23. § 21.632. The evaluation of certification in the context of a class action that has settled is somewhat different than in a case that has not yet settled. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). In some ways, the scrutiny is lessened: as no trial is anticipated, case management issues inherent in the class determination need not be confronted. *See id*. Other certification issues, such as "those designed to protect absentees by blocking unwarranted or overbroad class definitions," require heightened scrutiny in the settlement-only context "for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id*. Plaintiff seeks certification of a class consisting of: "the individuals identified on the Settlement Class List, which includes all individuals who were notified by direct notice by Paysafe that their personal information was or may have been compromised in the Data Security Incident."[4] A.S.A., ¶ 33. The class contains 91,706 individuals. For the following reasons, the Court should certify the class for settlement purposes and preliminarily approve the Settlement.

### A.     The Settlement Satisfies Rule 23(a)

Each of the Rule 23(a) requirements is met: numerosity, commonality, typicality, and adequacy. FRCP 23(a); *Ellis v. Costco Wholesale Corp*., 657 F.3d 970, 979–80 (9th Cir. 2011).

---

[4] Excluded from the Class are: (1) the judges presiding over this Litigation, and members of their direct families; (2) the Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, and employees; and (3) Settlement Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline. *Id.*

PLAINTIFF'S UNOPPOSED RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
CASE NO. 3:21-CV-00641

1
2
3

### i.    The Class is Sufficiently Numerous.

4        The numerosity element considers whether there are so many class members that joinder

5   is impracticable. *See* Fed. R. Civ. P. 23(a)(1). Courts generally find numerosity satisfied where a

6   class includes at least 40 members. *Holly v. Alta Newport Hospital,* Case No.2:19-cv-07496

7   ODW (MRWx), 2020 WL 1853308, at *7 (April 10, 2020), *citing Rannis v. Recchia,* 380 Fed.

8   App'x 646, 651 (9th Cir. 2010); *Celano v. Marriott Int'l Inc.*, 242 F.R.D. 544, 548-49 (N.D. Cal.

9   2007). With 91,706 individuals, the proposed class easily satisfies the numerosity requirement.

10

### ii.    The Class Satisfies the Commonality Requirement.

11

12       The class also satisfies commonality, which requires that class members' claims "depend

13  upon a common contention," such that "determination of its truth or falsity will resolve an issue

14  that is central to the validity of each [claim] in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564

15  U.S. 338, 350 (2011). Here, common issues "center on [Defendant's] conduct, satisfying the

16  commonality requirement." *In re the Home Depot, Inc., Customer Data Sec. Breach Litig*., No.

17  1:14-MD-02583-TWT, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016). Common questions

18  include, *inter alia*, whether class members' PII was compromised and whether Paysafe: owed a

19  duty to the class; breached its duty; unreasonably delayed in notifying the class of the Incident;

20  and committed the violations alleged in the Second Amended Complaint. Thus, the commonality

21  requirement is met.

22

23

### iii.    Plaintiff's Claims are Typical of the Class.

24       The Settlement satisfies the typicality requirement because Plaintiff's claims are

25  "reasonably coextensive with those of the absent class members." *See* Fed. R. Civ. P. 23(a)(3);

26  *Meyer v Portfolio Recovery Associates*, 707 F.3d 943, 1041-42 (9th Cir. 2012) (upholding

27  typicality finding). Because Plaintiff alleges that his and class members' PII was compromised in

28

---

PLAINTIFF'S UNOPPOSED RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT
CASE NO. 3:21-CV-00641

the Data Security Incident, they were impacted by the same conduct. *See Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017) ("[I]t is sufficient for typicality if the plaintiff endured a course of conduct directed against the class.").

### iv.    Plaintiff Will Adequately Protect the Interests of the Class.

Adequacy is met where (1) there are no antagonistic interests between plaintiff, their counsel, and the class; and (2) plaintiff and counsel will vigorously prosecute the action on behalf of the class. Fed. R. Civ. P. 23(a)(4); *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (*citing Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). Plaintiff has no conflicts of interest with the class, and he and his counsel have vigorously prosecuted this case on behalf of the class. Plaintiff is a class member who has the same alleged injuries and seeks, like other class members, compensation for the Data Security Incident. Plaintiff's interests and the interests of his counsel are consistent with those of the class. Further, counsel for Plaintiff have decades of experience as class action litigators and are well suited to advocate on behalf of the class. *See* Decl. ¶¶ 46, 48. Thus, the adequacy requirement is met.

