M. Anderson Berry (SBN 262879)
Gregory Haroutunian (SBN 330263)
**CLAYEO C. ARNOLD**
**A PROFESSIONAL CORPORATION**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 777-7777
Facsimile: (916) 924-1829
aberry@justice4you.com
gharoutunian@justice4you.com

John A. Yanchunis (Pro Hac Vice)
**MORGAN & MORGAN COMPLEX**
**LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 559-4908
Facsimile: (813) 223-5402
jyanchunis@ForThePeople.com

Ryan D. Maxey (Pro Hac Vice)
**MAXEY LAW FIRM, P.A.**
107 N. 11th St. #402
Tampa, FL 33602
Telephone: 813-448-1125
ryan@maxeyfirm.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| KAMAL BITMOUNI, on behalf of himself and all others similarly situated, | ) Case Number: 3:21-cv-00641-JCS |
| | ) |
| Plaintiff, | ) **PLAINTIFF'S NOTICE OF MOTION** |
| vs. | ) **AND MOTION FOR FINAL APPROVAL** |
| | ) **OF CLASS ACTION SETTLEMENT;** |
| | ) **AND MEMORANDUM OF POINTS AND** |
| PAYSAFE PAYMENT PROCESSING SOLUTIONS LLC, a Delaware limited liability company, | ) **AUTHORITIES IN SUPPORT THEREOF** |
| | ) |
| | ) Date:        February 2, 2024 |
| Defendant. | ) Time:        9:30 a.m. |
| | ) Courtroom:   D, 15th Floor |
| | ) Judge:       Hon. Joseph C. Spero |
| | ) |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on February 2, 2024 at 9:30 am, or as soon thereafter as counsel may be heard, before the Honorable Joseph C. Spero, at San Francisco Courthouse, Courtroom F – 15th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiff will and hereby does move this Court, pursuant to Federal Rule of Civil Procedure 23, for an order granting Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement.

This motion is based upon this Motion, the Memorandum of Points and Authorities, the accompanying joint declaration of M. Anderson Berry, John A. Yanchunis, and Ryan D. Maxey and the exhibits attached thereto, the Plaintiff's declaration, the pleadings on file in this Action, and other such matters and argument as the Court may consider at the hearing on this motion.

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether the Court should finally approve the class action settlement.

## TABLE OF CONTENTS

**Page**

I.   INTRODUCTION……………………………………………………………….   1

II.  STATEMENT OF FACTS…………………………………………………….   2

    A.   Terms of the Settlement…………………………………………………   2

    B.   Notice Plan and Claims…………………………………………………..   4

III. PROCEDURAL HISTORY…………………………………………………..   5

IV.  ARGUMENT…………………………………………………………………   6

    A.   The Settlement Meets the Standards for Final Approval Under Rule 23(e)………   6

    B.   Settlement Satisfies Rule 23(a)…………………………………………   8

        i.   The Proposed Class is Sufficiently Numerous………………....................   8

        ii.   The Settlement Class Satisfies the Commonality Requirement……………   8

        iii.  Plaintiff's Claims and Defenses are Typical of Those of the Settlement Class………………………………………………………………   9

        iv.   Plaintiff Will Adequately Protect the Interests of the Class………………   10

    C.   Rule 23(b)(3)'s Requirements Are Met for Purposes of Settlement……………...   10

    D.   The Settlement Should Be Finally Approved Pursuant to Rule 23(e)……………   13

        i.   The Strength of Plaintiff's Case……………………………………..   14

        ii.   The Risk, Expense, Complexity, and Likely Duration of Further Litigation…………………………………………………………   15

        iii.  The Risk of Maintaining Class Action Status Through Trial………........   16

        iv.   The Amount Offered in Settlement………………………………..   17

        v.   The Extent of Discovery Completed and the Stage of Proceedings……   18

        vi.   The Experience and Views of Counsel………………………….......   19

vii.  Governmental Participants…………………………………………….  20

viii.  The Reaction of the Class Members to the Proposed Settlement……..  20

ix.  Lack of Collusion Among the Parties…………………………………  20

x.  The Settlement Treats Settlement Class Members Equitably…………  21

V.  CONCLUSION……………………………………………………………......  23

-iv-

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT THEREOF
CASE NO. 3:21-CV-00641

1

2

<u>**TABLE OF AUTHORITIES**</u>

**Cases**                                                                                                    **Page**

3    *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)…………………………..    *passim*

4    *Andrews v. Plains All American Pipeline L.P.*, CV-15-4113-PSG, 2022 WL 4453864,
5    (C.D. Cal. Sept. 20, 2022)…………………………………………………………    22

6    *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013)…………………………    11

7    *Calderon v. Wolf Firm*, No. SACV 16-1622-JLS(KESx), 2018 WL 6843723,
8    (C.D. Cal. Mar. 13, 2018)…………………………………………………………..    17

9    *Carter v. Vivendi Ticketing US LLC*, No. SACV2201981CJCDFMX, 2023 WL 8153712
     (C.D. Cal. Oct. 30, 2023)…………………………………………………………..    20

10   *Celano v. Marriott Int'l Inc.*, 242 F.R.D. 544, 548-49 (N.D. Cal. 2007)……………………    8

11   *Chester v. TJX Cos.*, No. 5:15-cv-01437-ODW(DTB), 2017 WL 6205788,
12   (C.D. Cal. Dec. 5, 2017)…………………………………………………………    15

13   *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)……………………..    6

14   *Cohorst v. BRE Props.*, No. 3:10-CV-2666-JM-BGS, 2011 WL 7061923
15   (S.D. Cal. Nov. 9, 2011)…………………………………………………………    21

16   *Dennis v. Kellogg Co.*, No. 09-cv-1786-L(WMc), 2013 WL 6055326,
17   (S.D. Cal. Nov. 14, 2013)…………………………………………………………..    15

18   *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979–80 (9th Cir. 2011)……………………..  8, 10

19   *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989)……………………………..    14

20   *G. F. v. Contra Costa Cty.*, No. 13-cv-03667-MEJ, 2015 LEXIS 100512,
21   (N.D. Cal. Jul. 30, 2015)…………………………………………………………...    21

22   *Gomez v. USF Reddaway, Inc.*, LA CV16-05572 JAK (FFMx), 2020 WL 10964603,
     (C.D. Cal. Sept. 21, 2020)…………………………………………………………    22

23

24   *Grimm v. American Eagle Airlines, Inc.*, No. LA CV 11-00406 JAK(MANx),
     2014 WL 1274376 (C.D. Cal. Sept. 24, 2014)…………………………………………..    16

25

26

-v-

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT THEREOF
CASE NO. 3:21-CV-00641

27

28

1

2

## TABLE OF AUTHORITIES

3

**Cases**                                                                    **Page**

4

*Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060 (RMB) (RLE),

5

   2010 LEXIS 71996 (S.D.N.Y. June 25, 2010)…………………………………………    15

6

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)……………………….. 10, 11, 13

7

*Hillman v. Lexicon Consulting, Inc.*, No. EDCV 16-01186-VAP(SPx), 2017 WL 10433869,