### B.    Rule 23(b)(3)'s Requirements Are Met for Purposes of Settlement.

The proposed class also satisfies the requirements of Rule 23(b)(3). The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623 (citing Wright, et al., Fed. Prac. and Proc. § 1777, p. 518-19 (2d ed. 1986)). Here, common questions predominate over individual questions and class treatment is superior to other methods for a fair and efficient resolution of the controversy.

"If common questions 'present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication,' then 'there is clear justification for handling the dispute on a representative rather than on an individual basis,' and the predominance test is satisfied." *See Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 526 (C.D. Cal. 2012) (quoting

*Hanlon*, 150 F.3d at 1022). Predominance is met "where the class is a 'cohesive group of individuals [who] suffered the same harm in the same way because of the [defendant's] conduct.'" *In re Google LLC St. View Elec. Commc'ns Litig.*, No. 10-MD-02184-CRB, 2020 WL 1288377, at *5 (N.D. Cal. Mar. 18, 2020) (quoting *In re Hyundai & Kia Fuel Economy Litig.*, 926 F.3d 539, 559 (9th Cir. 2019)). "[C]ommon issues need only predominate, not outnumber individual issues." *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013) (quotations omitted). Plaintiff's claims center on whether Paysafe used reasonable measures to protect PII. That question can be resolved using the same evidence for all class members, and thus is the type of predominant question that makes class-wide settlement appropriate. *See, e.g., Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) ("When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) … .'") (citation omitted).

Rule 23(b)(3) also requires a determination that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." In determining that this requirement is satisfied, a court may consider: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).; *Malta v. Federal Home Mortg. Corp.,* 10-CV-1290 BEN (NLS), 2013 WL 444619, (S.D. Cal. Feb. 5, 2013) at *3 (superiority is met where "considerations of judicial economy favor litigating a predominant common issue once in a class action instead of many times in separate lawsuits" and where "small individual claims of class members" made it "unlikely that individual actions will be filed").

1    A class action is the superior method of adjudicating claims arising from the Data Security

2    Incident—just as in other data breach cases where class-wide settlements have been approved.

3    *See, e.g., In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 5:16-md-02752-LHK (N.D.

4    Cal. July 20, 2019); *Parsons v. Kimpton Hotel & Rest. Group, LLC*, No. 3:16-cv-05387-VC (N.D.

5    Cal. Jan. 9, 2019); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 316-17 (N.D. Cal.

6    2018). Individual actions are impracticable: the amount in dispute for each of the thousands of

7    class members is small and most lack the resources to pursue their individual claims, the issues

8    involved are complex, and expert testimony and document review will be costly. *See Just Film*,

9    847 F.3d at 1123. No class member has an interest in controlling the prosecution of this action

10   because Plaintiff's claims are the same as those of the class. Alternatives to a class action are

11   either no recourse for thousands of individuals, or a multiplicity of suits resulting in an inefficient

12   and possibly disparate administration of justice. Class-wide resolution is the only practical

13   method to address these claims. *See Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v.*

14   *Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) (noting that "multiple claims for

15   relatively small individual sums" are well suited to class treatment); *see also Wolin v. Jaguar*

16   *Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("Where recovery on an individual

17   basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor

18   of class certification.").

19   **C.    The Settlement Should Be Preliminarily Approved Pursuant to Rule 23(e).**

20   "[U]nder Rule 23(e)(1), the issue at preliminary approval turns on whether the Court 'will

21   likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for

22   purposes of judgment on the proposal.'" *Reyes v. Experian Info. Sols., Inc.*, No. SACV 16-00563

23   AG (AFMx), 2020 WL 466638, at *1 (C.D. Cal. Jan. 27, 2020). Rule 23(e) provides that a class

24   action may be "settled . . . only with the court's approval." Moreover, "[t]he parties must provide

the court with information sufficient to enable it to determine whether to give notice of the proposal to the class." If it is shown that the Court will be able to "approve the proposal" and "certify the class for purposes of judgment on the proposal," "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e). Notice should be given to the class, and preliminary approval should be granted, where the Court "will likely be able to" finally approve the settlement under Rule 23(e)(2) and certify the class. *Id.* "In evaluating a proposed settlement at the preliminary approval stage, some district courts . . . have stated that the relevant inquiry is whether the settlement 'falls within the range of possible approval' or 'within the range of reasonableness.'" *Bykov v. DC Trans. Services, Inc.*, No. 2:18-cv-1691 DB, 2019 WL 1430984, at *2 (E.D. Cal. Mar. 29, 2019). "[P]reliminary approval of a settlement has both a procedural and a substantive component." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007).