8

   (C.D. Cal. April 27, 2017)…………………………………………………………..    19

9

*Holly v. Alta Newport Hospital,* Case No.2:19-cv-07496 ODW (MRWx),

   2020 WL 1853308, (April 10, 2020)………………………………………………..    8

10

*Howell v. Advantage RN, LLC,* 17-CV-883 JLS (BLM), 2020 WL 5847565,

11

   (S.D. Cal. Oct. 1, 2020)…………………………………………………………..    22

12

*Hudson v. Libre Technology Inc.,* No. 3:18-cv-1371-GPC-KSC, 2020 WL 2467060,

13

   (S.D. Cal. May 13, 2020)…………………………………………………………    21

14

*In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 316-17 (N.D. Cal. 2018)…………...    12

15

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)……………..    13

16

*In re Brinker Data Incident Litig.*, No. 3:18-CV-686-TJC-MCR, 2021 WL 1405508,

17

   (M.D. Fla. Apr. 14, 2021)…………………………………………………………..    16

18

*In re Google LLC St. View Elec. Commc'ns Litig.*, No. 10-MD-02184-CRB,

19

   2020 WL 1288377 (N.D. Cal. Mar. 18, 2020)………………………………………..  9, 11

*In re Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-MD-02583-TWT,

20

   2016 WL 6902351 (N.D. Ga. Aug. 23, 2016)………………………………………...    9

21

*In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*,

22

   No. 1:14-MD-02583-TWT, 2017 U.S. Dist. LEXIS 221736 (N.D. Ga. Sept. 22, 2017)… 17, 18

23

*In re Hyundai & Kia Fuel Economy Litig.*, 926 F.3d 539, 559 (9th Cir. 2019)……………...  9, 11

24

*In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573 (N.D. Cal. 2015)………………………    12

25

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007)……………..    22

26

-vi-

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT THEREOF
CASE NO. 3:21-CV-00641

27

28

*In re Target Corp. Customer Data Sec. Breach Litig.*, No. MDL 14-2522-PAM,
   (D. Minn. March 18, 2015); 2017 LEXIS 75455
   (D. Minn. May 17, 2017)……………………………………………………………… 18

*In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.,*
   266 F. Supp. 3d 1, 19 (D.D.C. 2017)........................................................................ 15

*In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.,* 928 F.3d 42 (D.C. Cir. 2019)…… 16

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 5:16-md-02752-LHK
   (N.D. Cal. July 20, 2019)……………………………………………………………… 12

*Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017)……………………………… 10, 12

*Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 526 (C.D. Cal. 2012)…………………… 11

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998)…………………… 15, 18

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
   244 F.3d 1152, 1163 (9th Cir. 2001)………………………………………………… 13

*Longest v. Green Tree Servicing LLC*, 308 F.R.D. 310 (C.D. Cal. 2015)…………………… 10

*Malta v. Federal Home Mortg. Corp.,* 10-cv-1290 BEN (NLS), 2013 WL 444619,
   (S.D. Cal. Feb. 5, 2013) ………………………………………………..………… 12

*Meyer v. Portfolio Recovery Associates*, 707 F.3d 1036 (9th Cir. 2012)……………………… 9

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc*., 221 F.R.D. 523, 528 (C.D. Cal. 2004)……… 19

*Norton v. Maximus, Inc.*, 1:14-0030 WBS, 2017 WL 1424636 (D. Idaho, April 17, 2017)…. 19

*Orantes-Hernandez v. Smith*, 541 F. Supp. 351, 370 (C.D. Cal. 1982)……………………… 8

*Parsons v. Kimpton Hotel & Rest. Group, LLC*, No. 3:16-cv-05387-VC
   (N.D. Cal. Jan. 9, 2019)……………………………………………………………... 12

*Paz v. AG Adriano Goldschmeid, Inc*., No. 14CV1372DMS(DHB), 2016 WL 4427439
   (S.D. Cal. Feb. 29, 2016)……………………………………………………………… 16

*Presley v. Carter Hawley Hale Profit Sharing Plan*, No. C9704316SC, 2000 WL 16437,
   (N.D. Cal. 2000)……………………………………………………………………….. 22

-vii-

*Rannis v. Recchia,* 380 Fed. App'x 646, 651 (9th Cir. 2010)……………………………… 8

*Richards v. Chime Fin., Inc.*, No. 19-CV-06864-HSG, 2021 WL 2075689
    (N.D. Cal. May 24, 2021)……………………………………………………….. 20

*Ross v. U.S. Bank Nat. Ass'n*, 2010 WL 3833922, (N.D. Cal. Sept. 29, 2010)…………… 22

*Smith v. Triad of Ala.*, LLC, No. 1:14-CV-324-WKW, 2017 U.S. Dist.,
    LEXIS 38574 (M.D. Ala. Mar. 17, 2017)……………………………………………… 16

*Thomsen v. Morley Companies, Inc.,* No. 1:22-cv-10271 (E.D. Mich. Nov. 4, 2022)………. 19

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016)…………………………….. 11

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)…………………………………… 9

*Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010)…………… 13

**<u>Statutes</u>**                                                                                               **<u>Page</u>**

Fed. R. Civ. P. 23(a)………………………………………………………………….. 8

Fed. R. Civ. P. 23(a)(1)……………………………………………………………….. 8

Fed. R. Civ. P. 23(a)(3)……………………………………………………………….. 9

Fed. R. Civ. P. 23(b)(1), (2) or (3)……………………………………………………. 10

Fed. R. Civ. P. 23(b)(3)……………………………………………………………….. 12

Fed. R. Civ. P. 23(e)……………………………………………………………… 14, 21

Fed. R. Civ. P. 23(e)(2)(D)……………………………………………………………. 21

Fed. R. Civ. Pro. 30(b)(6)…………………………………………………………….. 18

**<u>Other</u>**                                                                                                  **<u>Page</u>**

4 Newberg on Class Actions § 11.41 (4th ed. 2002)………………………………………. 7

Manual for Complex Litigation (Fourth), § 21.632………………………………………….. 8

Wright, et al., Fed. Prac. and Proc. § 1777, p. 518-19 (2d ed. 1986)……………………… 11

1
2

## PLAINTIFFS' MEMORANDUM IN SUPPORT

3

## I.   INTRODUCTION

4

5

6

7

8

9

Plaintiff, by and through the undersigned Settlement Class Counsel, on behalf of himself and the Settlement Class, respectfully submits this Memorandum of Law in support of his motion pursuant to Federal Rule of Civil Procedure ("Rule") 23(e) requesting final approval of this proposed class action settlement ("Settlement") on the terms set forth in the Second Amended Settlement Agreement dated July 31, 2023 (ECF No. 94-1) and for certification of the Settlement Class.