Procedurally, "a presumption of fairness applies when settlements are negotiated at arm's length, because of the decreased chance of collusion between the negotiating parties." *Gribble v. Cool Transports Inc.*, No. CV 06-04863 GAF (SHx), 2008 WL 5281665, at *9 (C.D. Cal. Dec. 15, 2008). Likewise, "participation in mediation tends to support the conclusion that the settlement process was not collusive." *Ogbuehi v. Comcast of Cal./Colo./Fla./Or., Inc.*, 303 F.R.D. 337, 350 (E.D. Cal. 2014). Substantively, "[a]t this preliminary approval stage, the court need only 'determine whether the proposed settlement is within the range of possible approval.'" *Murillo v. Pacific Gas & Elec. Co.*, 266 F.R.D. 468, 479 (E.D. Cal. 2010) (*quoting Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982)). In sum, "the purpose of the preliminary approval process is to determine whether there is any reason not to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Lucas v. Kmart Corp.*, 234 F.R.D.

688, 693 (D. Colo. 2006). While a complete fairness evaluation is unnecessary now, Plaintiff and his counsel strongly believe that the resolution reached here is in the class's best interests.

The Ninth Circuit has identified nine factors to consider in analyzing the fairness, reasonableness, and adequacy of a class settlement:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the views of counsel; (7) the presence of a governmental participant; (8) the reaction of the class members to the proposed settlement and; (9) whether the settlement is a product of collusion among the parties.[5]

Rule 23(e) requires a court to consider several additional factors, including whether the class representative and class counsel have adequately represented the class, and whether the settlement treats class members equitably. Fed. R. Civ. P. 23(e). In applying these factors, this Court should be guided by the principle that settlements of class actions are favored. *See Franklin v. Kaypro Corp*., 884 F.2d 1222, 1229 (9th Cir. 1989) ("It hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits"). Here, the relevant factors support the conclusion that the negotiated settlement is fundamentally fair, reasonable, and adequate, and should be preliminarily approved.

### 1. The Strength of Plaintiff's Case

Plaintiff believes he has built a strong case. Plaintiff believes he will be able to offer evidence of Defendant's negligence in not maintaining reasonable data security programs and practices, which led directly to the exposure of class members' PII. Decl., ¶ 53. Plaintiff believes his claims are viable and that he has a good chance of proving that Paysafe's data security was inadequate and, if that is established, that Defendant is likely to be found liable under at least some of the liability theories and claims asserted. In Plaintiff's view, Defendant faces substantial

liability, including up to $750 for each of the 15,662 class members who are believed to have resided in California during the Data Security Incident (a total of $11,746,500). *Id.*, 6. For the very reasons stated *infra* that Plaintiff's claims face substantial risk (*See* §§ VI(C)(2) and VI(C)(3)), it is practically impossible to calculate Defendant's likely exposure on the other claims, particularly for negligence. Since no data breach case has been litigated through trial, calculation of Defendant's potential exposure is inherently speculative; however, Plaintiff alleges that the exposure of class members' PII has put each of them at a lifetime increased risk of identity theft. Therefore, Defendant's potential exposure could be measured by the cost of providing identity theft protection to the class. Identity theft protection typically retails for $60 to $72 per year, per person. Decl., ¶ 10. Therefore, Defendant's potential exposure could be estimated to be as much as $72 per year per class member for a court-approved period of time.

Although Plaintiff believes he has strong claims and would prevail at trial, success is not guaranteed. Plaintiff faces risks given the novel nature of the claims asserted. Paysafe will vigorously defend the reasonableness of its data security measures and contends that there is no evidence that any person's PII was actually compromised, or that any person has experienced identify theft or other harm arising from the Data Security Incident. Paysafe has also already offered two years' free credit monitoring and identify theft protection to class members.