10

11

12

13

14

15

16

17

18

19

20

If approved, the Settlement will successfully resolve the claims of 91,706 individuals nationwide who were notified in December 2020 of a data security incident that occurred on or around May 2018 (the "Data Security Incident"). The Settlement brings meaningful resolution and significant benefits to the Settlement Class without requiring further delay, risk, and expense. As discussed below, the Settlement calls for Defendant to establish a non-reversionary Qualified Settlement Fund of $2.0 million ("Settlement Amount") for the benefit of eligible Class Members. Defendant also has committed to maintaining substantial business practice changes in relation to its data security. Further, all costs of notice and administration, of which $84,710.80 has been billed as of December 13, 2023, will be paid from the Settlement Fund. Exhibit A, Declaration of Scott M. Fenwick of Kroll Settlement Administration LLC in Connection with Final Approval of Settlement ("Fenwick Decl."), ¶ 19.

21

22

23

24

25

26

On August 1, 2023, the Court preliminarily approved the Settlement, finding that (i) "the proposed Settlement set forth in the Amended Settlement Agreement is fair, reasonable and adequate such that it is hereby preliminarily approved" and (ii) "this Settlement complies with the Northern District of California's *Procedural Guidance for Class Action Settlements*." (ECF No. 95) ("Preliminary Approval Order") ¶¶ 3-4. The Court-ordered Notice Plan has since been

27
28

executed; nothing has changed to alter the Court's initial assessment that the Settlement is fair, reasonable, and adequate. The Settlement Class's reaction to the Settlement has been overwhelmingly positive. Of the 91,706 individual potential Class Members who were sent Notice, only one (1) has timely requested exclusion and none have submitted timely objections. This response weighs in favor of final approval.

For the reasons detailed below, Plaintiff and Settlement Class Counsel respectfully submit that the Settlement meets the standards for final approval under Rule 23, and is a fair, reasonable, and adequate result for the Settlement Class. Plaintiff requests the Court to finally approve the Settlement, grant Plaintiff's Motion for Approval of Attorneys' Fees, Expenses, and Service Award to Class Representative Plaintiff, and enter a final judgment dismissing this case.

## II.   STATEMENT OF FACTS

Plaintiff respectfully refers the Court to their Memorandum of Law in Support of Plaintiffs' Motion for Preliminary Approval (ECF No. 89) and his Memorandum of Law in Support of Plaintiffs' Motion for Approval of Attorneys' Fees, Expenses, and Service Award to Class Representative Plaintiff (ECF No. 96) for a thorough recitation of the substantive and procedural background of this litigation. For the purposes of final approval, Plaintiff highlights the following:

### A.   Terms of the Settlement

If the Settlement receives final approval, the $2.0 million non-reversionary Qualified Settlement Fund established by Defendant will be used to: 1) provide up to $25,000.00 per person reimbursement of documented out-of-pocket losses fairly traceable to the Data Security Incident ("Out-of-Pocket Losses"), which may include, without limitation, unreimbursed costs associated with investigating or remediating fraud or identity theft, including professional fees such as attorneys' fees and accountants' fees, fees for credit repair services, and miscellaneous expenses

such as notary, fax, postage, copying, mileage, and long-distance telephone charges, and costs for obtaining credit monitoring or other mitigative services, that were incurred on or between May 1, 2018 and the Notice Deadline, 2) provide up to ten (10) hours of lost time ("Attested Time") spent remedying issues related to the Data Security Incident, calculated at the rate of Twenty-Five Dollars and Zero Cents ($25.00) per hour.  If the aggregate value of Approved Claims for Out-Of-Pocket Losses and Attested Time exceeds $400,000, the amount of each such claim shall be reduced *pro rata* so that the aggregate value of all such claims equals $400,000.

All Participating Settlement Class Members are entitled to receive a residual cash payment in an amount equal to a *pro rata* share of any funds remaining in the Settlement Fund after payment of all Approved Claims for Out-of-Pocket Losses and Attested Time, Notice and Administrative Expenses, Taxes and Tax-Related Expenses, Service Awards Payment approved by the Court, and Fee Award and Costs approved by the Court.

In addition to the monetary relief provided, Defendant has agreed to implement and/or maintain certain reasonable steps to enhance the security of its systems and environments, including certain remedial measures and enhanced data security measures, including cybersecurity training and awareness programs, data security policies, monitoring and response capabilities, and restrictions on accessing PII. In addition, the legacy website involved in the Data Security Incident has been disabled.

Based upon their extensive experience in complex litigation and data privacy, Class Counsel believes that the $2.0 million Settlement Amount will be ample to pay the claims of Settlement Class Members. However, if the aggregate value of Approved Claims for Out-Of-Pocket Losses and Attested Time exceeds $400,000, the amount of each such claim shall be reduced *pro rata* so that the aggregate value of all such claims equals $400,000. All Participating Settlement Class Members are entitled to receive a cash payment in an amount equal to a *pro rata* share of any funds remaining in the Settlement Fund after payment of all Approved Claims for

Out-of-Pocket Losses and Attested Time, Notice and Administrative Expenses, Taxes and Tax-Related Expenses, Service Awards Payment approved by the Court, and Fee Award and Costs approved by the Court. No monies will revert to Defendant.

**B.    Notice Plan and Claims**

Pursuant to this Court's August 1, 2023, Preliminary Approval Order, Defendant provided Kroll Settlement Administration ("Kroll") with a data file containing the names and physical mailing addresses of 91,706 Settlement Class Members. Fenwick Decl., ¶ 8. After performing a duplicate check on the records Kroll determined there were 91,132 unique records, which it then ran through the USPS National Change of Address database to ensure that Notice went to the best available addresses for all Settlement Class Members. *Id.* On August 22, 2023, Kroll established an email address to receive and reply, within one business day, to any email inquiries from Settlement Class Members. *Id.,* ¶ 9. On August 29, 2023, Kroll caused 91,132 Notices to be mailed via first-class mail to all Settlement Class Members on the Settlement List. *Id.*, ¶ 10. Of these, as of December 13, 2023, 784 Notices were returned by the USPS as undeliverable but with a forwarding address and of those 777 Notices were automatically re-mailed to the updated addresses provided by the USPS. *Id.*, ¶ 11. The remaining seven Notices were re-mailed by Kroll to the updated addresses provided by the USPS. *Id.* As of December 13, 2023, 6,696 Notices were returned by the USPS as undeliverable as addressed but without a forwarding address. *Id.,* ¶ 12. Kroll was able to obtain 5,216 updated addresses to which it re-mailed the Notices and of which 98 have been returned. *Id.* Based on the forgoing the Notices likely reached 89,554 of the 91,132 persons to whom Notice was mailed, equating to a direct reach rate of 98.3%. *Id.*, ¶ 13.