Given all of these considerations, it is "plainly reasonable for the parties at this stage to agree that the actual recovery realized, and risks avoided here outweigh the opportunity to pursue potentially more favorable results through full adjudication." *Dennis v. Kellogg Co.*, No. 09-cv-1786-L(WMc), 2013 WL 6055326, at *3 (S.D. Cal. Nov. 14, 2013). "Here, as with most class actions, there was risk to both sides in continuing towards trial. The settlement avoids uncertainty

---

[5] *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011); *see also Hanlon*, 150 F.3d at 1026.

for all parties involved." *Chester v. TJX Cos*., No. 5:15-cv-01437-ODW(DTB), 2017 WL 6205788, at *6 (C.D. Cal. Dec. 5, 2017). In light of these obstacles and risks, including class certification, summary judgment, and trial, the substantial benefits the Settlement provides favor granting preliminary approval of the Settlement. Decl., ¶ 54.

### 2.  The Risk, Expense, Complexity, and Likely Duration of Litigation

While Plaintiff believes his case is strong, all cases are subject to substantial risk. This case involves a proposed class of 91,706 (Paysafe has argued that each would need to establish harm and causation); a complicated factual background; and a motivated Defendant that already has provided some relief to the class. Although nearly all class actions involve significant risk, expense, and complexity—undergirding the strong policy favoring amicable resolutions, *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998)—this is a particularly complex class due to the constant standing challenges plaintiffs face in data breach class actions. Data breach cases face substantial hurdles in surviving even the pleading stage. *See, e.g., Hammond v. The Bank of N.Y. Mellon Corp*., No. 08 Civ. 6060 (RMB) (RLE), 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting cases). Cases impacting broad groups and implicating data more sensitive than that at issue here have been dismissed. *In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig*., 266 F. Supp. 3d 1, 19 (D.D.C. 2017) ("The Court is not persuaded that the factual allegations in the complaints are sufficient to establish . . . standing."), *reversed in part*, 928 F.3d 42 (D.C. Cir. June 21, 2019) (holding plaintiff had standing).

To the extent the law has accepted this relatively new type of litigation, the path to a class-wide judgment remains unforged, particularly in the area of damages. Data breach cases are among the riskiest of all class actions, making settlement more prudent when there is a reasonable resolution. The damages methodologies, while theoretically sound, are untested in a disputed class certification setting and unproven before a jury. As in any data breach case, establishing

causation on a class-wide basis is rife with uncertainty. Each risk, by itself, could impede the successful prosecution of these claims at trial and in an appeal—which could result in zero recovery to the class. "Regardless of the risk, litigation is always expensive, and both sides would bear those costs if the litigation continued." *Paz v. AG Adriano Goldschmeid, Inc*., No. 14CV1372 DMS (DHB), 2016 WL 4427439, at *5 (S.D. Cal. Feb. 29, 2016). Thus, this factor favors approval.

### 3. The Risk of Maintaining Class Action Status Through Trial

Given that this case is in the pleadings stage, the Parties have not briefed, and the Court has not yet certified any class treatment and Defendant would oppose certification if the case proceeds. If the Parties were to litigate their claims through trial, Plaintiff would encounter risks in obtaining and maintaining certification of the class. Plaintiff "necessarily risk[s] losing class action status." *Grimm v. American Eagle Airlines, Inc.*, No. LA CV 11-00406 JAK(MANx), 2014 WL 1274376, at *10 (C.D. Cal. Sept. 24, 2014). Class certification in data breach cases is not common—first occurring in *Smith v. Triad of Ala.*, LLC, No. 1:14-CV-324-WKW, 2017 WL 1044692, at *13 (M.D. Ala. Mar. 17, 2017), and most recently in *In re Brinker Data Incident Litig.*, No. 3:18-CV-686-TJC-MCR, 2021 WL 1405508, at *1 (M.D. Fla. Apr. 14, 2021). While certification of additional data breach classes may well follow, the dearth of direct precedent adds to the risks.

### 4. The Amount Offered in Settlement

The value of the Settlement favors approval. Significant relief is available to the class: a non-reversionary common fund of $2,000,000. Class members may claim up to $25,000 in reimbursements and will receive a *pro rata* share of the remainder of the Net Settlement Fund. The settlement is a strong result and is in line with other settlements in similar cases involving data breaches, reflecting that the Settlement is fair. *See Calderon v. Wolf Firm*, No. SACV 16-