Additionally, Kroll established a toll-free telephone number for Settlement Class Members to call and obtain additional information regarding the Settlement through an Interactive Voice Response system as well as through being connected to a live operator. As of December 27, 2023, this system has received 1,445 calls and 504 callers have been connected to live operators. *Id*, ¶ 5.

---

-4-

Kroll also established a dedicated Settlement Website entitled www.paysafesettlement.com that went "live" on August 21, 2023 containing information about the Settlement, important dates and deadlines, contact information for the Settlement Administrator, and relevant case documents including the Notice, the Second Amended Settlement Agreement, Plaintiff's Unopposed Renewed Motion for Preliminary Approval of Class Action Settlement, the Preliminary Approval Order, and the Second Amended Class Action Complaint. *Id.*, ¶ 6. The settlement website also allowed Settlement Class Members to file a Claim Form online. *Id.*

As a result of all of the foregoing notice efforts, Kroll has received 179 Claim Forms through the mail and 914 through the Settlement Website, for a total of 1,093 Claim Forms, which Kroll is still in the process of reviewing and validating. *Id.*, ¶ 14. As of December 27, 2023, Kroll has determined that 946 of these Claims are for reimbursement for Attested Time online, 17 are for Out-of-Pocket Losses only, and 100 are for both Attested Time and Out-of-Pocket Losses. *Id.*, ¶ 15. Thirty Settlement Class Members did not claim either Attested Time or Out-of-Pocket Losses. *Id.*

Plaintiff anticipates filing a supplemental declaration from Kroll before the Final Approval Hearing reporting the results of this validation process to the extent they are available at that time.

## III. <u>PROCEDURAL HISTORY</u>

Plaintiff refers to and hereby incorporates the procedural history recited in Plaintiff's Original Motion for Preliminary Approval of Class Action Settlement (ECF No. 89) and limits his description of the history of this matter to that which is relevant to the instant motion. On January 27, 2021, Plaintiff filed the instant lawsuit. For several months, the Parties informally, and sometimes contentiously, discussed settlement. While the parties agreed to mediate in February 2022, the mediation was rescheduled due to COVID-19, until May 25, 2022. The parties attended an all-day in-person mediation with highly experienced mediator Zela G. Claiborne, Esq. of

-5-

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT THEREOF
CASE NO. 3:21-CV-00641

JAMS in San Francisco. While no settlement was reached, the parties agreed to exchange informal and formal discovery, including depositions of Plaintiff Kamal Bitmouni and two separate depositions of a corporate representative of Defendant, relating to the nature of the Data Breach and Paysafe's response to it, as well as Plaintiff's claims. On August 30, 2022, the Parties attended a second in-person mediation session with Ms. Claiborne, where the Parties settled in principle. Over the next several months the Parties finalized and executed the original Settlement Agreement on December 27, 2022. (ECF No. 89-1 Ex. 1). Following the March 3, 2023, conference with the Court, the Parties negotiated the amended Settlement. Joint Decl., ¶ 13. Following the June 23, 2023, conference with the Court, the Parties negotiated further amendments to the Settlement, which were then Preliminarily Approved by the Court on August 1, 2023. *Id.,* ¶ 14.

**IV.**  **ARGUMENT**

    **A.**  **The Settlement Meets the Standards for Final Approval Under Rule 23(e).**

        Federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"); 4 Newberg on Class Actions § 11.41 (4th ed. 2002) (citing cases). More traditional means of handling claims like those at issue here—individual litigation—would unduly tax the court system, require massive expenditures of resources, and, given the relatively small value of the claims of the individual class members, as compared to the cost of litigation, be impracticable. Thus, a settlement—and specifically the Settlement Agreement proposed here—provides the best

vehicle for Settlement Class Members to receive relief in a prompt and efficient manner while avoiding the risks of continued litigation.

Because a court evaluating certification of a class action that settled is considering certification only in the context of settlement, the court's evaluation is somewhat different than in a case that has not yet settled. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). In some ways, the court's scrutiny in certifying a settlement-only class is lessened: as no trial is anticipated in a settlement-only class case, the question of case management issues inherent in the ascertainable class determination need not be confronted. *See id*. Other certification issues, however, such as "those designed to protect absentees by blocking unwarranted or overbroad class definitions," require heightened scrutiny in the settlement-only class context "for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id*.

Plaintiff here seeks certification of a Settlement Class consisting of: "the individuals identified on the Settlement Class List, which includes all individuals who were notified by direct notice by Paysafe that their personal information was or may have been compromised in the Data Security Incident. Excluded from the Settlement Class are: (1) the judges presiding over this Litigation, and members of their direct families; (2) the Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, and employees; and (3) Settlement Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline." S.A., ¶ 33. The Settlement Class contains 91,706 individuals.

The Settlement Class is defined differently, and more specifically, than how it is defined in Plaintiff's Second Amended Complaint, ¶ 72, but both definitions encompass the same set of persons. For the reasons set forth below, the Court should certify the Class for settlement purposes and finally approve the Settlement.

**B.     The Settlement Satisfies Rule 23(a).**

Before assessing the parties' settlement, the Court should first confirm that the underlying settlement class meets the requirements of Rule 23(a). *See Amchem*, 521 U.S. at 620; Manual for Complex Litigation (Fourth), § 21.632. These requirements are well known: numerosity, commonality, typicality, and adequacy—each of which is met here. Fed. R. Civ. P. 23(a); *Ellis v. Costco Wholesale Corp*., 657 F.3d 970, 979–80 (9th Cir. 2011).

**i.     The Proposed Class is Sufficiently Numerous.**

While there is no fixed point at which the numerosity requirement is met, courts generally find numerosity where there are so many class members as to make joinder impracticable. *See* Fed. R. Civ. P. 23(a)(1). "Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied." *Orantes-Hernandez v. Smith*, 541 F. Supp. 351, 370 (C.D. Cal. 1982). Generally, courts will find numerosity is satisfied where a class includes at least 40 members. *Holly v. Alta Newport Hospital,* Case No. 2:19cv07496, 2020 WL 1853308, at *7 (April 10, 2020), *citing Rannis v. Recchia,* 380 Fed. App'x 646, 651 (9th Cir. 2010). Numbering 91,706 individuals, the proposed Settlement Class here easily satisfies Rule 23's numerosity requirement. Joinder of the 91,706 individuals is impracticable—thus the numerosity prong is satisfied. *See, e.g. Celano v. Marriott Int'l Inc*., 242 F.R.D. 544, 548-49 (N.D. Cal. 2007) (numerosity is generally satisfied when a class has at least 40 members).

**ii.     The Settlement Class Satisfies the Commonality Requirement.**

The Settlement Class also satisfies the commonality requirement, which requires that class members' claims "depend upon a common contention," of such a nature that "determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Here, as in most data breach cases, "[t]hese common issues all center on [Defendant's] conduct, satisfying

the commonality requirement." *In re the Home Depot, Inc., Customer Data Sec. Breach Litig*., No. 1:14-MD-02583-TWT, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016).