1266-JLS(KESx), 2018 WL 6843723, at *7-8 (C.D. Cal. Mar. 13, 2018). In light of the difficulties and expenses class members would face pursuing individual claims, the risks of litigation and the high burden in proving liability, and the likelihood that class members are unaware of their claims, this Settlement is an appropriate discount compared to Defendant's exposure and represents a fair settlement of the claims. *See id*. The Settlement value per class member here ($21.80 per Class member ($2,000,000 / 91,706 Class members) is on par with or exceeds that in other data breach settlements. *See, e.g., In re The Home Depot, Inc., Customer Data Sec. Breach Litig*., No. 1:14-MD-02583-TWT, ECF No. 181-2 (March 7, 2016) (Settlement Agreement); *id*., 2017 U.S. Dist. LEXIS 221736, at *24 (N.D. Ga. Sept. 22, 2017) (order approving settlement) ($0.51 per Class member); *In re Target Corp. Customer Data Sec. Breach Litig*., No. MDL 14-2522-PAM, ECF No. 358-1 (D. Minn. March 18, 2015) (Settlement Agreement); *id*., 2017 WL 2178306, at *9 (D. Minn. May 17, 2017) (order certifying settlement class on remand from the 8th Circuit) ($0.17 per Class member). These comparisons are not intended to disparage the settlements achieved in those cases, but to show the good resolution here.

### 5.  The Extent of Discovery Completed and the Stage of Proceedings

Before entering into settlement discussions, counsel should have "sufficient information to make an informed decision." *Linney*, 151 F.3d at 1239. Here, Plaintiff gathered all available information regarding the Data Security Incident—including publicly-available documents concerning the Incident. Decl., ¶ 56. The parties also informally exchanged non-public information concerning the Incident and the size of the class in preparation for mediation; and have further engaged in discovery, including paper discovery and the deposition of Plaintiff and two Fed. R. Civ. Pro. 30(b)(6) depositions of Defendant. This information, together with Class Counsel's experience in data breach litigation, enabled Class Counsel to represent the class's

interests without expending hundreds of hours and substantial financial resources learning the subject area. *Id.*, ¶ 52. "[T]he efficiency with which the Parties were able to reach an agreement need not prevent this Court from granting . . . approval." *Hillman v. Lexicon Consulting, Inc.*, No. EDCV 16-01186-VAP(SPx), 2017 WL 10433869, at *8 (C.D. Cal. April 27, 2017). Thus, Plaintiff is well informed about the strengths and weaknesses of this case.

### 6. The Experience and Views of Counsel

Class Counsel initiated this lawsuit when Paysafe announced the Data Security Incident, which impacted 91,706 individuals. Class Counsel have substantial experience litigating complex class cases of various types, including data breach cases such as this one. *See* Decl., ¶ 50, Exs. A and B. Having worked on behalf of the class since the Incident was announced and having evaluated the dispute and dedicated significant time and money to this litigation, Class Counsel fully endorse the Settlement. *Id.*, ¶ 53. A great weight is accorded to the recommendation of counsel. *See, e.g., Norton v. Maximus, Inc.*, 1:14-0030 WBS, 2017 WL 1424636, at *6 (D. Idaho, April 17, 2017); *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004). Thus, this factor supports approval.

Following this District's Procedural Guidance for Class Action Settlements, Class Counsel compare this settlement to a recent similar settlement where they participated as counsel for plaintiffs. In *Schellhorn v Timios, Inc.*, No.: 2:21-cv-08661-VAP-(JCx) (C.D. Cal.), over 75,000 individuals had their PII stolen in a 2021 data breach. That case was resolved on a claims-made basis. The settlement benefits made available to class members in *Timios* are less than those afforded here in each of the following categories: (1) out-of-pocket expenses reimbursement up to $500; (2) reimbursement of lost time up to 3 hours at $20 per hour; (3) extraordinary expenses reimbursement up to $3,000; and (4) enhancements to defendant's cybersecurity. While there was a small payment for a California subclass there, there was nothing like the Residual Cash

Payment here, benefitting the entire class. That court granted preliminary approval in *Timios* on May 10, 2022, and final approval on November 10, 2022. The Settlement forged for the class here provides benefits far greater than those that were approved in *Timios*. Plaintiff respectfully requests that the Court grant preliminary approval of class action settlement in this case.

### 7.   Governmental Participants.

There is no governmental participant in this matter. This factor is neutral.

### 8.   The Reaction of the Class Members to the Proposed Settlement

This factor is not yet implicated; however, Plaintiff supports the Settlement. Decl., ¶ 48.