For the same reason, Plaintiff alleges that predominance is readily met here "where the class is a 'cohesive group of individuals [who] suffered the same harm in the same way because of the [defendant's] conduct.' *In re Google LLC St. View Elec. Commc'ns Litig*., No. 10-MD-02184-CRB, 2020 WL 1288377, at *5 (N.D. Cal. Mar. 18, 2020) (quoting *In re Hyundai & Kia Fuel Economy Litig*., 926 F.3d 539, 559 (9th Cir. 2019)). Thus, common questions include, *inter alia*, whether Paysafe engaged in the wrongful conduct alleged; whether Class Members' PII was compromised in the Data Security Incident; whether Paysafe owed a duty to Plaintiff and Class Members; whether Paysafe breached its duties; whether Paysafe unreasonably delayed in notifying Plaintiff and Class Members of the material facts of the Data Security Incident; and whether Paysafe committed the common law and statutory violations alleged in the Second Amended Complaint.

Thus, Plaintiff has met the commonality requirement of Rule 23(a).

### iii.    Plaintiff's Claims and Defenses are Typical of Those of the Settlement Class.

Plaintiff satisfies the typicality requirement of Rule 23 because Plaintiff's claims, which are based on Defendant's alleged failure to protect Plaintiff's and Class Members' PII, are "reasonably coextensive with those of the absent class members." *See* Fed. R. Civ. P. 23(a)(3); *Meyer v. Portfolio Recovery Associates*, 707 F.3d 1036 (9th Cir. 2012)(upholding typicality finding). Plaintiff alleges that his and Class Members' PII was compromised in the Data Security Incident, and that they were therefore impacted by the same allegedly inadequate data security. *See Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017) ("[I]t is sufficient for typicality if the plaintiff endured a course of conduct directed against the class.").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**iv.      Plaintiff Will Adequately Protect the Interests of the Class.**

The adequacy requirement of Rule 23 is satisfied where (1) there are no antagonistic or conflicting interests between named plaintiff and their counsel and the absent class members; and (2) the named plaintiff and their counsel will vigorously prosecute the action on behalf of the class. Fed. R. Civ. P. 23(a)(4); *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (*citing Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998); *Longest v. Green Tree Servicing LLC*, 308 F.R.D. 310, 325 (C.D. Cal. 2015).

Here, Plaintiff has no conflicts of interest with other class members, is not subject to unique defenses, and he and his counsel have and continue to vigorously prosecute this case on behalf of the class. Plaintiff is a member of the Class who experienced the same alleged injuries and seeks, like other Class Members, compensation in connection with the Data Security Incident. As such, Plaintiff's interests and the interests of his counsel are consistent with those of other Settlement Class Members.

Further, counsel for Plaintiff have decades of combined experience as vigorous class action litigators and are well suited to advocate on behalf of the Settlement Class. *See* Joint Decl., ¶ 27. Thus, Plaintiff satisfies the requirement of adequacy.

**C.      Rule 23(b)(3)'s Requirements Are Met for Purposes of Settlement.**

"In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3)." *Hanlon*, 150 F.3d at 1022. Here, Plaintiff alleges that the Settlement Class is maintainable for purposes of settlement under Rule 23(b)(3), as common questions predominate over any questions affecting only individual members and class resolution is superior to other available methods for a fair and efficient resolution of the controversy. *Id.*

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623 (citing Wright, et al., Fed.

---

-10-

Prac. and Proc. § 1777, p. 518-19 (2d ed. 1986)). "If common questions 'present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication,' then 'there is clear justification for handling the dispute on a representative rather than on an individual basis,' and the predominance test is satisfied." *See Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 526 (C.D. Cal. 2012) (quoting *Hanlon*, 150 F.3d at 1022). To satisfy this requirement, "common issues need only predominate, not outnumber individual issues." *Butler v. Sears, Roebuck & Co*., 727 F.3d 796, 801 (7th Cir. 2013) (quotations omitted).

Plaintiff alleges that predominance is readily met here "where the class is a 'cohesive group of individuals [who] suffered the same harm in the same way because of the [defendant's] conduct.'" *In re Google LLC St. View Elec. Commc'ns Litig*., No. 10-MD-02184-CRB, 2020 WL 1288377, at *5 (N.D. Cal. Mar. 18, 2020) (quoting *In re Hyundai & Kia Fuel Economy Litig*., 926 F.3d 539, 559 (9th Cir. 2019)). Plaintiff's claims depend, first and foremost, on whether Paysafe used reasonable data security measures to protect consumers' PII. That question can be resolved, for purposes of settlement, using the same evidence for all Settlement Class Members, and thus is precisely the type of predominant question that makes a class-wide settlement worthwhile. *See, e.g., Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) ("When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) … .'") (citation omitted).

Moreover, because the claims are being certified for purposes of settlement, there are no issues with manageability, and resolution of thousands of claims in one action is far superior to individual lawsuits and promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3); *Amchem Prods*., 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems").

-11-
PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT THEREOF
CASE NO. 3:21-CV-00641

1

2          Rule 23(b)(3) also requires that a district court determine that "a class action is superior

3   to other available methods for the fair and efficient adjudication of the controversy." In

4   determining whether the "superiority" requirement is satisfied, a court may consider: (1) the

5   interest of members of the class in individually controlling the prosecution or defense of

6   separate actions; (2) the extent and nature of any litigation concerning the controversy already

7   commenced by or against members of the class; (3) the desirability or undesirability of

8   concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to

9   be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3); *Malta*, 2013 WL

10  444619, at *3 (superiority is met where "considerations of judicial economy favor litigating a

11  predominant common issue once in a class action instead of many times in separate lawsuits"

12  and where "small individual claims of class members" made it "unlikely that individual actions

    will be filed").

13          For purposes of settlement, a class action is the superior method of adjudicating

14  consumer claims arising from the Data Security Incident—just as in other data breach cases

15  where class-wide settlements have been approved. *See, e.g., In re Yahoo! Inc. Customer Data

16  Sec. Breach Litig.*, No. 5:16-md-02752-LHK (N.D. Cal. July 20, 2019); *Parsons v. Kimpton

17  Hotel & Rest. Group, LLC*, No. 3:16-cv-05387-VC (N.D. Cal. Jan. 9, 2019); *In re Anthem, Inc.

18  Data Breach Litig.*, 327 F.R.D. 299, 316-17 (N.D. Cal. 2018); *In re LinkedIn User Privacy

19  Litig.*, 309 F.R.D. 573, 585 (N.D. Cal. 2015). Adjudicating individual actions here is

20  impracticable:  the amount in dispute for individual class members is too small, the technical

21  issues involved are too complex, and the required expert testimony and document review too

22  costly. *See Just Film*, 847 F.3d at 1123.

23          In addition, no one member of the class has an interest in controlling the prosecution of

24  this action because Plaintiff's claims and the claims of the members of the class are the same.