### 9.   Lack of Collusion Among the Parties

The Parties negotiated a substantial Settlement, and, at the Court's suggestion, renegotiated the Settlement to address various issues. The Parties did not negotiate attorneys' fees until agreement on the substance of the class resolution had been reached, and both the class portion of the resolution and the attorneys' fees were negotiated at arm's-length. Counsel are well-versed in data breach actions and fully understand the values recovered in similar cases. Additionally, the parties participated in two contentious in-person mediation sessions with an experienced private mediator, Zela Claiborne, Esq. of JAMS, and were only able to reach a settlement in principle during the second session after having conducted substantial discovery. *See G. F. v. Contra Costa Cty.*, No. 13-cv-03667-MEJ, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015) ("[T]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.") (internal quotation marks and citation omitted); *see also Cohorst v. BRE Props.*, No. 3:10-CV-2666-JM-BGS, 2011 WL 7061923, at *12 (S.D. Cal. Nov. 9, 2011) ("We put a good deal of stock in the product of arms-length, non-collusive, negotiated resolution."). The Court can be assured that the negotiations were not collusive.

### 10.   The Settlement Treats Settlement Class Members Equitably

Finally, Rule 23(e)(2)(D) requires the Court to confirm that the settlement treats the class

equitably. Courts should consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), advisory comm.'s note (2018). In determining whether this factor weighs in favor of approval, a Court must determine whether the settlement "improperly grant[s] preferential treatment to class representatives or segments of the class." *Hudson v. Libre Technology Inc.,* No. 3:18-cv-1371-GPC-KSC, 2020 WL 2467060, *9 (S.D. Cal. May 13, 2020) (*quoting In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)). This Settlement "does not improperly discriminate among the class, as the whole class is entitled to the same relief. Each class member has the opportunity to make a claim for up to $25,000 in reimbursements, and every class member is entitled to a Residual Cash Payment. Furthermore, as will be explained in detail in Plaintiff's Fees Motion*,* an award of $15,000 for one class representative is in line with awards in similar cases, is presumptively reasonable, and does not call into question Plaintiff's adequacy or the validity of the Settlement.[6] This factor also weighs in favor of approval.

### D.    The Court Should Approve the Proposed Notice Program

Before final approval, the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." FRCP 23(e)(1)(B). For Rule 23(b)(3) classes, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed.

---

[6] *See e.g. Roe v. Frito-Lay, Inc.,* No. 14-cv-00751-HSG, 2017 WL 1315626, at *8 (N.D. Cal. Apr. 7, 2017) (noting a $5,000 Service Award is presumptively reasonable in the Ninth Circuit); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947-48 (9th Cir. 2015) (service awards of $5,000); *Presley v. Carter Hawley Hale Profit Sharing Plan*, No. C9704316SC, 2000 WL 16437, at *2 (N.D. Cal. 2000) ($25,000 service awards); *In re McKesson HBOC, Inc. ERISA Litig.*, 391 F. Supp. 2d 844, 851 (N.D. Cal. 2005) ($5,000 service awards); *In re Sorbates Direct Purchaser Antitrust Litig.*, No. 99-1358MMC, 2002 WL 31655191, at *3 (N.D. Cal. Nov. 15, 2002) ($7,500

R. Civ. P. 23(c)(2)(B). The best notice practicable means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Notice to class members must be reasonably calculated to apprise Class members of the action and afford them a chance to object. Fed. R. Civ. P. 23(c)(2); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Notices must also present information about a settlement simply, neutrally, and understandably. *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 567 (9th Cir. 2019). Notice is adequate if it describes the terms of the settlement sufficiently to alert those with adverse viewpoints to investigate, and to come forward and be heard. *Id.*

After a competitive bid process, the parties have agreed to a robust notice program to be administered by Kroll, which will use all reasonable efforts to provide direct, individual notice to each class member via mail. Decl., ¶ 29; Finegan Decl., ¶¶ 14-18. The Notice and Claim Forms negotiated by the Parties are clear and concise and inform the class of their rights and options under the Settlement, including detailed instructions on how to make a claim, object to the Settlement, or opt-out of the Settlement. Decl., ¶ 34; A.S.A., Exs. 1 & 2. Kroll will also establish a dedicated Settlement Website and will update the website throughout the Claims Period, with the forms of Summary Notice, Long Notice, and Claim Form approved by the Court, as well as the Settlement Agreement. Finegan Decl., ¶ 20; A.S.A., Exs. 1, 2. Kroll will also establish a toll-free line staffed with live operators available to provide Class members with additional information about the settlement. *Id*., ¶ 21.