25  Alternatives to a class action are either no recourse for thousands of individuals, or a

26

27  PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
28  ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN
    SUPPORT THEREOF
    CASE NO. 3:21-CV-00641

1

2

3

4

5

6

7

8

9

10

11

multiplicity of suits resulting in an inefficient and possibly disparate administration of justice. Classwide resolution is the only practical method of addressing the alleged violations at issue in this case. There are thousands of class members with modest individual claims, most of whom likely lack the resources necessary to seek individual legal redress. *See Local Joint Exec. Bd. of Culinary/ Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) (cases involving "multiple claims for relatively small individual sums" are particularly well suited to class treatment); *see also Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification."). A class action is therefore superior to other methods for the fair and efficient adjudication of the claims of Plaintiff and the Class.

12

### D.     The Settlement Should Be Finally Approved Pursuant to Rule 23(e).

13

14

15

16

17

18

19

20

21

22

23

The Ninth Circuit has identified nine factors to consider in analyzing the fairness, reasonableness, and adequacy of a class settlement: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the views of counsel; (7) the presence of a governmental participant; (8) the reaction of the class members to the proposed settlement and; (9) whether the settlement is a product of collusion among the parties. *In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935, 946 (9th Cir. 2011); *see also Hanlon,* 150 F.3d at 1026. Rule 23(e) requires a court to consider several additional factors, including whether the class representative and class counsel have adequately represented the class, and whether the settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e).

24

25

26

In applying these factors, this Court should be guided foremost by the general principle that settlements of class actions are favored by federal courts. *See Franklin v. Kaypro Corp*.,

27

28

884 F.2d 1222, 1229 (9th Cir. 1989) ("It hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits"). Here, the relevant factors support the conclusion that the negotiated settlement is fundamentally fair, reasonable, and adequate, and should be finally approved.

### i. The Strength of Plaintiff's Case

Plaintiff believes he has built a strong case for liability. With respect to Plaintiff's negligence claim, Plaintiff believes he will ultimately be able to offer evidence that Defendant was negligent in failing to maintain reasonable and current data security programs and practices, which led directly to the exposure of Plaintiff's and Settlement Class Members' PII. Joint Decl., ¶ 28.

Plaintiff believes his claims are viable and that he has a reasonably good chance of proving that Paysafe's data security was inadequate and, if that central fact is established, that Defendant is likely to be found liable under at least some of the liability theories and statutory and common law claims Plaintiff has pled in the Second Amended Complaint.

That said, although Plaintiff believes he has strong claims and would prevail at trial, success is not guaranteed. Plaintiff faces risks given the comparatively novel nature of the claims asserted in data breach class actions. In addition, Paysafe intends to vigorously defend the reasonableness of its data security measures and contends that to date there is no evidence that any person's PII was actually compromised or exfiltrated. Given these considerations, it is "plainly reasonable for the parties at this stage to agree that the actual recovery realized, and risks avoided here outweigh the opportunity to pursue potentially more favorable results through full adjudication." *Dennis v. Kellogg Co*., No. 09-cv-1786-L(WMc), 2013 WL 6055326, at *3 (S.D. Cal. Nov. 14, 2013). In other words, "[h]ere, as with most class actions, there was risk to both sides in continuing towards trial. The settlement avoids uncertainty for all parties involved." *Chester v. TJX Cos*., No. 5:15-cv-01437-ODW(DTB), 2017 WL 6205788, at *6

(C.D. Cal. Dec. 5, 2017). In light of the substantial obstacles and inherent risks Plaintiff faces, including class certification, summary judgment, and trial, the substantial benefits the Settlement provides decisively favor granting final approval of the Settlement. Joint Decl., ¶ 29.

ii.     **The Risk, Expense, Complexity, and Likely Duration of Further Litigation**

While Plaintiff believes his case is a strong one, all cases, including this one, are subject to substantial risk. This case involves a proposed class of approximately 92,000 individuals (each of whom, Paysafe has argued, would need to establish cognizable harm and causation to prevail on their claims); a complicated and technical factual background; and a sympathetic and motivated Defendant that already has provided some relief to its potentially affected customers.

Although nearly all class actions involve a high level of risk, expense, and complexity— undergirding the strong judicial policy favoring amicable resolutions, *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998)—this is a particularly complex class due the constant standing challenges plaintiffs face in data breach class actions. Historically, data breach cases face substantial hurdles in surviving even the pleading stage. *See, e.g., Hammond v. The Bank of N.Y. Mellon Corp*., No. 08 Civ. 6060 (RMB) (RLE), 2010 U.S. Dist. LEXIS 71996, at *2-4 (S.D.N.Y. June 25, 2010) (collecting cases). Even cases impacting similarly broad groups and implicating data far more sensitive than that at issue here have been found wanting by district courts. *In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig*., 266 F. Supp. 3d 1, 19 (D.D.C. 2017) ("The Court is not persuaded that the factual allegations in the complaints are sufficient to establish . . . standing."), *reversed in part*, 928 F.3d 42 (D.C. Cir. 2019) (holding that plaintiff had standing to bring a data breach lawsuit).

To the extent the law has gradually accepted this relatively new type of litigation, the path to a class-wide monetary judgment remains unforged, particularly in the area of damages. For now, data breach cases are among the riskiest and uncertain of all class action litigation,

---

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT THEREOF
CASE NO. 3:21-CV-00641

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

making settlement the more prudent course when a reasonable one can be reached. The damages methodologies, while theoretically sound in Plaintiff's view, remain untested in a disputed class certification setting and unproven in front of a jury. And as in any data breach case, establishing causation on a class-wide basis is rife with uncertainty.

Each risk, by itself, could impede the successful prosecution of these claims at trial and in an eventual appeal—which could result in zero recovery to the class. "Regardless of the risk, litigation is always expensive, and both sides would bear those costs if the litigation continued." *Paz v. AG Adriano Goldschmeid, Inc.*, No. 14CV1372DMS(DHB), 2016 WL 4427439, at *5 (S.D. Cal. Feb. 29, 2016). Thus, this factor favors approval.

### iii.     The Risk of Maintaining Class Action Status Through Trial

While Plaintiff's case is still in the pleadings stage, the parties have not briefed and the Court has not yet certified any class treatment of this case and Defendant will certainly oppose certification if the case proceeds. If the parties were to proceed to litigate their claims through trial, Plaintiff would encounter risks in obtaining and maintaining certification of the class. Thus, Plaintiff "necessarily risk[s] losing class action status." *Grimm v. American Eagle Airlines, Inc.*, No. LA CV 11-00406 JAK(MANx), 2014 WL 1274376, at *10 (C.D. Cal. Sept. 24, 2014). Class certification in contested consumer data breach cases is not common—first occurring in *Smith v. Triad of Ala.*, LLC, No. 1:14-CV-324-WKW, 2017 U.S. Dist. LEXIS 38574, at *45-46 (M.D. Ala. Mar. 17, 2017), and most recently in *In re Brinker Data Incident Litig.*, No. 3:18-CV-686-TJC-MCR, 2021 WL 1405508, at *1 (M.D. Fla. Apr. 14, 2021), where a class was certified over objection to plaintiff's damages calculations. While certification of additional consumer data breach classes may well follow, the dearth of direct precedent adds to the risks posed by continued litigation.