Plaintiff has negotiated a notice program that is reasonably calculated to apprise class members of the pendency of the action and afford them an opportunity to present their objections. Class members provided Defendant with their contact information, and this is not suspected of

service award); *Williams v. Costco Wholesale Corp.*, 02cv2003 IEG (AJB), 2010 WL 2721452, at *7 (S.D. Cal. July 7, 2010) ($5,000 award in an case settling for $440,000).

being a particularly transient class. Thus, direct notice via mail, with a potential media campaign if necessary, is the best practicable notice. *Compare Roes 1-2 v. SFBSC Management LLC,* 944 F.3d 1035, 1046 (9th Cir. 2019); *see e.g. In re Online DVD-Rental Antitrust Litigation*, 779 F. 3d 934, 946 (9th Cir. 2015). Since the notice plan ensures that the class's due process rights are protected, the Court should approve it. *See Hartranft v. TVI, Inc.*, No. SACV 15-01081-CJC-DFM, 2019 WL 1746137, at *3 (C.D. Cal. Apr. 18, 2019)[7]; *see also Spencer v. #1 A LifeSafer of Ariz., LLC*, No. CV-18-02225-PHX-BSB, 2019 WL 1034451, at *3 (D. Ariz. Mar. 4, 2019) (Bade, J.) (preliminarily approving class action settlement and finding "that the proposed notice program is clearly designed to advise the Class Members of their rights").

## E.  Appointment of the Settlement Administrator

In connection with implementing the notice program and administration of the settlement, the Parties request that the Court appoint Kroll to serve as Claims Administrator. Kroll has a proven track record of supporting thousands of class action settlements, with over 50 years of legal administration experience. Finegan Decl., ¶¶ 7-12. Notice and administration is capped at $399,000 and will be paid from the Settlement Fund. Decl., ¶ 31.

## F.  Appointment of Settlement Class Counsel

"[A] court that certifies a class must appoint class counsel [who must] fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). Courts often consider the following: the proposed class counsel's (1) work in identifying or investigating potential claims, (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case, (3) knowledge of the applicable law, and (4) resources committed to

---

[7] "The Court finds that the Class Notice and the manner of its dissemination described in Paragraph 7 above and Section VIII of the Agreement constitutes the best practicable notice under the circumstances and is reasonably calculated, under all the circumstances, to apprise Settlement Class Members of the pendency of this action, the terms of the Agreement, and their right to object to or exclude themselves from the Settlement Class.")

representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i–iv). Proposed Class Counsel has extensive experience prosecuting class actions and other complex cases, and specifically data breach cases. *See* Decl. ¶ 50, Exs. A and B. Accordingly, Plaintiff respectfully requests that the Court appoint M. Anderson Berry and Gregory Haroutunian of Clayeo C. Arnold, A Professional Law Corporation, and John Yanchunis and Ryan Maxey of Morgan & Morgan as Class Counsel.

## VI.    CONCLUSION

Plaintiff has negotiated a fair, adequate, and reasonable Settlement that will provide class members with significant monetary benefits and equitable relief. The Settlement is likely to be approved, and as such, Notice should be ordered to issue to the class. Thus, Plaintiff respectfully requests that this Court grant Plaintiff's Unopposed Renewed Motion for Preliminary Approval of Class Action Settlement.

Date: May 2, 2023                        Respectfully Submitted,

                                         */s/M. Anderson Berry*
                                         M. Anderson Berry (SBN 262879)
                                         Gregory Haroutunian (SBN 330263)
                                         **CLAYEO C. ARNOLD**
                                         **A PROFESSIONAL CORPORATION**
                                         865 Howe Avenue
                                         Sacramento, CA 95825
                                         Tel: (916) 239-4778
                                         aberry@justice4you.com
                                         gharoutunian@justice4you.com

                                         John A. Yanchunis (*Pro Hac Vice*)
                                         Ryan D. Maxey (*Pro Hac Vice*)
                                         **MORGAN & MORGAN**
                                         **COMPLEX LITIGATION GROUP**
                                         201 N. Franklin Street, 7th Floor
                                         Tampa, FL 33602
                                         Telephone: (813) 559-4908
                                         Facsimile: (813) 223-5402
                                         jyanchunis@ForThePeople.com
                                         rmaxey@ForThePeople.com

                                         *Attorneys for Plaintiff*