1

2

#### iv.     The Amount Offered in Settlement

3            In light of the risks and uncertainties presented by data breach litigation, the value of the

4    Settlement favors approval. The Settlement makes significant relief available to Settlement

5    Class Members in the form of a non-reversionary common fund of $2,000,000. Each Class

6    Member is eligible to make a claim for up to $25,000 in reimbursements for Out-of-Pocket

7    Losses and/or Attested Time and each Class Member and all Participating Settlement Class

8    Members are entitled to receive a residual cash payment in an amount equal to a *pro rata* share

9    of any funds remaining in the Settlement Fund after payment of all Approved Claims for Out-

10   of-Pocket Losses and Attested Time, Notice and Administrative Expenses, Taxes and Tax-

11   Related Expenses, Service Awards Payment approved by the Court, and Fee Award and Costs

12   approved by the Court.. This settlement is a strong result for the Class, and as discussed below

13   is in line with other settlements in cases involving data breaches of similar scope. The

14   settlement amount here is similar to other settlements reached and approved in similar cases,

15   reflecting that the Settlement is fair. *See Calderon v. Wolf Firm*, No. SACV 16-1622-

16   JLS(KESx), 2018 WL 6843723, at *7-8 (C.D. Cal. Mar. 13, 2018) (comparing class settlement

17   with other settlements in similar cases). In light of the difficulties and expenses Class Members

18   would face in pursuing individual claims, and the likelihood that they might be unaware of their

19   claims, this Settlement Amount is appropriate. *See id*. Accordingly, this factor favors approval.

20          The Settlement value per class member here ($21.80 per class member ($2,000,000 /

21   91,706 class members) is on par with or exceeds that in other exemplary data breach

22   settlements. For example, the consideration paid by Home Depot to settle a data breach class

23   action was approximately $0.51 per class member. *See In re The Home Depot, Inc., Customer*

24   *Data Sec. Breach Litig*., No. 1:14-MD-02583-TWT, ECF No. 181-2 (March 7, 2016)

25   (Settlement Agreement); *id*., 2017 U.S. Dist. LEXIS 221736, at *24 (N.D. Ga. Sept. 22, 2017)

26   (order approving settlement). And the Target data breach was resolved with Target paying the

27

28

-17-

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT THEREOF
CASE NO. 3:21-CV-00641

equivalent of $0.17 per class member. *See In re Target Corp. Customer Data Sec. Breach Litig.*, No. MDL 14-2522-PAM, ECF No. 358-1 (D. Minn. March 18, 2015) (Settlement Agreement); *id.*, 2017 U.S. Dist. LEXIS 75455, at *27-29 (D. Minn. May 17, 2017) (order certifying settlement class on remand from the 8th Circuit). These comparisons are not intended to disparage the settlements achieved in those cases, but to underscore that Plaintiff has achieved a good resolution for the Settlement Class.

### v. The Extent of Discovery Completed and the Stage of Proceedings

Before entering into settlement discussions on behalf of class members, counsel should have "sufficient information to make an informed decision." *Linney*, 151 F.3d at 1239. Here, Plaintiff vigorously and aggressively gathered all of the information that was available regarding Paysafe and the Data Security Incident—including publicly-available documents concerning announcements of the Data Security Incident and notice of the Data Security Incident to its customers. Joint Decl., ¶ 31. The parties also informally exchanged non-public information concerning the Security Incident and the size of the Class in preparation for a successful mediation. *Id*.

The parties have further engaged in formal discovery, including both paper discovery and the deposition of Plaintiff and two Fed. R. Civ. Pro. 30(b)(6) depositions of corporate representatives of Defendant. This information, together with Class Counsel's collective experience in similar types of privacy and data protection practices, provided substantive knowledge on the subject to enable Class Counsel to represent Plaintiff's and Class Members' interests without expending hundreds of hours and substantial financial resources to come up to speed on the subject area. Joint Decl., ¶ 27. "[T]he efficiency with which the Parties were able to reach an agreement need not prevent this Court from granting . . . approval." *Hillman v. Lexicon Consulting, Inc*., No. EDCV 16-01186-VAP(SPx), 2017 WL 10433869, at *8 (C.D.

---

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT THEREOF
CASE NO. 3:21-CV-00641

Cal. April 27, 2017). Accordingly, Plaintiff is well informed about the strengths and weaknesses of this case.

### vi.      The Experience and Views of Counsel

Class Counsel initiated this lawsuit when Paysafe announced the Data Security Incident, which impacted approximately 92,000 individuals. Class Counsel has substantial experience litigating complex class cases of various types, including data breach cases such as this one. *See* Joint Decl., ¶ 25 & Exs. A and B thereto. Having worked on behalf of the putative class since the Data Security Incident was first announced, evaluated the legal and factual disputes, and dedicated significant time and monetary resources to this litigation, proposed Class Counsel fully endorse the Settlement. *Id.*, ¶ 53. A great deal of weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. *See, e.g., Norton v. Maximus, Inc.,* 1:14-0030 WBS, 2017 WL 1424636, at *6; *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004). Thus, this factor supports approval.

Following the Northern District's Procedural Guidance for Class Action Settlements, Class Counsel compare this settlement to a recent similar settlement where they each (in addition to other attorneys) participated as counsel for plaintiffs. In   *Thomsen v. Morley Companies, Inc.,* No. 1:22-cv-10271 (E.D. Mich. Nov. 4, 2022), approximately 617,065 individuals had the same types of PII compromised as in the instant matter. In *Morley* a common fund of $4,300,000 was created, for a settlement value per class member of $6.96, compared to which the $21.81 made available in the instant matter compares very favorably. Additionally, in *Morley* the settlement benefits made available to class members were substantially less than those afforded here in each of the following categories: (1) out-of-pocket expenses reimbursement up to $2,500; (2) a cash payment for lost time of up to 4 hours at $20 per hour; and (3) no cash payment made to all class members without the need to submit a

claim. United States District Judge Thomas L. Ludington granted preliminary approval of class action settlement in *Morley* on November 4, 2022, and final approval on May 12, 2023. Because the Settlement forged for Plaintiff and Class Members here provides benefits far greater than those that were preliminarily and finally approved in *Morley*, Plaintiff and the Settlement Class respectfully request that the Court grant final approval of class action settlement in this case.

### vii.     Governmental Participants.

There is no governmental participant in this matter. This factor is neutral.

### viii.     The Reaction of the Class Members to the Proposed Settlement

To date, only one (1) Class Member (out of 91,706) has timely requested exclusion, Fenwick Decl. ¶ 18, and none have submitted timely objections. This weighs strongly in favor of granting final approval. *See, e.g.*, *Carter v. Vivendi Ticketing US LLC*, No. SACV2201981CJCDFMX, 2023 WL 8153712, at *9 (C.D. Cal. Oct. 30, 2023) (reasoning 1 request for exclusion out of 437.310 class members "indicate[d] strong overall support for the Settlement and weigh[ed] in favor of granting final approval"); *Richards v. Chime Fin., Inc.*, No. 19-CV-06864-HSG, 2021 WL 2075689, at *7 (N.D. Cal. May 24, 2021) (reasoning that 6 requests for exclusion out of 495,006 class members was a "minimal number of objections and opt-outs in comparison to the size of the class indicat[ing] overwhelming support among the Class Members and weigh in favor of approval of the settlement").

### ix.     Lack of Collusion Among the Parties

The parties negotiated a substantial, multifaceted Settlement, as described above. The parties did not negotiate attorneys' fees until agreement on all substantive portions of the class resolution had been reached, and both the class portion of the resolution and the attorneys' fees were negotiated during periodic arm's-length negotiations. Furthermore, Class Counsel and Paysafe's counsel are well-versed in handling data breach class actions such as this one and fully understand the values recovered in similar cases. Therefore, the Court can be assured that

the negotiations were not collusive. Additionally, the parties participated in two separate mediation sessions with an experienced private mediator, Zela Claiborne, Esq. of JAMS, which were highly contentious and were only able to reach a settlement in principle during the second session after having conducted substantial discovery in between the two sessions. *See G. F. v. Contra Costa Cty.*, No. 13-cv-03667-MEJ, 2015 U.S. Dist. LEXIS 100512, at *43 (N.D. Cal. Jul. 30, 2015) ("[T]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.") (internal quotation marks and citation omitted); *see also Cohorst v. BRE Props.*, No. 3:10-CV-2666-JM-BGS, 2011 WL 7061923, at *12 (S.D. Cal. Nov. 9, 2011) ("[V]oluntary mediation before a retired judge in which the parties reached an agreement-in-principle to settle the claims in the litigation are highly indicative of fairness . . . . We put a good deal of stock in the product of arms-length, non-collusive, negotiated resolution.").

### x.     The Settlement Treats Settlement Class Members Equitably

Finally, Rule 23(e)(2)(D) requires that this Court confirm that the settlement treats all class members equitably as possible under the circumstances. The Advisory Committee's Note to Rule 23(e)(2)(D) advises that courts should consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), advisory comm.'s note (2018).

In determining whether this factor weighs in favor of approval, a Court must determine whether the Settlement "improperly grant[s] preferential treatment to class representatives or segments of the class." *Hudson v. Libre Technology Inc.,* No. 3:18-cv-1371-GPC-KSC, 2020 WL 2467060, *9 (S.D. Cal. May 13, 2020) (*quoting In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)).

---

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Here, the Settlement "does not improperly discriminate between any segments of the class, as all class members are entitled to the same relief. Each and every Class Member (i) has the opportunity to make a claim for up to $25,000 in reimbursements for Out-of-Pocket Losses and Attested Time and (ii) is entitled to receive a cash payment in an amount equal to a *pro rata* share of any funds remaining in the Net Settlement Fund after payment of all Approved Claims for Out-of-Pocket Losses and Attested Time. While Plaintiff has been permitted to seek approval of a service award from this Court, as will be explained in detail at Plaintiff's Fees Motion, an award of $15,000 for one class representative is in line with awards granted in similar cases, is presumptively reasonable, and does not call into question Plaintiff's adequacy or the validity of the Settlement. *See, e.g*., *Andrews v. Plains All American Pipeline L.P.,* CV-15-4113-PSG, 2022 WL 4453864, * 5 (C.D. Cal. Sept. 20, 2022) (awarding representative Plaintiffs $15,000 for having searched for and provided facts used to compile Plaintiffs' operative complaint, helped Class Counsel analyze claims, sat for deposition, and reviewed and approved the settlement); *Howell v. Advantage RN, LLC,* 17-CV-883 JLS, 2020 WL 5847565, *5 (S.D. Cal. Oct. 1, 2020) (awarding representative Plaintiff $10,000 despite her not having been deposed); *Gomez v. USF Reddaway, Inc.*, LA CV16-05572 JAK, 2020 WL 10964603, *3 (C.D. Cal. Sept. 21, 2020) (approving service awards of $17,500 and $7,500 out of a settlement fund of only $1,500,000); *Ross v. U.S. Bank Nat. Ass'n*, 2010 WL 3833922, *2 (N.D. Cal. Sept. 29, 2010) (awarding representative Plaintiffs $20,000 each for having reviewed documents, had their depositions taken, and actively participated in settlement negotiations); *Presley v. Carter Hawley Hale Profit Sharing Plan*, No. C9704316SC, 2000 WL 16437, at *2 (N.D. Cal. 2000) (approving $25,000 service awards). As such, this factor also weighs in favor of approval.

///

//

///

1

2

## VI.   <u>CONCLUSION</u>

3        For the foregoing reasons, Plaintiff respectfully requests that the Court grant the instant

4   motion for entry of an Order approving Class Counsel's request for: (i) final approval of the

5   class action settlement; (2) an attorney's fees award in the amount of 25 percent of the

6   Settlement Fund, or $500,000; (ii) reimbursement of $28,174.55 in expenses; and (iii) payment

7   of service award of $15,000 to Representative Plaintiff.

Date: December 27, 2023                      Respectfully Submitted,

8

9                                             */s/Gregory Haroutunian*
                                             M. Anderson Berry (SBN 262879)
10                                            Gregory Haroutunian (SBN 330263)
                                             **CLAYEO C. ARNOLD**
11                                            **A PROFESSIONAL CORPORATION**
                                             865 Howe Avenue
12                                            Sacramento, CA 95825
                                             Tel: (916) 239-4778
13                                            aberry@justice4you.com
                                             gharoutunian@justice4you.com
14

15                                            John A. Yanchunis (*Pro Hac Vice*)
                                             **MORGAN & MORGAN**
16                                            **COMPLEX LITIGATION GROUP**
                                             201 N. Franklin Street, 7th Floor
17                                            Tampa, FL 33602
                                             Telephone: (813) 559-4908
18                                            Facsimile: (813) 223-5402
                                             jyanchunis@ForThe People.com
19

20                                            Ryan D. Maxey (*Pro Hac Vice*)
                                             **MAXEY LAW FIRM, P.A.**
21                                            107 N. 11th St. #402
                                             Tampa, Florida 33602
22                                            Telephone: (813) 448-1125
                                             ryan@maxeyfirm.com
23

24                                            *Attorneys for Plaintiff*

25

26

27

28